UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Eric Souvannakane, ) | |
| ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 04-12164-MLW |
| ) | |
| Sears, Roebuck & Co., William Sullivan, ) | |
| Richard Spellman, Barbara Tagliarino, Kevin ) | |
| Sullivan, Alicia Coviello, & Gary Mansfield ) | |
| ) | |
| Defendants ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO SEARS, ROEBUCK & CO. DEFENDANTS' MOTION TO DISMISS

## REQUEST FOR ORAL ARGUMENT

## INTRODUCTION

Plaintiff opposes defendant's motion to dismiss because it improperly relies on a misinterpretation of the law. Specifically, the defendants erroneously rely on the discredited notion that plaintiffs who claim that employer defendants have wrongly terminated them based on race must meet a heightened pleading standard or else their complaints will be subject to dismissal under 12(b)(6) of the Federal Rules of Civil Procedure. The defendants insist that they are entitled to a dismissal because plaintiff has supposedly "fail[ed] to plead sufficient facts to support any cognizable claim against the Sears Defendants." (Def. Memo, p. 2) In direct contrast to this misinterpretation, both United States Supreme Court and First Circuit precedent establish that civil rights plaintiffs need plead no more facts than are necessary under the ordinary pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure.

1

In 2002 the United States Supreme Court, in holding that an employment discrimination plaintiff need not plead a prima facie case of discrimination, wrote that "before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2004). The Supreme Court used the occasion of the *Swierkiewicz* decision to remedy a split among the circuits and announce that from that point forward in employment discrimination cases as in other cases under the Federal Rules regime "an employment discrimination plaintiff need not plead a prima facie case of discrimination. . . ." *Id.* at 515.

Applying the Court's standard, in May of this year the First Circuit overruled its own prior precedents addressing the heightened pleading requirements imposed on employment discrimination plaintiffs. In holding "that there are no heightened pleading standards for civil rights cases," the Court joined several of its sister circuits in following Supreme Court precedent established in *Swierkiewicz*. It stated that in "civil rights actions, as in the mine run of other cases for which no statute or Federal Rule of Civil Procedure provides for different treatment, a court confronted with a Rule 12(b)(6) motion "may dismiss a complaint only if it is clear that no relief could be granted under *any* set of facts that could be proved consistent with the allegations." *Educadores Puertorriqueños En Acción v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004), *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)(emphasis added).

## MEMORANDUM OF REASONS

Specifically, the plaintiff requests that this Court deny defendants' motion because under

the *Educadores Puertorriqueños En Acción* and *Swierkiewicz* standard, plaintiff's complaint is sufficient to survive defendants' motion to dismiss. Both the United States Supreme Court and the First Circuit have confirmed that a plaintiff in an employment discrimination case need not meet a heightened pleading standard in his complaint; instead, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Although *Swierkiewicz* contained claims alleging that plaintiff was terminated because of both his age and his national origin, the facts contained in Mr. Swierkiewicz's complaint are remarkably similar to those contained in plaintiff's here. The Supreme Court noted that Swierkiewicz's complaint gave the

> respondent fair notice of the basis for petitioner's claims. Petitioner alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA. His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination.

*Swierkiewicz*, 534 U.S. at 514 (internal citations omitted).

Similarly, plaintiff here has given the defendants fair notice of the basis for his claims. He has alleged that he was terminated on account of his race and ethnicity in violation of the 5th and 14th amendments. Likewise, plaintiff's complaint details the events leading to his termination, it provides relevant dates, and it includes specific facts about what individual defendants did to deprive plaintiff of constitutionally guaranteed rights. Plaintiff has also identified the individual defendants and has indicated the employment capacities in which they served Sears or others. While plaintiff has not provided specific details about who made certain comments or how the defendant actors may have conspired to deprive plaintiff of his rights, the Supreme Court has held that this level of detail is not necessary at the pleading stage. The Court drew a clear

3

distinction between the pleading and evidentiary stages of litigation, acknowledging that dismissals are frowned upon before plaintiffs have had an opportunity to prove discrimination through the discovery process. As the court said, "[I]t thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* at 512.

