UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 0412164 MLW

ERIC SOUVANNAKANE,            )
    Plaintiff                              )
                                              )
v.                                            )
                                              )
SEARS ROEBUCK & CO., WILLIAM SULLIVAN )
RICHARD SPELLMAN, BARBARA TAGLIARINO, )
KEVIN SULLIVAN, ALICIA COVIELLO,      )
GARY MANSFIELD,                       )
    Defendants                           )
_____)

**DEFENDANT GARY MANSFIELD'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

**I. FACTS**

Pursuant to Local Rule 56.1, the Defendant has submitted the accompanying Concise Statement of Material Facts as to which there is No Genuine Issue to be Tried, which is incorporated here by reference. Plaintiff's Complaint against Officer Gary Mansfield asserts that Plaintiff was wrongfully prosecuted for Malicious Destruction of Property due to an oil spill at his former place of employment with Co-Defendant Sears, Roebuck & Co. The Summary Judgment record establishes, however, that Officer Mansfield had only a peripheral involvement, taking a witness statement from a Sears employee, and filing an application with the clerk magistrate for a criminal complaint. Officer Mansfield never met Plaintiff nor knew his ethnicity, let alone took any actions against Plaintiff due to his race or ethnicity. There is an utter failure of any evidence implicating Officer Mansfield, who is entitled to summary judgment.

The salient facts are as follows:[1] Plaintiff Eric Souvannakane was formerly employed n the

---

[1] Unless otherwise indicated, all factual averments contained herein are supported by the Defendant's comprehensive Statement of Undisputed Facts accompanying this Memorandum. Thus

automobile department of Sears in Saugus Massachusetts for just over one year, from August 2002 until October 2003. Plaintiff was terminated from his employment on October 14, 2003 after being accused of swearing at a customer for the second time during his employment. Three days later, on October 17, 2003, Officer Gary Mansfield was dispatched to the Sears store for reports of damage to the property.

Upon arrival at the Sears store, Officer Mansfield spoke to Alicia Coviello, a loss prevention officer for Sears. The property damage complaint concerned a spill of a large volume of used motor oil. Officer Mansfield also spoke to Jose Hernandez, a Sears employee who witnessed Plaintiff knock an oil barrel over. Officer Mansfield obtained a written statement which Mr. Hernandez had given to Sears supervisors. Officer Mansfield did not see any oil damage because the spill had already been cleaned up. Ms. Coviello informed that the cost of the clean-up was approximately $3,000, and a later invoice revealed the cost exceeded $4,000. Officer Mansfield then wrote a brief police report and submitted it together with the witness statement in a request for a criminal complaint against Plaintiff Eric Souvannakane for Malicious Destruction of Property exceeding $250. That was the only involvement for Officer Mansfield in the matter. He did not appear at the clerk magistrate's show-cause hearing or the eventual trial. The clerk magistrate found probable cause to issue a criminal complaint, however, after a later bench trial, Plaintiff was acquitted of the charge. Plaintiff was never arrested, detained by or otherwise had any interaction with Officer Mansfield, but instead was summonsed to court by mail.

Plaintiff's Complaint contained seven Counts for relief, each of which seeks relief against all of the defendants, including Officer Mansfield. Two of the Counts, IV and V, were dismissed in open court on Sept. 29, 2005 after hearing upon the Sears defendants' Motion to Dismiss. The

---

the citations to the record here are omitted for brevity.

remaining substantive counts are civil rights claims brought under 42 U.S.C. §§ 1981, 1985, 1986.[2] Two of these remaining counts allege civil rights "conspiracy" among the defendants, and the remaining two counts consist of an action for "neglect to prevent" civil rights violations, as well as an Equal Protection claim. For the reasons that follow, the Defendant is entitled to Summary Judgment as to each of the Counts against him.

