UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 0412164 MLW

| | |
|---|---|
| ERIC SOUVANNAKANE,<br>    Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| SEARS ROEBUCK & CO., WILLIAM SULLIVAN<br>RICHARD SPELLMAN, BARBARA TAGLIARINO,<br>KEVIN SULLIVAN, ALICIA COVIELLO,<br>GARY MANSFIELD,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT GARY MANSFIELD'S LOCAL RULE 56.1 CONCISE STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

Pursuant to L.R. 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, the Defendant Gary Mansfield submits the following concise statement of the material facts of record as to which Defendant contends there is no genuine issue to be tried:

**Plaintiff's Employment with Co-Defendant Sears Roebuck**

1. Plaintiff, Eric Souvannakane, was born in Salem, Massachusetts, and has worked in the automotive industry since graduating from high school in 2002. See Pl. Depo. pp. 7, 9-11 (attached hereto as **Exhibit A**).

2. Plaintiff was hired by Sears in August 2002. See Pl. Depo. pp. 60.

3. Plaintiff worked for Sears for a little more than one year, being terminated in October 2003. See Pl. Depo. pp. 60.

4. Plaintiff's job titles were "tire tech," "oil lube tech," "battery tech," and "maintenance tech." See Pl. Depo. pp. 61.

5. Plaintiff was employed full time at Sears, working 40 hours per week. See Pl. Depo. pp. 62.

**Plaintiff's Termination from Employment at Sears**

6. Plaintiff testified that he was terminated from employment after being wrongfully accused of swearing at a customer. See Pl.'s Depo. pp. 93-94.

7. Plaintiff contends that it was a different auto technician that swore at the customer, however Plaintiff was not given a chance to explain himself before the termination. See Pl.'s Depo. pp. 99-100; 108.

8. Plaintiff acknowledged the swearing incident occurred on October 14, 2003. See Pl.'s Depo. pp. 101-102.

9. Sears obtained three handwritten witness statements that indicate Plaintiff swore at a customer. See Witness Stmt.s (attached hereto as **Exhibit B**).

10. Plaintiff acknowledged having received a written warning for a prior incident on September 29, 2003 where he swore at a customer. See Pl.'s Depo. pp. 111-112; see also Handwritten Final Warning dtd. 10/2/03 (attached hereto as **Exhibit C**).

11. Plaintiff admitted that he swore at the customer in this prior incident, but explained it was only after the customer called him a "chink." See Pl.'s Depo. pp. 113-114.

12. The Plaintiff was terminated after the second swearing incident on October 14, 2003. See Pl.'s Depo. pp. 122-123.

**The Oil Spill Incident**

13. Plaintiff denied ay knowledge of the oil spill at Sears, testifying he first learned of it when he received a citation in the mail. See Pl.'s Depo. pp. 123-124.

14. The "citation" referred to by Plaintiff was the Application for Criminal Complaint. See Pl.'s Depo. p. 171-172; see also Applic. for Crim. Compl. No. 0413-CR-1350 (attached hereto as

**Exhibit D).**

15. After his employment termination, however, Plaintiff stated he returned to the Sears Automotive Shop in order to return car keys and a truck he borrowed from a co-worker, and also to check on his toolbox. See Pl.'s Depo. pp. 125-126.

16. While checking on his toolbox, Plaintiff "pushed" an oil container "out of the way." See Pl.'s Depo. pp. 129.

17. Plaintiff described that oil container as holding a gallon or two of oil. See Pl.'s Depo. pp. 130.

18. He then noticed the oil container had fallen over and oil was spilling. See Pl.'s Depo. pp. 131.

19. Plaintiff's Co-worker John Baldi Jr. described the incident as being due to Plaintiff "kicking" the oil drum, but agreed the amount of oil spilled was small. See J. Baldi Jr. Depo. pp. 50-52 (attached hereto as **Exhibit E**).

20. Plaintiff said he cleaned up the spill, which was minor, and did not tell anyone at Sears Management about the spill. See Pl.'s Depo. pp. 131.

21. Plaintiff testified he had no knowledge concerning an oil spill of "less than 30 gallons" which was alleged in paragraph 19 of the Complaint. See Pl.'s Depo. pp. 135-136.

22. Plaintiff stated he never learned from any source as to who actually caused the oil spill which was the subject of the criminal complaint. See Pl.'s Depo. pp. 175-176.

23. Plaintiff presumed there were two oil spills, one that he caused and cleaned up, and then a separate spill which was the subject of the criminal charge. See Pl.'s Depo. pp. 176-177.