As stated in the introduction, the First Circuit has recently adhered to the standard announced in *Swierkiewicz*. In overruling a string of prior precedents, the First Circuit held that "courts faced with the task of adjudicating motions to dismiss under Rule 12(b)(6) must apply the notice pleading requirements of Rule 8(a)(2)." The court went on to say that "state of mind, including motive and intent, may be averred generally." *Educadores Puertorriqueños En Acción,* 367 F.3d at 66. In *Educadores Puertorriqueños En Acción* the district court had erroneously relied on a heightened pleading standard. It dismissed plaintiff's complaint because plaintiff had failed "to include in their complaint subsidiary facts sufficient to support their allegations that political animus was the driving force behind the rescission of the favorable personnel actions and that those actions came within exceptions to the electoral prohibition." *Id.* at 63. Although *Educadores Puertorriqueños En Acción* arose in the context of a 1st amendment claim, the Court's description of what the district court found lacking in the *Educadores Puertorriqueños En Acción* complaint is both instructive and relevant to plaintiff's complaint here.

Specifically, defendants stated that plaintiff "Souvannakane has not alleged that any Sears employee who was involved in the decision to terminate him harbored any racial animus towards him . . ." (Def. Memo, p. 3). Plaintiff has alleged that defendant William Sullivan threatened employees of plaintiff's department that they would be fired if they did not lie and say that

4

plaintiff had caused a spill of waste oil. Whether it was racial or some other brand of animus that motivated defendant Sullivan is impossible to say without discovery. Plaintiff has alleged that racially derogatory remarks were directed at him, and Sears's management never did anything to remedy this situation. Unless plaintiff is given the opportunity to depose the individual defendants, he can not know whether racial animus was the "driving force" behind their decision to terminate his employment.

To show that Mr. Souvannakane has not met the elements of a cause of action under 42 U.S.C. § 1985(2) & (3) defendants rely on a series of district court cases that either were issued by courts in other districts or are cited for propositions that are not extant in the opinions. For instance, in setting forth the elements needed for a plaintiff to state a cause of action under 42 U.S.C. § 1985(2), defendants cite *Zezulewicz v. Port Authority of Allegheny County*, 290 F. Supp. 2d 583 (W.D. Pa. 2003). Not only is this case inapposite to the present circumstances because it arose in the context of a claim against a governmental agency, but it also was decided by a court in the Western District of Pennsylvania. If defendants wanted to cite authority which sets forth the elements of a civil rights conspiracy, they could have cited *Andrade v. Jamestown Housing Authority*, 82 F.3d 1179 (1st Cir. 1996), a decision that is binding authority for this court.

Additionally, defendants rely on *Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975) and *Baxter v. Conte*, 190 F. Supp. 2d 123 (D. Mass. 2001) to show that Mr. Souvannakane has not pled sufficient material facts to establish a conspiracy. The defendants cite both these cases to establish that plaintiff has not shown that "there was a combination of two or more persons acting in concert to commit an unlawful act, the principal element of which is that they

5

specifically agreed to inflict the wrong or injury upon the plaintiff." (Def. Memo, p. 8). In *Baxter*, the court agreed with defendants and dismissed the complaint because the plaintiff there complained "as an individual" rather than as a member of a class of affected persons. *Baxter*, 190 F. Supp. 2d at 129. In his complaint Mr. Souvannakane stated that defendants had cajoled witnesses into lying for the purpose of falsely charging him with a crime and that they had enlisted the aid of a police officer in prosecuting him for a crime he did not commit, and they did this based on his class, his race, and his ethnicity. (Complaint, ¶¶23, 25, 26, 27, 28, 33, & 36). This would amount to a showing that "there was a combination of two or more persons . . . to inflict the wrong or injury upon the plaintiff."

The defendants also rely on *Hahn* and *Baxter* to assert that Mr. Souvannakane has not met his burden of showing a discriminatory animus and that he has not pled in sufficient detail. (Def. Memo, p. 8). Although Mr. Souvannakane agrees that he must show class-based animus, the complaint states that defendants conspired to deprive Souvannakane of his rights bases on his race (Asian) and ethnicity (Cambodian). (Complaint, ¶36). Although defendants rely generally on *Baxter* to establish that the conspiracy elements "must be supported in the complaint by material facts and not merely conclusory statements (Def. Memo, p. 8)," the *Baxter* court never established this principle. The most the *Baxter* court said was that Mr. Baxter's claims that those defendants had a vendetta against him were conclusory.