## II. STANDARD OF REVIEW

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once the movant avers 'an absence of evidence to support the nonmoving party's case, ... the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir. 1991) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). While a court must examine the record in the light most favorable to the opposing party, "Rule 56 does not invite a court to enter the realm of surmise." Local 48 v. United Brotherhood of Carpenters & Joiners, 920 F.2d 1047, 1051 (1st Cir. 1990). "[W]here elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Stratus Computer, Inc.,

---

[2] Count VII seeks attorney fees under 42 U.S.C. § 1988, which are not recoverable absent a finding of a violation of another civil rights statute, and is thus not an independent cause of action. See, e.g. North Carolina Dept. of Transp. v. Crest Street Community Council, Inc., 479 U.S. 6, 12 (1986) (stating "[o]n its face, § 1988 does not authorize a court to award attorney's fees except in an action to enforce the listed civil rights laws").

3

40 F.3d 11, 12 (1st Cir. 1994) (citations omitted).

## III. ARGUMENT

### A. Plaintiff's Claim for Conspiracy Under 42 U.S.C. § 1985 Fails

The first two counts of Plaintiff's Complaint rely on two separate subdivisions under Section 1985 which prohibit conspiring to violate civil rights. Count I is entitled "Violation of 42 U.S.C. § 1985(2) Conspiracy to interfere with civil rights by obstructing justice; intimidating party, witness, or juror."[3] In Count II, plaintiff seeks to recover for an alleged violation of 42 U.S.C. § 1985(3).[4] There is simply no evidence of any agreement to support the claimed conspiracy, let alone any evidence of a discriminatory animus or an underlying violation of civil rights required to establish such claims.

#### 1. Scope of § 1985 and Elements of Proof

Section 1985 of Title 42 is divided into three subsections. As explained by the Supreme Court, "[i]n general terms, [§ 1985] proscribed conspiracies that interfere with (a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws;' and (e) the right to support candidates in federal elections. ... One of the five classes of prohibited conspiracy is proscribed by § 1985(1), two by § 1985(2), and two by § 1985(3). The civil remedy for a violation of any of the subsections is

---

[3] In Count I plaintiff alleges plaintiff alleges Officer Mansfield and the Sears defendants "conspired to provide false testimony and threaten witnesses" in order to obstruct justice, thereby depriving his procedural and substantive due process rights, including his right to equal protection of the laws, by providing false testimony and threatening witnesses. See Pl.'s Compl. Ct. I.

[4] Count II alleges that Officer Mansfield and the Sears defendants conspired "to interfere with and deprive the plaintiff of his 5th and 14th Amendment constitutional right to procedural and substantive due process (equal protection) based on his class (fired employee), his race (Asian), and his ethnicity (Cambodian) ...." See Pl.'s Compl. Ct. II.

4

found at the end of § 1985(3).'"[5] Kush v. Rutledge, 460 U.S. 719, 724 (1983).

Count I of the Plaintiff's Complaint, and the alleged facts, track the language of the second clause of Section 1985(2), which prohibits conspiracies to interfere with State courts' administration of justice.[6] An action based on the second clause of Section 1985(2) allows a person to recover damages for the harm he suffered as a result of a conspiracy of "two or more persons ... for the purpose of impeding ... in any manner, the due course of justice in any State ... with intent to deny to any citizen the equal protection of the laws." 42 U.S.C. § 1985(2). Count II, meanwhile, refers to the prohibition in §1985(3) against conspiracies

Unlike the other provisions of § 1985, the prohibitions against conspiracies upon which Plaintiff's Complaint is based, conspiracies to obstruct justice in state court (§1985(2) cl. 2), as well as to deny equal protection of the laws (§1985(3)), "encompass underlying activity that is not institutionally linked to federal interests and that is usually of primary state concern." Kush v. Rutledge, 460 U.S. 719, 725 (1983). Thus, the Supreme Court has held proof of these claims requires "that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." Id.