**Officer Mansfield's Investigation**

24. Officer Mansfield is a twenty-eight year veteran of the Saugus Police Department. See G. Mansfield Depo. pp. 9-10 (attached hereto as **Exhibit F**).

25. On the evening of Oct. 17, 2003, Officer Mansfield was dispatched to the Sears Automotive Building at the Saugus Mall. See G. Mansfield Depo. p. 12.

26. Upon arrival at Sears, Officer Mansfield spoke to the Loss Prevention official for Sears, Alicia Coviello, who informed that a former employee had come on the property and caused property damage. See G. Mansfield Depo. pp. 13-14; 27.

27. Officer Mansfield obtained a voluntary statement from one of the employees who said he witnessed the events. See G. Mansfield Depo. pp.14, 27; see also Witness Stmt. of J. Hernandez dtd. 10/17/03 (attached to Police Incident Report no. 03-1692-OF as **Exhibit G**).

28. The witness statement of Jose Hernandez reflects that he saw "Eric" come to the store, "throw windshield washer fluid," then hearing a bang of a barrel hitting the floor, saw Eric "picked up the barrel," "place oil pads on the spill" and then Eric told Jose "you didn't see anything right." See Witness Stmt. of J. Hernandez dtd. 10/17/03.

29. Officer Mansfield did not physically see the property damage because by the time he was dispatched to the scene, the oil spill had already been cleaned up. See G. Mansfield Depo. pp. 14-15.

30. Officer Mansfield was informed by Ms. Coviello of Sears that the total value if the damage from the oil spill, including the clean-up, was in the range of $3000.00. See G. Mansfield Depo. pp. 21, 28-29.

31. The invoice from the clean-up company reveals that the cost of the clean-up of the spill was

$4,483.65. See Enpro Svc.s Inc. Invoice dtd. 12/31/03 (attached hereto as **Exhibit H**).

32. Officer Mansfield's sources of substantive information in his investigation were speaking with Loss Prevention official Ms. Coviello, and the employee Mr. Hernandez. See G. Mansfield Depo. pp. 27-28.

33. Although Plaintiff testified that his former co-worker John Baldi Jr. told him Officer Mansfield questioned Baldi and everyone at Sears; Mr. Baldi Jr. himself testified, that he did not know Officer Mansfield, not having ever seen him before. Compare Pl.'s Depo. p. 179-180, with J. Baldi Jr. Depo. pp. 15-16.

34. Mr. Baldi testified that he was never interviewed by any members of the Saugus Police at any time concerning the oil spill. See J. Baldi Jr. Depo. pp. 75-76.

35. Mr. Baldi did not know that any other Sears employees had been interviewed by the Saugus police. See J. Baldi Depo. p. 76.

36. The only evidence that Plaintiff could identify concerning Officer Mansfield creating a false report was the citation itself, because Plaintiff contends he did not cause the oil spill. See Pl.'s Depo. pp. 140-143.

37. Officer Mansfield did not arrest anyone as a result of his investigation. See G. Mansfield Depo. pp. 29-30.

**The Criminal Proceedings**

38. Officer Mansfield took the information provided by the Sears employees which in his view met the elements of the crime of malicious destruction of property, and submitted them to a clerk magistrate for adjudication. See G. Mansfield Depo. p. 30.

39. To accomplish this, Officer Mansfield submitted a request for a hearing, together with his

police report and the witness statement. See G. Mansfield Depo. p. 30-31.

40. Officer Mansfield did not participate in the magistrate clerk's hearing. See G. Mansfield Depo. p. 30.

41. Plaintiff appeared in Court in response to the citation he received but had little memory of the proceedings. See Pl.'s Depo. p. 184-185.

42. Plaintiff recalls that Jose Hernandez and Alicia Coviello appeared in court on the first court date, but Officer Mansfield was not present. See Pl.'s Depo. pp. 185-186.

43. The Criminal Court records reflect that on "11-25-03" the Clerk Magistrate "JBS" (Jane Brady Stirgwolt) checked the box on the form deciding that "Process to Issue" by a "Summons returnable." See Applic. for Crim. Compl. No. 0413-CR-1350.

44. This decision of "process to issue" was a finding of probable cause for the criminal complaint against Plaintiff Eric Souvannakane by the Clerk Magistrate. See Applic. for Crim. Compl. No. 0413-CR-1350.