The defendants next contend that Mr. Souvannakane must prove a conspiracy under both 42 U.S.C. § 1985(2) & (3), and plaintiff must establish a link between the state actor and corporate defendants. The defendants rely on *Sampson v. Village Discount Outlet, Inc.*, 832 F. Supp. 1163 (N.D. Ill. 1993) to set forth the conspiracy requirement. Perhaps an inadvertent

6

oversight may have caused defendants to neglect to mention that the *Sampson* case was actually quoting a 7th circuit decision: *Lenard v. Argento*, 699 F.2d 874 (7th Cir. 1983). More importantly, the factual circumstances of *Sampson* and the present case militate in favor of denying defendant's motion. The cases are clearly distinguishable because Mr. Sampson failed to show that there was a "meeting of the minds" sufficient to establish a conspiracy. *Sampson*, 832 F. Supp. at 1168. Sampson attempted to show that a security officer and a store manager and his assistant had unlawfully detained him for a period of time. Mr. Sampson never mentioned the presence or active involvement of a police officer or any other state actor. *Id.* In contrast, here, Mr. Souvannakane has stated that after speaking with employees of Sears, Officer Mansfield of the Saugus, Massachusetts Police Department "created a report falsely stating that the ethnicity of the plaintiff was unknown, the waste oil had a value of $3,000.00 so the plaintiff could be charged with the felony of "Malicious Destruction of Property over $250," and defendant Coviello and a Mr. José Hernandez had witnessed the spill." (Complaint, ¶25).

Similarly, defendants rely on *McGillicuddy v. Clements*, 746 F.2d 76 (1st Cir. 1984) to establish the proposition that a civil rights plaintiff must establish "the relationship or nature of cooperation between the state and a private individual be pled *in some detail*." (Def. Memo at 9, emphasis in original). The defendants' reliance on *McGillicuddy* is misplaced for two reasons: (1) That case arose in the context of a 42 U.S.C. § 1983 claim, and (2) Mr. McGillicuddy provided little or no factual evidence on which to base his conspiracy. Thus, the First Circuit correctly reversed the district court's denial of the defendants' motion to dismiss. The Court wrote that

> However, those claims merely suggest that Ernst & Whinney did a bad job of accounting, not that it was acting in a conspiracy with state officials to deprive the

7

> plaintiff of civil rights. At oral argument, plaintiff's counsel speculated that the defendant may have been directed not to do the audit in the usual way during a discussion with state officials. Such conjecture obviously attempts to do what the complaint did not, *i.e.*, link the conduct of the defendant to the state. Speculation about what might have happened can not save an otherwise inadequate complaint.

*Id.* at 77.

In contrast with McGillicuddy's conjecture or speculation, Mr. Souvannakane has pointed to the link between the false allegations of employees of Sears and the state actor, Officer Mansfield.

The defendants next make a somewhat specious argument which states that Section 1985(3) does not apply unless the right deprived is one that is "protected against private, as well as official, encroachment." (Def. Memo at 10, quoting *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 219-220 (D. Mass. 1995), *quoting Bray v. Alexandria Women's Health Clinic*, 506 U.S. at 278, 113 S. Ct. 764). It seems as though defendants have misconstrued both the meaning and the procedural history of the *Lowden* decision. While plaintiff agrees that certain rights – the right to be free from involuntary servitude under the Thirteenth Amendment and the right to interstate travel – are protected against private, as well as official, encroachment, plaintiff disputes that the *Lowden* decision was issued by the United States Supreme Court (in fact, it is a 1995 District of Massachusetts decision)(*See* Def. Memo, p. 11). Although Mr. Souvannakane would have not have a cause of action against a private actor in the absence of official misconduct, plaintiff has set forth facts establishing that a state official, Officer Mansfield, acted in concert with officials of Sears in depriving plaintiff of legally protected rights.

Additionally, because the plaintiff has made a colorable claim under 42 U.S.C. § 1985, the court should hear plaintiff's § 1986 claim.

In section II of their memo, defendants complain that to make out a claim under 42

U.S.C. § 1983, Mr. Souvannakane "lumps together the actions of Officer Mansfield with those of Sears in a confusing attempt to bring Sears's conduct in terminating Souvannakane within the ambit of the statute." (Def. Memo, p. 12). Despite defendants' attempt to characterize Mr. Souvannakane's statements as confusing, one thing is clear: Souvannakane was prosecuted for something he did not do because Officer Mansfield initiated the prosecution after being told to do so by the Sears defendants. Souvannakane concedes that the oil spill described in the complaint happened after Mr. Souvannakane was terminated. However, all this proves is that once the oil spill happened, the defendants needed a scapegoat to blame it on. Not content with merely firing Mr. Souvannakane, the defendants resolved to pin the blame for the spill on the plaintiff.