Therefore, in order to recover under § 1985(2), Plaintiff must prove: (1) a conspiracy; (2) to deter a witness by force, intimidation, or threat from attending or testifying before a state court; (3) motivated by class-based, invidiously discriminatory animus (4)that results in injury to the plaintiff. See 42 U.S.C. § 1985(2); see also Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (discussing

---

[5] Thus Count I of the Complaint is not a proper spearate claim. Claims of violations of §1985(2) are only actionable under §1985(3), which is the basis of Count II. For this reason alone, Count I should be dismissed.

[6] The first part of § 1985(2) proscribes conspiracies that interfere with the administration of justice in federal court, and the second part proscribes conspiracies that interfere with the administration of justice in state court. See Kush v. Rutledge, 460 U.S. 719, 725 (1983).

burden of proof under § 1985(3)); Morast v. Lance, 807 F.2d 926, 929-30 (11th Cir. 1987) (discussing elements for claim of interfering with federal court administration of justice).[7] A similar burden of proof applies to claims of conspiracy under § 1985(3). The plaintiff must demonstrate the existence of 1) a conspiracy 2) motivated by class-based, invidiously discriminatory animus 3) whose purpose was to deprive the plaintiff of equal protection or equal privileges and immunities under the law and that 4) an overt act in furtherance of the conspiracy was performed resulting in 5) injury or the deprivation of a constitutional right or privilege. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (citing Griffin v. Breckenridge, 403 U.S. 88 (1971)).

### 2. No Conspiracy Existed

In the present case, there was no conspiracy involving Officer Mansfield, nor any agreement with anyone to take action in any way directed towards Plaintiff. The Aulson Court explained, "plaintiffs must allege facts showing that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious." Aulson, supra 83 F.3d at 3 (interpreting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). The Aulson Court did not specifically define "conspiracy" under Section 1985, however, the First Circuit has defined the term under other civil rights statutes, and other Circuit Courts described the meaning under § 1985.

For example, in deciding a § 1985 claim, the Seventh Circuit has stated "conspiracy" is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in that damage.' " See Lenard v. Argento, 699 F.2d 874, 882 (7th Cir.1983) (citation omitted). Similarly, for a §1983

---

[7] Defendant has not located a reported decision precisely articulating the elements of proof for a claim based upon alleged conspiracies to interfere with state court administration of justice.

6

claim, the First Circuit has ruled: "A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."[8] Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988) (internal quotation marks omitted).

The Summary Judgment record here is devoid of any evidence, whatsoever, of a conspiracy, or any agreement, or any action in concert, involving Officer Mansfield. Officer Mansfield's involvement was no more than driving to the scene, speaking to two Sears employees, obtaining a written statement, writing a report, and requesting a show cause hearing. He did this as part of his official duties as a police officer, and left the matter for the clerk magistrate to decide whether to proceed with criminal charges.

In an instructive case, a District Court ruled the plaintiffs' claimed conspiracy failed "because the evidence is insufficient to permit a reasonable factfinder to infer that a willful conspiracy existed. 'A party may not cry 'conspiracy' and throw himself on the jury's mercy.' Nor may a jury return a verdict for a plaintiff based on mere speculation." Duca v. Martins, 941 F.Supp. 1281, 1291 (D.Mass. 1996) (citations omitted). Over forty years ago, the First Circuit ruled that "by the bare use of the word 'conspiracy,' with no supporting facts that tend to show the existence of an unlawful agreement or prima facie improper behavior, plaintiff has not met the burden of countering affidavits making such explicit denials." Moran v. Bench, 353 F.2d 193, 195 (1st Cir. 1965). In the present case, Plaintiff's allegations of conspiracy are simply bold, unsupportable conclusions, without any

---

[8] The First Circuit has added that for a conspiracy to be actionable under section 1983 the plaintiff has to prove that "there [has] been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980).

substantiated facts, entitling Officer Mansfield to summary judgment on both Counts I and II.