45. Plaintiff contends that Mr. Hernandez made a remark about "lying" for Sears before leaving the courthouse on the date of the show cause hearing. See Pl.'s Depo. pp. 191.

46. Plaintiff never asked what Mr. Hernandez meant by the alleged comment. See Pl.'s Depo. pp. 191-192

47. Mr. Hernandez himself was never deposed nor otherwise corroborated under oath Plaintiff's hearsay rendition of his comments.

48. Although Mr. Hernandez left the court the first day, he later appeared for trial and did testify, as did Ms. Coviello. See Pl.'s Depo. pp. 190-192.

49. Officer Mansfield did not attend the trial and no police witnesses were called to testify. See

Pl.'s Depo. p. 192.

50. Plaintiff concedes he was never arrested by Officer Mansfield or the Saugus police, nor ever held in custody or otherwise detained due to the oil spill charges. See Pl.'s Depo. pp. 188-189.

51. The Criminal Docket reflects that after a bench trial ("BT") held before "Conlon, J." on "10-5-04" the Plaintiff Eric Souvannakane was found not guilty ("NG"). See Crim. Docket No. 0413-CR-1350 (attached hereto as **Exhibit I**).

**No Contact Between Officer Mansfield and Plaintiff**

52. Plaintiff never spoke to Officer Mansfield nor had anyone speak to Officer Mansfield on his behalf. See Pl.'s Depo. p. 170.

53. Plaintiff does not know who Officer Mansfield is, and Plaintiff has never met Officer Mansfield. See Pl.'s Depo. p. 170; 183.

**No Evidence of Discriminatory Animus**

54. Plaintiff testified he had no evidence that Officer Mansfield falsely stated the Plaintiff's ethnicity was "unknown" in the police report. See Pl.'s Depo. p. 144.

55. Plaintiff had never met Officer Mansfield and had no reason to believe Officer Mansfield was aware of Plaintiff's racial or ethnic background. See Pl.'s Depo. pp. 193-194.

56. Plaintiff never learned from any source that Officer Mansfield knew Plaintiff's racial or ethnic background. See Pl.'s Depo. p. 194.

57. Indeed, Plaintiff had no knowledge of discriminatory animus by his own employers. See Pl.'s Depo. pp. 66, 69-70 (Kevin Sullivan did not discriminate against him); pp. 70, 76 (does not know if Alicia Coviello discriminated against him); pp. 77-80 (Barbara Tagliarino did

not discriminate against him to his knowledge); pp. 80-81 (Anthony Cieri did not discriminate against him to his knowledge).

58. The only evidence he had of any racial animus was a derogatory remark by a co-worker named "Sal" at some unspecified date during Plaintiff's employment at Sears. See Pl.'s Depo. pp. 84-85, 90; 154-155.

59. Officer Mansfield did not know Plaintiff's race or ethnicity at any time during his investigation, nor was the Plaintiff's race or ethnicity a factor in the investigation. See Def. G. Mansfield Ans. Interrog. No. 8 (attached hereto as **Exhibit J**).

**No Evidence of Conspiracy**

60. The only evidence of a conspiracy which the Plaintiff could identify was the criminal citation itself. See Pl.'s Depo. pp. 149-150.

61. Plaintiff also asserted that the police report somehow showed an agreement or conspiracy between Officer Mansfield and the Sears employees. See Pl.'s Depo. pp. 201-202.

62. Nothing within either the Police Report or the initial Application for a Criminal Complaint, however, in any way demonstrates or suggests an agreement or conspiracy existed between Officer Mansfield and any Sears employees. See Saugus Police Incident Rpt. No. 03-1692-OF and accompanying doc.s (attached hereto as **Exhibit G**); see also Applic. for Crim. Compl. No. 0413-CR-1350.

WHEREFORE, for those reasons set forth in the accompanying Motion for Summary Judgment and Memorandum of Law, the Defendant, Gary Mansfield, respectfully requests that this

Honorable Court grant his Motion for Summary Judgment as to all counts of Plaintiff's Complaint against him, together with costs and attorneys fees and such other relief this Court deems just and proper.

>Respectfully Submitted,
>
>The Defendant,
>GARY MANSFIELD
>By his Attorneys,
>
>PIERCE, DAVIS & PERRITANO, LLP
>
>_____
>John J. Cloherty III, BBO # 566522
>Ten Winthrop Square
>Boston, MA 02110
>(617) 350-0950

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the above document was served upon each attorney of record, or pro se litigant, by electronic mail.

1/5/07
Date