To establish that Mr. Souvannakane has not met his alleged burden of pleading the connection between Officer Mansfield and the Sears employees, defendants once again trot out the *McGillicuddy* decision. *McGillicuddy v. Clements*, 746 F.2d 76 (1st Cir. 1984). Unfortunately, the facts of *McGillicuddy* diverge from the present circumstances in key respects. First, the plaintiff in *McGillicuddy* attempted to show that an accounting firm hired to do an audit of a New Hampshire state agency was itself a state actor. *Id.* at 77. Mr. Souvannakane makes no such charge about Sears or its employees. Second, the plaintiff in *McGillicuddy* tried without success to make the case that the state was connected with the accounting firm because the state authorized the audit. *Id.* Although the district court in *McGillicuddy* denied defendants' motion to dismiss, the First Circuit reversed, holding that McGillicuddy's claims were both without merit. *Id.* However, this Court would be on firmer footing in denying defendants' motion here because authorizing an audit involves considerably less state action than contacting the police,

9

compelling witnesses to testify falsely, and initiating a prosecution.

The defendants then rely on *Roche v. John Hancock Mutual Life Insurance Co.*, 81 F.3d 249 (1st Cir. 1996) to show that Mr. Souvannakane has not effectively tied together the state action as embodied by Officer Mansfield and the action of the Sears defendants in deciding to press charges against Mr. Souvannakane. Once again, defendants' reliance is misplaced. First, the *Roche* case arose in the context of a defense motion for summary judgment, not a 12(b)(6) motion to dismiss. As the Supreme Court has said in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2004), courts should not entertain 12(b)(6) motions in civil rights cases which are better suited to summary judgment motions ("Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56." *Id.* at 514).

More importantly, the facts in *Roche* indicate that Mr. Roche was guilty of making threatening phone calls, and no one at John Hancock ever instructed employees to lie and say that it was in fact Mr. Roche making the calls. In contrast, Officer Mansfield made the decision to prosecute Mr. Souvannakane based on the false statements of Sears employees who made their statements only after their jobs were threatened if they did not bear false witness against Mr. Souvannakane. Had Sears not initiated the call to Saugus Police, Officer Mansfield never would have brought charges against Mr. Souvannakane based on the perjured statements. An independent investigation by law enforcement is one thing, but an investigation and prosecution motivated by false reports and intentional falsehoods is quite another. The first is what the police are paid to do while the second is what they do when private actors seek to use their services to pursue their own illegitimate ends.

Finally, the defendants assert that Mr. Souvannakane cannot make his 42 U.S.C. § 1981

10

case because he has failed to show racial animus on the part of the defendants or that they were motivated by racial animus in deciding to fire him. Once again defendants rely on the now-discredited, overruled *McDonnell Douglas* standard in requiring that plaintiff must plead racial animus with particularity. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Defendants argue that the First Circuit's statement in *Ayala-Gerena v. Bristol Meyers-Squibb Co.*, 95 F.3d 86 (1st Cir. 1996), "such stray remarks lack the necessary link between the alleged speaker's discriminatory remark and the adverse employment decision" (*Id.* at 95) control the current litigation. Both *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2004) and *Educadores Puertorriqueños En Acción v. Hernandez*, 367 F.3d 61(1st Cir. 2004) compel a different result.

Plaintiff maintains that he has set forth sufficient facts in the body of his complaint that establish both state action and racial animus. Further evidence of the conspiracy could only be fleshed out during the discovery portion of this litigation, and discovery is what the *Swierkiewicz* decision requires.("Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Swierkiewicz* 534 U.S. at 512.)

For all these reasons, the defendants' motion to dismiss should be DENIED, and Mr. Souvannakane's claims against them should be allowed to proceed.

11

Eric Souvannakane

By his attorneys,

Dated: December 27, 2004

Kurt S. Olson (BBO # 632300)
500 Federal St.
Andover, Ma. 01810
978-681-0800

Andrew Gradzewicz (BBO # 206220)
114 Newton St.
Lawrence, Ma. 01843
978-683-1050

## CERTIFICATE OF SERVICE

I hereby certify that I mailed by first-class mail, postage prepaid copies of this **PLAINTIFF'S OPPOSITION TO SEARS ROEBUCK & CO. DEFENDANTS' MOTION TO DISMISS** to the following on December 27, 2004:

Christine M. Netski, Esq.
Liza J. Tran, Esq.
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, Ma. 02114

John J. Cloherty III, Esq.
Pierce, Davis & Perritano, LLP
10 Winthrop Sq.
Boston, Ma. 02110
**(courtesy copy)**

Alicia Coviello
168 Water St.
Saugus, Ma. 01906
**(courtesy copy)**

Kurt S. Olson (BBO # 632300)
500 Federal St.
Andover, Ma. 01810
978-681-0800

12