### 3. No Discriminatory Animus Motivated Defendant Mansfield or Others

Plaintiff's claims of § 1985 conspiracies also fail for lack of proof of any impermissible intent by Officer Mansfield. The First Circuit interprets the Supreme Court's requirement that a § 1985 suit must address a conspiracy based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" to mean that the defendants must have conspired against them because of their class membership, and "the criteria defining the class are invidious." Aulson, supra 83 F.3d at 3-4 (quoting Griffin v. Breckenridge, 403 U.S. 88 (1971). Assuming arguendo that Plaintiff's status as "Asian" and his Cambodian ethnicity place him within a protected class, once again there is no evidence the Officer Mansfield was aware of Plaintiff's racial or ethnic background.[9]

The Summary Judgment record establishes Officer Mansfield never met or even saw Plaintiff. Plaintiff himself acknowledges as much. There is no evidence that any of the Sears defendants ever described Plaintiff to Officer Mansfield in terms of being Asian or Cambodian. Officer Mansfield's police report designated the plaintiff's racial background as "unknown." Officer Mansfield stated the racial and ethnic background of Plaintiff had no impact on his investigation, and was a "non-factor" to him. There is no evidence to dispute this plain truth. There is not even a scintilla of evidence to establish the requisite "invidiously discriminatory animus" and thus Officer

---

[9] Notably, Plaintiff also alleges a right to recover "based on his class (fired employee)." See, Pl.'s Compl. ¶ 36. Certainly Plaintiff's status as a "fired employee" has no constitutional significance. The Supreme Court has not decided what is "otherwise" a class, but it has noted that "(w)hatever may be the precise meaning of 'class' for purposes of Griffin's speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269, 113 S.Ct. 753, 759 (1993). Being a "fired employee" simply does not rise to the level of magnitude to implicate § 1985.

8

Mansfield is entitled to Summary Judgment on the § 1985 Counts.

### 4. No Interference with the State Court Administration of Justice Occurred

Further shortcomings with Plaintiff's cry of conspiracy is the absence of any proof of interference with the administration of justice in the state court, which is the illicit purpose of conspiracies proscribed under §1985(2). Section 1985 is intended to prohibit conspiracies to deter a witness by force, intimidation, or threat from attending or testifying before a state court. See Morast v. Lance, 807 F.2d 926, 929-30 (11th Cir. 1987) (discussing elements for claim of interfering with federal court administration of justice); see also Kimble v. D.J. McDuffy Inc., 648 F.2d 340 (5th Cir.1981) (stating a § 1985(2) conspiracy must be intended to interfere with a party or witness's right to attend or testify in court). There is simply no evidence that Officer Mansfield in anyway agreed or conspired to interfere with Plaintiff's or a witness' court testimony in this case.

Anecdotally, Plaintiff has testified that Jose Hernandez left the courthouse at the initial show-cause hearing, however, Plaintiff's hearsay account of what Mr. Hernandez said about "lying" before departing is not admissible to survive summary judgment. See, e.g. Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir.1998) (stating "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment.") Nonetheless, Mr. Hernandez did later testify at the criminal trial. There is no evidence that Officer Mansfield ever told him not to testify at trial or any other time. There is no competent evidence that anyone from Sears ever told Mr. Hernandez not to testify or otherwise influenced his testimony, let alone that the Sears employees agreed with Officer Mansfield to do so. This is simply a baseless claim against Officer Mansfield.

### 5. No Intent to Deprive Plaintiff of Equal Protection

Similarly, the § 1985 claims also fail due to lack of proof of any intent to deprive Plaintiff of equal protection. In Griffin, the Supreme Court construed the statute's references to "equal

9

protection" and "equal privileges and immunities under the laws" to signify a plaintiff may recover thereunder only when the conspiratorial conduct of which he complains is propelled by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). As discussed above, there is simply no evidence of any "invidiously discriminatory animus" by Officer Mansfield, and therefore Plaintiff cannot meet his burden of proof as to this element of a § 1985 claim, entitling the Defendant to summary judgment.

### B. The Neglect to Prevent a Conspiracy Claim Under 42 U.S.C. § 1986 Must Fail

The Defendant is also entitled to summary judgment on Count III of Plaintiff's Complaint, alleging a "neglect to prevent conspiracy," under 42 U.S.C. § 1986. It is well-settled that § 1986 claims require proof of an underlying violation of § 1985. See Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 835 (1st Cir. 1982) (holding Plaintiff's section 1986 claim must fail because it had no section 1985(3) claim to support it). When the § 1985 claim is rejected, the Plaintiff's claims pursuant to § 1986 must also fall. Hahn v. Sargent, 523 F.2d 461 (1st Cir. 1975), cert. denied 425 U.S. 904 (1976). For this basis alone the Defendant is entitled to summary judgment on Count III of the Complaint.

Even should this court look to the merits of the claim, the Plaintiff's proof is non-existent. Section 1986 is designed to reach persons with knowledge of § 1985(3) conspiracies who have the power to prevent violations protected by § 1985(3) and fail to do so. See Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1088 (2d Cir. 1993). Thus, § 1986 liability is "dependent on proof of actual knowledge of the wrongful conduct of his subordinates." See Hampton v. City of Chicago, 484 F.2d 602 (7th Cir. 1973) cert. denied 415 U.S. 917 (1974). There is simply no evidence whatsoever that Officer Mansfield knew of a conspiracy as defined under § 1985 existed. Officer Mansfield's brief involvement was limited to visiting the scene, speaking to two Sears

10

employees, securing a witness statement, writing a report and applying for a criminal complaint. None of this conduct implicates knowledge of a conspiracy by Sears employees. Once again, Plaintiff's bald, unsupported allegations cannot withstand summary judgement.

### C. There is No Evidence of Violation of the Right to Contract Under 42 U.S.C. § 1981

Count VI of Plaintiff's Complaint alleges a violation of § 1981 for Plaintiff's guarantee of "Equal Rights Under the Law." According to the First Circuit, "to state a claim under this statute, a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant discriminated against him on the basis of his race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute." Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002) (internal quotations omitted). Section 1981 states that "all persons ... shall have the same right in every State and Territory to make and enforce contracts," and defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." Id., quoting 42 U.S.C. § 1981.

As a threshold matter, there is no "contract" at issue in this case. Plaintiff cannot state a § 1981 claim unless he has, or would have, rights under existing, or proposed, contract that he wishes "to make and enforce." See Domino's Pizza, Inc. v. McDonald, ___ U.S. ___, 126 S.Ct. 1246 (2006). The only "contract" alluded to in this Count of Plaintiff's Complaint is the reference to the alleged "right to an occupation" being denied "because of this race (Asian) and ethnic background (Cambodian)." See Pl.'s Compl. Ct. VI. Arguably, even had Officer Mansfield's involvement occurred while Plaintiff was still employed by Sears, the employment relationship could not have

served as the "contract" basis for the § 1981 claim because Plaintiff was an at-will employee.[10] See, e.g. Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 668 n. 6, 429 N.E.2d 21 (1981) (stating at will employment may be terminated "at any time for any reason or for no reason at all"). Nonetheless, in the present case, Plaintiff had already been terminated from his employment for unrelated infractions at the time of the oil spill incident. Thus, he had no contractual relationship with Sears whatsoever. There is no existing or proposed contract which Plaintiff sought to "make or enforce," at the time of the oil spill or Plaintiff's criminal prosecution. Absent a contract at issue, the Defendant is entitled to summary judgment on the § 1981 claim.

Of course, even assuming a contractual right was at issue, there remains no evidence of any race based discrimination, which is an essential element of a § 1981 claim. See Garrett v. Tandy Corp., 295 F.3d 94, 100 (1st Cir. 2002) (stating § 1981 applies to those situations in which a defendant, "acting out of racial animus," impedes plaintiff's ability to enter into, or enjoy the benefits of, a contractual relationship). As discussed above, Officer Mansfield was completely unaware of Plaintiff's racial or ethnic background. Officer Mansfield never saw or met Plaintiff, and Plaintiff's racial and ethnic background was not a factor in any of Officer Mansfield's conduct. These uncontested facts preclude a § 1981 claim against Officer Mansfield.

### D. The Plaintiff's Other Civil Rights Claims were Properly Dismissed

In response to the Motion to Dismiss filed by the Co-Defendant Sears, the Court, Wolf, C.J., dismissed Counts IV and V of the Complaint. These counts had alleged violations of the Plaintiff's civil rights in Count IV arising under the 5th & 14th Amendment providing a "right to an occupation;"

---

[10] The First Circuit has not yet addressed the question of whether an at-will employment relationship constitutes a contractual relationship under § 1981. There is significant authority, however, that concludes that an at-will employee may sue under § 1981. See, e.g. Lauture v. International Bus. Mach. Corp., 216 F.3d 258, 259 (2d Cir.2000); Joseph v. Wentworth Inst. of Tech., 120 F.Supp.2d 134, 144 (D.Mass. 2000).

and in Count V his right "to be free from prosecution without probable cause (Malicious Prosecution)." Although not articulated in a written decision, Chief Judge Wolf ruled in open court that Count IV fails because it relates to Plaintiff's employment termination which occurred before Officer Mansfield became involved, and thus there can be no showing of "state action" as required to maintain the civil rights claim. In addition, claims for malicious prosecution in Massachusetts does not give rise to a procedural due process claim because Massachusetts provides an adequate remedy for malicious prosecution, citing Nieves v. McSweeney, 241 F.3d 46 (1st Cir. 2001).

The disposition of these counts applies equally to Officer Mansfield, even though the Motion was brought by the Co-Defendant Sears, because the underlying legal basis is the same. As a matter of undisputed fact, Plaintiff was terminated from his employment for unrelated infractions some three days before the oil spill incident which forms the basis of the Complaint. Thus even assuming there exists a "right to an occupation," it could not have been infringed by any conduct of Officer Mansfield.[11] Count IV, alleging this "right" was infringed was properly dismissed. So too, there is no claim against Officer Mansfield for prosecution without probable cause. Indeed, the clerk magistrate who reviewed the evidence found "probable cause" and issued a summons. See, e.g. Mass. Gen. L.ch. 218 § 35A (providing the court may "cause process to be issued unless there is no probable cause to believe that the person who is the object of the complaint has committed the offense charged"); Commonwealth v. DiBennadetto, 436 Mass. 310, 314, 764 N.E.2d 338, 342 (2002) (stating once a determination was made by the clerk-magistrate that probable cause existed for the issuance of the complaint, the complaint should have issued). This independent determina-

---

[11] The Supreme Court, however, "has never held that the right to any particular private employment is a 'right of national citizenship,' or derives from any other right created by the Constitution." Great American Federal Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 380-381 (1979).

tion of probable cause alone vitiates plaintiff's purported Fourth Amendment claim. Additionally, as the First Circuit articulated, "[i]t is perfectly clear that the Due Process Clause cannot serve to ground the appellants' federal malicious prosecution claim. No procedural due process claim can flourish in this soil because Massachusetts provides an adequate remedy for malicious prosecution." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). Count V was properly dismissed.

### E. The Defendant Is Entitled to Qualified Immunity

Officer Mansfield is entitled to qualified immunity from liability even should this court assume arguendo that Plaintiff can demonstrate any underlying civil rights violations. Under federal law, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity, which is a question of law, is an issue that is appropriately decided by the court during the early stages of the proceedings and should not be decided by the jury." Tatro v. Kervin, 41 F.3d 9, 15 (1st Cir. 1994). See Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987)(motions for summary judgment based on qualified immunity should be favored). This is so because "[t]he entitlement is an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The standard for judging a motion for summary judgment brought by a government official seeking qualified immunity is "whether a reasonable official could have believed his actions were lawful in light of clearly established law." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994). The doctrine of qualified immunity "requires a constitutional right to be clearly established so that public officials are on notice that this conduct is in violation of that right." Frazier v. Bailey, 957 F.2d 920, 930 (1st. Cir. 1992). The focus should be not on the merits of the

14

plaintiff's underlying claim, but instead on the objective legal reasonableness of the official's conduct as measured by reference to clearly established law and the information the official possessed at the time of the allegedly unlawful conduct. Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995); Febus-Rodriguez, at 91. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Lowinger at 65. The doctrine anticipates and accommodates "reasonable error ... because officials should not err always on the side of caution" for fear of being sued. Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal citations omitted).

The Supreme Court has set up a sequential analysis for determining whether a defendant violated clearly established rights of which a reasonable person would have known. See Saucier v. Katz, 533 U.S. 194, 201-06 (2001). The First Circuit has construed that framework to consist of three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Limone v. Condon, 372 F.3d 39, 44 (1st Cir.2004). As discussed above, the summary judgment record establishes there were no constitutional violations at all by Officer Mansfield, thus he cannot be held liable. Furthermore, a reasonable officer in these circumstances would not have understood that speaking to two employees, submitting a police report and filing an application for a criminal complaint contravened any constitutional rights.

First and foremost among the grounds establishing that Officer Mansfield's conduct was objectively legally reasonable is the probable cause determination by an independent clerk-magistrate. Certainly this finding by the clerk magistrate endorses the objective legal reasonableness

of Officer Mansfield's conduct in applying for a criminal complaint. See, e.g. McKinney v. Richland County Sheriff's Dept., 431 F.3d 415 (4th Cir. 2005) (holding officer who applied for warrant enjoyed qualified immunity because absence of probable cause would not have been evident to objectively reasonable officer given magistrate's independent judgment of probable cause). Furthermore, Officer Mansfield did not make an arrest of Plaintiff directly. Instead he merely submitted the evidence he obtained to a judicial officer for further action. This was imminently reasonable, and such conduct should be praised rather than subject to civil liability. By any measure, Officer Mansfield's conduct was "objectively legally reasonable." No reasonable public official taking the steps he took responding to a police dispatch would have reasonably believed that doing so would have violated any of Plaintiff's civil rights.

Furthermore, the alleged improper motive or intent of the Defendant is <u>not</u> a relevant inquiry in determining the application of qualified immunity. Crawford-El v. Britton, 523 U.S. 574 (1998). As discussed above, there is simply no evidence of any discriminatory animus by Officer Mansfield. In Crawford-El the Supreme Court stated, "a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is <u>simply irrelevant</u> to that defense." Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 1592 (1998) (emphasis added). So too here, Plaintiff's "'bare allegations of malice' cannot overcome the qualified immunity defense." Id. Because the Officer Mansfield's conduct was objectively legally reasonable, he is entitled to qualified immunity and summary judgment.

### IV. CONCLUSION

For the foregoing reasons, the Defendant, Gary Mansfield, respectfully requests that this

Honorable Court grant his Motion for Summary Judgment as to all counts of Plaintiff's Complaint against him, together with costs and attorneys fees and such other relief this Court deems just and proper.

        Respectfully Submitted,
        The Defendant,
        GARY MANSFIELD,
        By his attorneys,

        **PIERCE, DAVIS & PERRITANO, LLP**

        John J. Cloherty III, BBO # 566522
        Ten Winthrop Square
        Boston, MA  02110
        (617) 350-0950

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the above document was served upon each attorney of record, or pro se litigant, by electronic mail.

1/5/07
Date