# EXHIBIT "B"

On Tuesday night Ms. Lacroix came in to Pick up her car. She was mad because the car was not Done. Her son had droped it with me 3 hour's earlier. I Explained to her that I called the #'s that were supplied by her son. The number was his DaD's home Phone who was in Florida. I told the woman I was Sorry. She continued to be upset because her tire was not repairable. She said that she was here last week and we told her the same thing and she implied I s that what you people do here (sell people tire's they don't need) I responded and told her no we don't do that here. She then started yelling at me about the mechanics swearing. She pointed out Frank and Eric. Frank offered her his 10% off and Eric got mad that the woman pointed him out as swearing. Eric Told Frank not to Give her 10% off. I do remember Him being very Rude and saying something Profonic. I was trying to calm every thing down at the time. The woman got very upset and walked away. I told Frank he shouldn't have sworn and told eric he should not have got involved. I then went to get the customer. I ask her what she would like me to do and took care of her the best I could being apologetic and sincere. I remember her demanding everyone's name in the back shop. I think thats why Eric spoke up. He did not want to get in trouble for swearing. He then did end up swearing and I belive he should ha. been quiet. To many people got involved with this customer including Eric + cindy.

ON WEDNESDAY OCTOBER 15, 2003 I RECIEVED A CALL FROM A MRS. PAM LACROIX.

She CLAIMS THAT WHILE She WAS HAVING A TIRE REPLACED ON TUESDAY EVENING IN OUR AUTO CENTER ERIC SOUVANNAKANE BUTTED HIS 2 CENTS IN DURING HER CONVERSATION WITH ANOTHER TECH. She CLAIMS THAT WHILE SHE WAS TALKING WITH ~~THE~~ FRANK CASSALETTO THAT ERIC CAME OVER + SAID "FRANK DON'T GIVE HER 10% OFF THE TIRE SHE'S AN ASSHOLE." MRS. LACROIX SAID "YOU CAN'T TALK TO ME LIKE THAT I'M A CUSTOMER." THEY ARGUED MORE AND THEN ERIC SAID FUCK YOU TO MRS. LACROIX. She TOLD ME She WAS NERVOUS AND THAT ERIC KEPT GIVING HER DIRTY LOOKS WHILE SHE WAITED FOR HER CAR TO BE COMPLETED.

10/15/03

a Customer Came In last night 10/14/03 for a Flat Repair. Tire Could not be Repaired G.Caleo notified Customer that Tire Could not be Repaired Customer and G.Caleo had argument about purchase a new tire. Frank Could not Repair Tire Customer was unhappy Frank Said the F-word out load. Eric Came over argued with the Customer and he Said at the Customer the F-word. the Customer was unhappy and she wanted

To talk to Management. Andy Spoked to the Customer To Calm her down She said that Eric had no Right to talk the her in a Bad way. G.Caleo Told Eric to go Back to work and that Andy and himself would take Care of the Customer.

Andy DiGoethe

10-15-03

# EXHIBIT "C"

ERic SOUVANNAKANE HAS BEEN GIVEN A
FINAL WARNING PER BARBARA TAGLIARINO FOR THE
INCIDENT THAT OCCURED WITH CUSTOMER ON
9/29/2003.

X _____

X _____    10/2/03

# EXHIBIT "D"

**APPLICATION FOR COMPLAINT**

NUMBER **0413CR 1350**

☒ ADULT   ☐ JUVENILE

**Trial Court of Massachusetts
District Court Department**
COURT DIVISION

LYNN DISTRICT COURT
580 ESSEX ST
LYNN, MA.

☐ ARREST   ☒ HEARING   ☐ SUMMONS   ☐ WARRANT

THE WITHIN NAMED COMPLAINANT REQUESTS THAT A COMPLAINT ISSUE AGAINST THE WITHIN NAMED DEFENDANT, CHARGING SAID DEFENDANT WITH THE OFFENSE(S) LISTED BELOW.

DATE OF APPLICATION 10/17/2003   DATE OF OFFENSE 10/16/2003   PLACE OF OFFENSE SAUGUS, MA

NAME OF COMPLAINANT
PATROLMAN GARY E MANSFIELD

ADDRESS AND ZIP CODE OF COMPLAINANT
Saugus Police Department
27 HAMILTON ST
SAUGUS, MA 01906

NAME, ADDRESS, AND ZIP CODE OF DEFENDANT
ERIC SOUVANNAKANE
12 EUTAW AVE
LYNN, MA. 01905

| NO. | OFFENSE | G.L. AND SEC. |
|---|---|---|
| 1. | DESTRUCTION OF PROPERTY +$250, MALICIOUS [266/127/ | 266 127 |
| 2. | | |
| 3. | | |
| 4. | | |

A hearing upon this complaint application will be held at the above court address on

DATE OF HEARING Two 11/25/03 AT TIME OF HEARING 2:30 p.m.

**CASE PARTICULARS — BE SPECIFIC**

| No. | NAME OF VICTIM Owner of property, person assaulted, etc. | DESCRIPTION OF PROPERTY Goods stolen, what destroyed, etc. | VALUE OR PROPERTY Over or under $250 | TYPE OF CONTROLLED SUBSTANCE OR WEAPON Marijuana, gun, etc. |
|---|---|---|---|---|
| 1. | SEARS AUTOMOTIVE | * PLEASE SEE REPORT * | OVER | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |

OTHER REMARKS

X _____
SIGNATURE OF COMPLAINANT

**DEFENDANT IDENTIFICATION INFORMATION** — Complete data below if known.

DATE OF BIRTH 10/29/1982   PLACE OF BIRTH   SOC. SECURITY NO. 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   Sex M   Race W   HEIGHT   WEIGHT   EYES   HAIR

OCCUPATION   EMPLOYER/SCHOOL   MOTHER'S NAME (MAIDEN)   FATHER'S NAME

COURT USE ONLY

| DATE | DISPOSITION | AUTHORIZED BY |
|---|---|---|
| | **NO PROCESS TO ISSUE** ☐ At request of complainant ☐ Complainant failed to prosecute ☐ Insufficient evidence having been presented | |
| 11-25-0 | **PROCESS TO ISSUE**   **TYPE OF PROCESS** ☐ Sufficient evidence presented   ☐ Warrant ☐ Defendant failed to appear   ☒ Summons returnable _____ | JRS. |
| | ☐ Continued to _____ | |

COMMENTS (Atty soon) Joh Baldi fa Eric

17917

JRS.

DC-CR2 (5/89)

COURT COPY

# EXHIBIT "E"

1

# ORIGINAL

VOL. I
Pp. 1 - 117
Exhibits 1 - 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO.: 0412164MLW

* * * * * * * * * * * * * * * * * * *

ERIC SOUVANNAKANE,

     Plaintiff

VS.

SEARS ROEBUCK & COMPANY, WILLIAM
SULLIVAN, RICHARD SPELLMAN,
BARBARA TAGLIARINO, KEVIN
SULLIVAN, ALICIA COVIELLO, GARY
MANSFIELD,

     Defendants

* * * * * * * * * * * * * * * * * * *

     Deposition of JOHN W. BALDI, a witness called by

counsel for the Defendants, Gary Mansfield, pursuant

to the applicable rules, before Lorreen Hollingsworth,

CSR/RPR, CSR NO. 114793, and Notary Public in and for

the Commonwealth of Massachusetts, at the Law Offices

of Pierce, Davis & Perritano, LLP, Ten Winthrop

Square, Boston, Massachusetts, on Tuesday, April 18,

2006, at 10:15 a.m.

CURRAN COURT REPORTING
(781) 279-8400

| | | |
|---|---|---|
| 1 | A | Yes, I qualified to do Level 1 and Level 2 |
| 2 | | jobs, I get paid for Level 2 jobs, but I |
| 3 | | don't get the hourly pay as a Level 2. |
| 4 | Q | And still today, is your position at Sears |
| 5 | | a Tech 1 position? |
| 6 | A | Yes. |
| 7 | Q | Do you hold any licenses or certifications |
| 8 | | for your profession or trade, sir? |
| 9 | A | No. |
| 10 | Q | Now, I ask this of all witnesses, sir. |
| 11 | | Have you been convicted of a |
| 12 | | misdemeanor in the past five years? |
| 13 | A | No. |
| 14 | Q | Have you been convicted of a felony since |
| 15 | | age 18 to today? |
| 16 | A | No, never convicted of a felony. |
| 17 | Q | Are you aware, sir, that I'm representing |
| 18 | | Officer Gary Mansfield, employed by the |
| 19 | | Saugus Police in this action? |
| 20 | A | Yes. |
| 21 | Q | Have you, yourself, ever been arrested by |
| 22 | | any member of the Saugus Police? |
| 23 | A | No. |
| 24 | Q | And do you know who Officer Gary Mansfield |

CURRAN COURT REPORTING
(781) 279-8400

```
 1            is?
 2    A       I don't believe I've ever seen him before.
 3    Q       Now, when you were employed by Sears, when
 4            you first started employment there, did you
 5            have a supervisor?
 6    A       We had an assistant manager and a manager.
 7            As far as a supervisor, I'm not really sure
 8            what -- who would fall under that position.
 9    Q       When you were first hired, who was the
10            assistant manager that you worked for?
11    A       Bill Dooley was the assistant manager.
12    Q       And who was the manager at the time you
13            were first hired?
14    A       The manager's name was Rick Mead.
15    Q       And as far as your day-to-day activities at
16            Sears, did anyone give you direction on
17            what jobs to be doing?
18    A       The jobs that come back get put on the
19            board, you go up to the board, you take a
20            job, you do the job, you put the keys up
21            front.
22                      It's not, like, regulated.
23            They just put it up there; you take the
24            next one in line.
```

```
 1              later.
 2                              Can you describe what happened
 3              when he returned?
 4     A        He came back; he gave me the keys; I
 5              remember we were talking in one of the
 6              brake bays, more in the threshold to
 7              outside; we were just, you know, BS'ing
 8              around.  And I remember he knocked one of
 9              the oil drums.  And then he was, like, Oh.
10                              He didn't -- when he bumped
11              it, it was more like he was kidding.  It
12              wasn't, like, malicious.  He was like, This
13              is Larry's bay.  He started cleaning up.
14              He was like, Oh.
15     Q        I didn't catch what you said, he said oh?
16     A        Oh, this is Larry's bay.  Larry is a brake
17              guy that works in the back.
18     Q        So earlier when you described it as the
19              "brake bay," that's where you fix
20              automobile brakes?
21     A        Yes.
22     Q        Did you see how he bumped into the oil
23              drum?
24     A        I think he kicked it.  I'm not sure.
```

51

| | | |
|---|---|---|
| 1 | Q | And what kind of -- can you describe the |
| 2 | | oil drum that he kicked? |
| 3 | A | It was one of the ones that totes -- you |
| 4 | | can tote around the shop, the portable ones |
| 5 | | with the -- they have a steel drum and they |
| 6 | | have a catch pan connected to a pipe that |
| 7 | | runs into the drum. |
| 8 | Q | And do you know the volume of that |
| 9 | | particular drum? |
| 10 | A | That's one of those 20- 25- 30-gallon |
| 11 | | drums. |
| 12 | Q | And you said that it got knocked over?  Was |
| 13 | | it knocked over on its side? |
| 14 | A | I can't remember if that was knocked over |
| 15 | | or if it was one of the 5-quart oil fill |
| 16 | | jugs that are on the top.  Because if one |
| 17 | | of those fell over, it would be a mess. |
| 18 | | And there wasn't -- I mean, maybe a half a |
| 19 | | quart -- not even a half a quart of oil |
| 20 | | that came out when he hit the barrel. |
| 21 | Q | Okay.  So you have a memory of the volume |
| 22 | | of the spill being small? |
| 23 | A | Yes.  The oil that came out of what he hit |
| 24 | | was very small, I mean, smaller than this. |

1   Q   And the record is not going to reflect what

2       you're pointing to.

3   A   Sorry.  It's smaller than --

4   Q   2 feet by a foot and a half?

5   A   Yeah, 2 feet.

6   Q   Now, you mentioned that there could have

7       been two sources of that oil, the big

8       30-gallon drum or another little 5-gallon

9       gallon drum that you mentioned?

10   A   5 quarts.

11   Q   5 quarts?

12   A   There's -- when you use one of those

13       tote -- well, the tote drains, to drain the

14       waste oil in.  They have 5 -- there's one

15       4-quart and one 5-quart metal fill.  It's

16       an oil fill.  You go up to the pumps, you

17       pump the new oil into that, and you use

18       that to fill the car since the oil base is

19       the only source of the oil.  So you use

20       those oil hoses to fill one of those and

21       you can walk around the shop and fill up a

22       car.

23   Q   Okay.  And the 5-quart oil fill buckets,

24       are those stored on the ground level or are

75

1    Q    That's what I'm going to ask you about,

2         sir.

3                   The spill the next morning

4         that you saw, was that the same location as

5         the spill that you saw the night before you

6         closed up shop?

7    A    The night before -- when I saw it, it was

8         in the corner by the little shed or shack

9         with the door on it.  It was over there.

10        And when I saw it the next day, it was

11        everywhere.  It wasn't just there; it was

12        under the bays; it was out into the dead

13        bay; it was spread all over by the water.

14   Q    Okay.  Were you aware that the Saugus

15        Police were called about this incident,

16        sir?

17   A    I had no idea.

18   Q    Did you ever see any representative of the

19        Saugus Police come to Sears after this oil

20        spill?

21   A    I saw no law enforcement whatsoever.  As

22        far as police officers, I didn't see

23        anybody like that.

24   Q    And I take it from that response that you,

76

```
 1              yourself, were not interviewed by any

 2              officers of the Saugus Police Department?

 3    A    Not about -- no, no.

 4    Q    I'm directing the question towards about

 5              being interviewed about this oil spill,

 6              sir.

 7    A    The only person that interviewed me was

 8              Bill Sullivan.

 9    Q    Were you aware of any other Sears employees

10              who were asked to speak to the police about

11              this incident?

12    A    I had no idea that other employees spoke to

13              the police.

14    Q    Did any employees ever later tell you that

15              I had to speak to the police about this

16              incident?

17    A    Not that I can remember.

18    Q    And I think I might have asked you this

19              earlier, but you don't know who Officer

20              Gary Mansfield is of the Saugus Police

21              Department?

22    A    No.  I've never seen him, to the best of

23              my -- no, I have no idea.

24    Q    And consistent with that, you never spoke
```

# EXHIBIT "F"

**GARY MANSFIELD**
**April 27, 2006**

 COPY

Page 1

1                UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF MASSACHUSETTS

3                              C.A. NO. 04-12164-MLW

4

5

6    ERIC SOUVANNAKANE,

7                  Plaintiff

8    v.

9    SEARS, ROEBUCK AND CO.,

10                 Defendant

11

12

13

14

15          DEPOSITION OF:  GARY MANSFIELD

16            Law Offices of Kurt Olson

17              500 Federal Street

18            Andover, Massachusetts

19          April 27, 2006          10:00 a.m.

20

21

22

23            Charlotte C. Rosati

24        Registered Professional Reporter

**CATUOGNO COURT REPORTING SERVICES**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI**

**GARY MANSFIELD**
**April 27, 2006**

Page 9

1      A.    I have a house.

2      Q.    **And did you live somewhere else in**

3 **Saugus prior to the house that you're in now?**

4      A.    Yes.

5      Q.    **Okay. And how long did you live in**

6 **that prior residence?**

7      A.    Thirty-five years.

8      Q.    **Okay. Are you married or single?**

9      A.    I am married.

10      Q.    **Do you have any children?**

11      A.    Yes.

12      Q.    **And your educational background?**

13 **Where were you educated?**

14      A.    Saugus schools.

15      Q.    **Anything postgraduate from high**

16 **school?**

17      A.    Umm. Accredited? I don't know what

18 you mean.

19      Q.    **College? Junior college?**

20      A.    No.

21      Q.    **Training programs?**

22      A.    Military and police. That's it.

23      Q.    **Okay. Where do you work now?**

24      A.    Saugus Police Department.

**GARY MANSFIELD**
**April 27, 2006**

Page 10

1    Q.    And how long have you worked there?

2    A.    I believe this is my twenty-eighth

3  year.

4    Q.    Okay.  And what is your position at

5  the Saugus Police Department?

6    A.    I am a patrol officer.

7    Q.    So you worked as a patrolman or patrol

8  officer for the Saugus Police Department going

9  on twenty-eight years; is that correct?

10    A.    Yes.  The first eight were full-time

11  reserve status, and from '85 on, it was

12  full-time status.

13    Q.    Okay.  As part of your training for

14  becoming a police officer in Saugus, did you

15  attend either the State Police Academy or a

16  local academy?

17    A.    Yes.

18    Q.    Which one?

19    A.    It was a municipal academy run by the

20  State Police.

21    Q.    Okay.  And have you ever applied for

22  or tested for a sergeant's exam?

23    A.    I have tested for it.

24    Q.    And what are the results of those

**GARY MANSFIELD**
**April 27, 2006**

Page 12

1      A.    We have annual in-service.

2      Q.    And were you on duty and performing

3   your functions as a patrol officer on, I believe

4   it was a Friday, October 17th, 2003?

5      A.    Yes.

6      Q.    And at sometime during the course of

7   that day, did you go to the Sears Automotive

8   building at the Square One Mall in Saugus?

9      A.    Yes, I did.

10     Q.    Do you remember approximately what

11  time you went to the Sears Automotive building?

12     A.    I do not.  My best guess is early

13  evening.

14     Q.    Okay.  And what were the circumstances

15  that caused you to go to the Square One Mall,

16  Sears Automotive?

17     A.    I was sent there.

18     Q.    And who dispatched you to the Square

19  One Mall?

20     A.    Police dispatch.

21     Q.    Okay.  Did anyone accompany you, a

22  partner, to the Sears Automotive?

23     A.    No.

24     Q.    Okay.  Do you know if there is a

**GARY MANSFIELD**
**April 27, 2006**

Page 13

1   record or a log of dispatchers kept by the

2   Saugus Police Department?

3       A.   I don't know what their recordkeeping

4   is.

5       Q.   Okay.   When you arrived at Sears

6   Automotive on the 17th of October, 2003, what

7   did you do?

8       A.   I entered the building.

9       Q.   Okay.   Which building.   The Sears

10  Automotive building?

11      A.   Yes.

12      Q.   Okay.   And with whom did you meet?

13      A.   I don't recall the name.   It was a

14  female.

15      Q.   Okay.   Do you recall whether it was a

16  loss prevention officer?

17      A.   My understanding, it was.

18      Q.   Okay.   And what did you discuss with

19  this person?

20      A.   She told me why I was called up

21  there.

22      Q.   And what did she say as to why you

23  were called up there?

24      A.   My recollection is that she said that

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 14

1  they had an incident with a past employee who

2  had come on the property and caused property

3  damage, and that they wanted it adjudicated.

4      Q.    Okay.  And what did you observe after

5  having this conversation with the female

6  employee of Sears?

7      A.    I obtained a voluntary statement from

8  one of the employees who stated that he

9  witnessed the event.

10     Q.    So you spoke to the person that I will

11 identify as a loss prevention officer.  You

12 spoke to her, and then spoke to a witness that

13 the loss prevention person told you to speak to;

14 is that correct?

15     A.    Yes.

16     Q.    Okay.  And do you remember that

17 person's name?

18     A.    An Hispanic name.  It doesn't come to

19 me right now.

20     Q.    Might it have been Hernandez?

21     A.    It might have been.

22     Q.    Okay.  And once you finished your

23 conversation with Mr. Hernandez and the loss

24 prevention person, did you go to observe the

**CATUOGNO COURT REPORTING SERVICES**
**Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI**

**GARY MANSFIELD**
**April 27, 2006**

Page 15

1    Sears Automotive building?

2                    MR. CLOHERTY:    Objection.

3    You can answer.

4         A.    No.

5         Q.    (By Mr. Olson)    Okay.    So let me

6    understand you.    You never actually went to the

7    Sears Automotive building to witness what had

8    been described as destroyed property; is that

9    correct?

10                    MR. CLOHERTY:    Objection.

11    You can answer.

12        A.    I was in that building.

13        Q.    (By Mr. Olson)    Okay.

14        A.    I did not go to the area that they

15    stated there was damage.

16        Q.    Okay.    And why not?

17        A.    My recollection is that it had already

18    been cleaned.

19        Q.    I see.    I would like to now actually

20    refer you to a document that I would like to

21    have marked as Exhibit 1, if I may.

22                    (Exhibit No. 1 was marked

23    for identification)

24        Q.    (By Mr. Olson)    You have just been

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 21

1  page 3?

2       A.    (Complying)

3       Q.    Interrogatory No. 6 asked you how you

4  arrived at the conclusion that the waste oil

5  contained in the 30-gallon drum had a value of

6  three thousand dollars.  And you responded:

7  That figure was given to me by Sears employee,

8  Alicia Coviello.  A-L-I-C-I-A  C-O-V-I-E-L-L-O.

9  Is that correct?

10      A.    Say the question again, please.

11      Q.    (By Mr. Olson)  Yes.  You said in

12  response to the Interrogatory about the value of

13  waste oil in the 30-gallon drum that you had

14  obtained that figure-- I'm sorry.  The quote

15  was:  That figure was given to me by Sears

16  employee, Alicia Coviello.  Is that correct?

17      A.    Yes, my dollar values that I assigned

18  to this case were given to me by Sears.

19      Q.    And did you ask Miss Coviello how she

20  arrived at that figure?

21      A.    My recollection was that I did.

22      Q.    Okay.  And have you ever purchased a

23  quart of oil for your car?

24      A.    Yes.

**GARY MANSFIELD**
**April 27, 2006**

Page 27

1              MS. NETSKI:   Yes.   Could I

2      just ask a couple of things?

3

4      EXAMINATION BY MS. NETSKI:

5

6          Q.   Officer Mansfield, you said that you

7      spoke with the loss prevention manager when you

8      arrived at the auto center; is that right?

9              MR. OLSON:   Objection.

10         A.   My understanding is that that was her

11     position, loss prevention, yes.

12         Q.   (By Ms. Netski)  And was that Alicia

13     Coviello, as far as you're able to recall?

14         A.   Yes.

15         Q.   And do you remember speaking with

16     anyone else at the auto center while you were

17     there?

18         A.   I recall other people being there, but

19     my recollection is I spoke with Alicia Coviello

20     and then the witness that I obtained a statement

21     from.

22         Q.   And that was Mr. Hernandez, to the

23     best of your recollection?

24         A.   Yes, ma'am.

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 28

1      Q.    And so would it be fair to say you

2  didn't receive any substantive information in

3  the investigation from anyone other than

4  Miss Coviello and Mr. Hernandez?

5      A.    That's my recollection and my

6  understanding, yes.

7      Q.    Okay.

8                    MS. NETSKI:    That's all I

9  have.

10

11  EXAMINATION BY MR. CLOHERTY:

12

13      Q.    Sir, you were asked on direct

14  examination by Mr. Olson about the value of

15  three thousand dollars assigned as the property

16  damage.  Do you recall that line of questioning,

17  sir?

18      A.    Yes, sir.

19      Q.    And from where was that three

20  thousand-dollar figure derived?

21      A.    That was a total value of the damage

22  including the clean-up.

23      Q.    Okay.  And how were you informed or

24  how did you determine that value, sir?

**GARY MANSFIELD**
**April 27, 2006**

Page 29

1      A.    I was given that value by the

2    complainant, Miss Coviello.

3      Q.    And, in fact, looking at what was

4    marked as Exhibit No. 2, it appears to be an

5    invoice of services from a clean-up company.  Do

6    you see that, sir?

7      A.    Yes, sir.

8      Q.    Have you ever seen that before?

9      A.    Just earlier today.

10      Q.    Okay.  And on page 2 of that document,

11    there's a total value of clean-up on that

12    invoice.  Did you see that, sir?

13      A.    Yes, sir.

14      Q.    And what is that amount?

15      A.    Four thousand four hundred

16    eighty-three dollars and sixty-five cents.

17      Q.    Earlier, sir, you were asked on direct

18    examination about a probable cause

19    determination.  Do you recall that line of

20    questioning, sir?

21      A.    Yes, sir.

22      Q.    In your role as a responding officer

23    in this case, did you effect any arrests as a

24    result of your investigation?

**GARY MANSFIELD**
**April 27, 2006**

Page 30

1      A.    I did not.

2      **Q.    And why not?**

3      A.    I brought this matter before the court

4    as requested for a probable cause hearing.  The

5    information was given to me, and my

6    understanding met the elements of the crime, and

7    the next step in that is to bring it before a

8    magistrate and have him adjudicate it.

9      **Q.    And how did that process take place,**

10    **sir?**

11      A.    I submitted a request for a hearing.

12      **Q.    And accompanying the request for a**

13    **hearing, what did you submit, sir?**

14      A.    My report and witness statements.

15      **Q.    And do you know if that hearing took**

16    **place, sir?**

17      A.    Umm.  I believe it did.

18      **Q.    Okay.  Did you have any further**

19    **participation in this matter after submitting**

20    **the request for a hearing?**

21      A.    My best recollection is that I did

22    not.

23              MR. CLOHERTY:  I don't have

24    anything further.

**GARY MANSFIELD**
**April 27, 2006**

Page 31

```
 1                     MR. OLSON:  I have

 2    redirect.

 3

 4    FURTHER EXAMINATION BY MR. OLSON:

 5

 6         Q.    You testified that you submitted

 7    witness statements, I believe.  I thought I

 8    heard plural.  Is that correct?

 9         A.    If I did, it was misspoke.  It was a

10    witness statement.

11         Q.    So the only witness statement that you

12    submitted was that of Mr. Hernandez; is that

13    correct?

14         A.    Yes, I believe that is the only one

15    that I had.

16         Q.    Okay.  You did not obtain a witness

17    statement from Miss Coviello; is that correct?

18         A.    No.

19                     MR. OLSON:  Okay.  Thank

20    you.

21                     MR. CLOHERTY:  Nothing

22    further.

23                     MS. NETSKI:  Thank you.

24         (Deposition concluded at 10:25 a.m.)
```

# EXHIBIT "G"



# Saugus Police Department
## Incident Report

Page: 1
10/19/2004

### Incident #: 03-1692-OF
### Call #: 03-15990

```
Date/Time Reported: 10/17/2003 1712
  Report Date/Time: 10/17/2003 2211
 Occurred Between: 10/16/2003 1930-10/16/2003 2000
           Status: Incident Open
Reporting Officer: PATROLMAN GARY MANSFIELD
Approving Officer: LIEUTENANT DAVID PUTNAM

        Signature: _____
```

| # | SUSPECT(S) | | | | | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | SOUVANNAKANE, ERIC | | | | | M | W | 20 | 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 | |
| | 12 EUTAW AVE | | | | | | | | | |
| | LYNN MA 01905 | | | | | | | | | |

```
          BODY: NOT AVAIL.           COMPLEXION: NOT AVAIL.
           DOB: 10/25/1982       PLACE OF BIRTH: NOT AVAIL.
LICENSE NUMBER: MA S39280836           ETHNICITY: UNKNOWN
```

| # | OFFENSE(S) | | | | A/C | STATE LAW | | | |
|---|---|---|---|---|---|---|---|---|---|

```
LOCATION TYPE: Other/Unknown             Zone: PRECINCT 4
SEARS AUTOMOTIVE CENTER     (SQUARE ONE MALL)
1325 BROADWAY
SAUGUS MA 01906
```

| # | OFFENSE | | A/C | STATE LAW | | |
|---|---|---|---|---|---|---|
| 1 | DESTRUCTION OF PROPERTY +$250, MALICIOUS | | C | 266 | 127 | |
| | OCCURRED: 10/16/2003   1730 | | | | | |

| # | VICTIM(S) | | | | | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | SEARS AUTOMOTIVE | | | | | | | | NOT AVAIL | |
| | BROADWAY | | | | | | | | | |
| | SAUGUS MA 01906 | | | | | | | | | |
| | VICTIM CONNECTED TO OFFENSE NUMBER(S): 1 | | | | | | | | | |

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|
| 1 | HERNANDEZ, JOSE | WITNESS | M | U | 22 | NOT AVAIL | |
| | 55 LUVERIC ST | | | | | | |
| | EAST BOSTON MA 02128 | | | | | | |
| | DOB: NOT AVAIL | | | | | | |
| | EMPLOYER: SEARS AUTOMOTIVE | | | | | | |
| 2 | COVIELLO, ALICIA | WITNESS | F | W | 21 | NOT AVAIL | |
| | 168 WATER ST | | | | | | |
| | SAUGUS MA 01906 | | | | | | |
| | DOB: NOT AVAIL | | | | | | |
| | EMPLOYER: SEARS | | | | | | |

# Saugus Police Department
## Incident Report

Page: 2
10/19/2004

Incident #: 03-1692-OF
Call #: 03-15990

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|

1   **OIL DEPOT INSIDE SEARS AUTOMOTIVE**                       Destroyed/Damaged/Vandalized
    *QUANTITY:* 1              *VALUE:* $3,000.00
  *SERIAL #:* NOT AVAIL
      *DATE:* 10/17/2003
    *OWNER:* SEARS AUTOMOTIVE

Ref: 03-1692-OF

RP- Alicia Coviello stated that a recently terminated employee of Sears Automotive (Eric Souvannakane) returned to the business on 10/16/03 and caused damage to the company by willfully and maliciously tipping a 30 gallon barrel that contained used motor oil. The spill required Sears to hire a hazardous waste company, which cost Sears approximately 3,000.00. The incident was witnessed by employee Jose Hernandez who supplied a written statement implicating Souvannakane.
On behalf of Sears I request that a show cause hearing be scheduled for this incident.

Mansfield/4477

# STATEMENT

I, _Jose Heranedes_, an associate of Sears, Roebuck and Co., free make the following statement to _William Sullivan_ who I know to be representative of Sears, Roebuck and Co.

I have been employed at Sears _2 years_, since _____ a

a _____ ; my associate number is _____

and my Social Security number is _____

On this date _Oct 17, 2003_ requested my cooperation in discussing a situatio that occurred during my employment with Sears. My statement pertaining to this situation follows:

Punchin a 12:00

Started an alignment at 7:00 pm. The alignment last app 1 hr. Eric arrived at 7:00-7:30 7:30 Saw him in brake dept. He with John Buck and a friend non employee. el saw him throw windshield washer fluid, then heard a bang and the barrel hit the floor. Jose turned saw barrel, Eric then picked up the barrel. Turned again saw Eric place oil pads on spill. By them the barrel was missing, & when Jose finished he was washing his hands. He stated to Jose, "You didn't see anything right. Around 8:15 Started working oil dept (Rogers car), custom saw spill around oil barrels. He didn't did not say

I have read this statement, the contents of which are true facts, that have been discussed with _____
_Jose Hernadez_ _John Reed_, _William Sullivan_ and me on this date

I have made this statement of my own free will. No threats or promises were made to me, as an inducement to give this statement.

| SIGNED | DATE | TIME |
|--------|------|------|
| X _Jose Hernandez_ | 10-17-03 | 3:59 |
| WITNESS X _____ | 10-17-03 | 3:30 |
| WITNESS | | |

1111B
Sears Forms Management

Software Post Consumer Recycled Paper

# STATEMENT

DATE OF STATEMENT

I, _____, an associate of Sears, Roebuck and Co., freely

make the following statement to _____ who I know to be a
representative of Sears, Roebuck and Co.

I have been employed at Sears _____, since _____ as

a _____; my associate number is _____

and my Social Security number is _____

On this date _____ requested my cooperation in discussing a situation
that occurred during my employment with Sears. My statement pertaining to this situation follows:

anything to his manager Kevin Sullivan.

Written with Permission of Jose Hernandez
to John Reid and William Sullivan

I have read this statement, the contents of which are true facts, that have been discussed with _____

Jose Hernandez, John Reid, Bill Sullivan _____ and me on this date.

I have made this statement of my own free will. No threats or promises were made to me, as an inducement to give this
statement.

| SIGNED | DATE | TIME |
|---|---|---|
| Jose Hernandez | 10-17-03 | 3:90 |
| WITNESS | DATE | TIME |
| Megan Riello | 10-17-03 | |
| WITNESS | DATE | TIME |

11118
Sears Forms Management

Contains Post Consumer
Recycled Paper

For Date: 10/17/2003  -  Friday

| Call Number | Time | Call Reason | Action | Priority |
|---|---|---|---|---|
| 03-15990 | 1712 | Phone - PROPERTY DAMAGE | SUMMONS REQUESTED | 2 |

Call Taker:        7983 - CIVILIAN DISPATCHER DAVID E FELIX
Call Modified By:  4477 - PATROLMAN GARY E MANSFIELD
Location/Address:  [00 1078] SEARS AUTOMOTIVE CENTER        (SQUARE ONE MALL) - 1325 BROADWAY
Involved Party:    SOUVANNAKANE, ERIC @ 12 EUTAW AVE - LYNN, MA 01905
                   SSN: 015642102  DOB: 10/25/1982
Calling/Inv. Party: SEARS LOSS PREVENTION 781-231-4688
                   COVIELLO, ALICIA @ 168 WATER ST - SAUGUS, MA 01906
                   SSN: 012709525  DOB: 08/04/1982
             ID:   4477 - PATROLMAN GARY E MANSFIELD
                   Disp-17:22:42  Enrt-17:22:44  Arvd-17:22:46  Clrd-17:55:46
      Narrative:   10/17/2003 1719 CIVILIAN DISPATCHER DAVID E FELIX
    Modified By:   10/17/2003 1850 LIEUTENANT DAVID J PUTNAM
                   10/17/2003 1714
                   MANAGER OF SEARS AUTO REQUESTS TO SPEAK TO AN OFFICER
                   REGARDING AN INCIDENT (CALL#15967) THAT OCCURRED EARLIER
                   TODAY.  THE MANAGER THINKS THE DAMAGE WAS INTENTIONAL.
                   OFFICER MANSFIELD RESPONDING AND REPORTS

      Narrative:   10/17/2003 1844 PATROLMAN GARY E MANSFIELD
    Modified By:   10/17/2003 2031 LIEUTENANT DAVID J PUTNAM
                   THE MANAGER REQUESTS TO SPEAK TO AN OFFICER ABOUT AN
                   INCIDENT EARLIER TODAY (CALL #03-15967).  SENT OFFICER
                   MANSFIELD WHO REPORTS A REQUEST FOR A SHOW CAUSE HEARING
                   WILL BE SOUGHT AGAINST ERIC SOUVANNAKANE FOR MALICIOUS
                   DESTRUCTION OF PROPERTY OVER 250.00    REFER TO INCIDENT
                   REPORT 03-1692-OF


                   GM/4477

Refer To Incident:    03-1692-OF

# EXHIBIT "H"

# ENPRO services, inc.

12 Mulliken Way, Newburyport, Massachusetts 01950
TEL. (978) 465-1595

| | |
|---|---|
| **INVOICE** | 10256-3 |
| **DATE:** | December 31, 2003 |
| **JOB NO.** | 4732-03 |
| **PURCHASE ORDER NO.** | |
| **CONTACT** | G. Grenoble |

00229675

Environmental Products & Services, Inc.
5140 Paxton Street
Harrisburg, PA  17111

MA DEP Rep: P. Giddings
MA DEP RTN: 3-23285

**ERMS:** Payment due upon receipt. An interest charge of 1½% per month (18% per annum) will be charged on all invoices over 30 days.

| DESCRIPTION | | | | | AMOUNT |
|---|---|---|---|---|---|

Emergency Response Rates Apply to First Day Only
Rates are Portal to Portal - Newburyport, MA
Four Hour Minimum Applies to all Field Labor and Equipment

Project Location:    Sears Roebuck & Company - Auto Center
1325 Broadway
Saugus, MA  01906

Friday, October 17, 2003 - 10:30 a.m. - 4:00 p.m. (Only Charged 4 Hour Min.)

Provide emergency response services to perform clean up of a waste oil release. Release was reported to have impacted concrete floor, floor drains with impact to oil water separator. Release was reported to ENPRO to be approximately 30 gallons. Release was reported to have occurred from an overturned thirty-gallon drum staged on site. Quantity/volume of release estimated to be greater than ten gallons, which exceeds the Massachusetts Contingency Plan (MCP) Reportable Quantity (RQ). Services to be conducted in accordance with Federal, State and Local Regulations with specific reference to the Massachusetts Contingency Plan (MCP -- 310 CMR 40.0000).

For Detailed Description of Services Performed see Response Action Outcome Statement and Supporting Summary Letter Report dated January 2004.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| M. Coty | Environmental Engineer | 4.00 | Hr ER | @ | 126.00 | | $504.00 |
| J. Leone | Foreman | 4.00 | Hr ER | @ | 90.00 | | $360.00 |
| J. Lowell | Equipment Operator/Driver (Vacuum Truck) | 4.00 | Hr ER | @ | 81.00 | | $324.00 |
| R. Baldini | Recovery Technician | 4.00 | Hr ER | @ | 72.00 | | $288.00 |
| T. Flynn | Recovery Technician | 4.00 | Hr ER | @ | 72.00 | | $288.00 |
| | | | | | | | |
| Travel Vehicle/Engineer c/w Field Monitoring Equipment | | 1.00 | Event | @ | 150.00 | | $150.00 |
| Utility Truck c/w Small Power and Hand Tools | | 0.50 | Day | @ | 200.00 | | $100.00 |
| Utility Truck w/ Response Trailer | | 0.50 | Day | @ | 520.00 | | $260.00 |
| Vacuum Truck | | 0.50 | Day | @ | 440.00 | | $220.00 |
| | | | | | | | |
| 17H 55 Gallon DOT Approved Drum | | 4.00 | Drum | @ | 34.50 | | $138.00 |
| Absorbent Speedi Dry | | 10.00 | Bag | @ | 7.50 | | $75.00 |
| | | 5% Massachusetts Sales Tax | | | | | $10.65 |

APPROVED BY:

...uld it be necessary to employ outside services to collect any amount, it is specifically agreed that the customer will pay all such cost, including reasonable attorney's fees and court costs.

| TOTAL | CONTINUED |
|---|---|

WHITE — CUSTOMER     GOLDENROD — REMITTANCE COPY

# ENPRO services, inc.

12 Mulliken Way, Newburyport, Massachusetts 01950
TEL. (978) 465-1595

| | |
|---|---|
| **INVOICE** | 10256-3 |
| **DATE:** | December 31, 2003 |

00229675

Environmental Products & Services, Inc.
5140 Paxton Street
Harrisburg, PA 17111

| | |
|---|---|
| **JOB NO.** | 4732-03 |
| **PURCHASE ORDER NO.** | |
| **CONTACT** | G. Grenoble |

MA DEP Rep: P. Giddings
MA DEP RTN: 3-23285

**TERMS:** Payment due upon receipt. An interest charge of 1½% per month (18% per annum) will be charged on all invoices over 30 days.

| DESCRIPTION | | | | | AMOUNT |
|---|---|---|---|---|---|
| **Page 2- Continued** | | | | | |
| **October 21, 2003** | | | | | |
| Loaded, transported and disposed of drummed remediation waste generated from initial response actions as per manifest document at approved receiving facility. | | | | | |
| Transportation of Drummed Remediation Waste | 1.00 | Event | @ | 150.00 | $150.00 |
| Disposal Waste Oil Solid | 3.00 | Drum | @ | 125.00 | $375.00 |
| Massachusetts Hazardous Waste Transporters Fee | 1200.00 | Pound | @ | 0.03 | $36.00 |
| **November 3, 2003** | | | | | |
| Loaded, transported and disposed of drummed liquid waste oil generated from initial response actions as per manifest document at approved receiving facility. | | | | | |
| Transportation of Drummed Remediation Waste | 1.00 | Event | @ | 150.00 | $150.00 |
| Disposal Waste Oil Liquid | 1.00 | Drum | @ | 135.00 | $135.00 |
| **ENVIRONMENTAL ENGINEERING AND CONSULTING SERVICES:** | | | | | |
| Prepared and submitted a Release Notification Form (RNF) and Response Action Outcome (RAO) Statement with supporting letter report (dated January 2004) pursuant to MCP. Licensed Site Professional (LSP) reviewed, signed and submitted the RNF, RAO and supporting letter report. | | | | | |
| Licensed Site Professional | 2.00 | Hr Reg | @ | 110.00 | $220.00 |
| Environmental Engineer | 8.00 | Hr Reg | @ | 75.00 | $600.00 |
| Mail, Photocopying, Facsimile, etc. | 1.00 | Lump Sum | @ | 100.00 | $100.00 |

## PROJECT COMPLETE

APPROVED BY:   M. Gonthier

| | |
|---|---|
| Should it be necessary to employ outside services to collect any amount, it is specifically agreed that the customer will pay all such cost, including reasonable attorney's fees and court costs. | **TOTAL**   $4,483.65 |

WHITE — CUSTOMER   GOLDENROD — REMITTANCE COPY

# EXHIBIT "I"

| CRIMINAL DOCKET | 0413CR001350 | ATTORNEY NAME | |
|---|---|---|---|

| COURT DIVISION<br>Lynn | INTERPRETER REQUIRED | DATE and JUDGE<br>3·24·04<br>De<br><br>3·24·04<br>De | DOCKET ENTRY |
|---|---|---|---|

NAME, ADDRESS AND ZIP CODE OF DEFENDANT

SOUVANNAKANE, ERIC
12 EUTAW AVE
LYNN, MA 01905

**ORIGINAL**

☐ Attorney appointed (SJC R. 3:10)
☑ Atty denied and Deft Advised per 211D §2A
☐ Waiver of counsel found after colloquy

Terms of release set:   *stay away*
☑ PR   ☐ Bail:
☐ Held (276 §58A)
☐ See back for special conditions

Arraigned and advised:
☑ Potential of bail revocation (276 §58)
☐ Right to bail review (276 §58)
☐ Right to drug exam (111E §10)

| DEFT. DOB AND SEX<br>10/25/1982    M | | | |
|---|---|---|---|

| DATE OF OFFENSE(S)<br>10/16/2003 | PLACE OF OFFENSE(S)<br>SAUGUS | 10-5-04<br>Cmla J | Advised of right to jury trial:<br>☐ Does not waive<br>☑ Waiver of jury trial found after colloquy |
|---|---|---|---|

| COMPLAINANT<br>ERICKSON, ALAN | POLICE DEPARTMENT (if applicable)<br>SAUGUS PD | | Advised of trial rights as pro se (Supp. R. 4) |
|---|---|---|---|

| DATE OF COMPLAINT<br>02/25/2004 | RETURN DATE AND TIME<br>03/24/2004 09:00:00 | | Advised of right of appeal to Appeals Ct (R. 28) |
|---|---|---|---|

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT |
|---|---|---|---|---|---|
| 1. 266/127/A DESTRUCTION OF PROPERTY +$250, MALICIOU | | | | | ☐ WAIVED |

| DISPOSITION DATE and JUDGE<br>10-5-04    Cmla J | SENTENCE OR OTHER DISPOSITION |
|---|---|
| DISPOSITION METHOD<br>☐ Guilty Plea or Admission<br>to Sufficient Facts<br>accepted after colloquy<br>and 278 §29D warning<br>☑ Bench Trial<br>☐ Jury Trial<br>☐ None of the Above<br><br>FINDING<br>☑ Not Guilty<br>☐ Guilty<br>☐ Not Responsible<br>☐ Responsible<br>☐ No Probable Cause<br>☐ Probable Cause | ☐ Sufficient facts found but continued without guilty finding until:<br>☐ Probation    ☐ Pretrial Probation (276 §87) - until:<br>☐ To be dismissed upon payment of court costs/restitution<br>☐ Dismissed upon: ☐ Request of Comm.    ☐ Request of Victim<br>    ☐ Request of Deft    ☐ Failure to prosecute    ☐ Other:<br>☐ Filed with Deft's consent    ☐ Nolle Prosequi    ☐ Decriminalized (277 §70C)<br><br>FINAL DISPOSITION                                    JUDGE                DATE<br>☐ Dismissed on recommendation of Probation Dept.<br>☐ Probation terminated: defendant discharged |

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT |
|---|---|---|---|---|---|
| | | | | | ☐ WAIVED |

| DISPOSITION DATE and JUDGE | SENTENCE OR OTHER DISPOSITION |
|---|---|
| DISPOSITION METHOD<br>☐ Guilty Plea or Admission<br>to Sufficient Facts<br>accepted after colloquy<br>and 278 §29D warning<br>☐ Bench Trial<br>☐ Jury Trial<br>☐ None of the Above<br><br>FINDING<br>☐ Not Guilty<br>☐ Guilty<br>☐ Not Responsible<br>☐ Responsible<br>☐ No Probable Cause<br>☐ Probable Cause | ☐ Sufficient facts found but continued without guilty finding until:<br>☐ Probation    ☐ Pretrial Probation (276 §87) - until:<br>☐ To be dismissed upon payment of court costs/restitution<br>☐ Dismissed upon: ☐ Request of Comm.    ☐ Request of Victim<br>    ☐ Request of Deft    ☐ Failure to prosecute    ☐ Other:<br>☐ Filed with Deft's consent    ☐ Nolle Prosequi    ☐ Decriminalized (277 §70C)<br><br>FINAL DISPOSITION                                    JUDGE                DATE<br>☐ Dismissed on recommendation of Probation Dept.<br>☐ Probation terminated: defendant discharged |

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT |
|---|---|---|---|---|---|
| | | | | | ☐ WAIVED |

| DISPOSITION DATE and JUDGE | SENTENCE OR OTHER DISPOSITION |
|---|---|
| DISPOSITION METHOD<br>☐ Guilty Plea or Admission<br>to Sufficient Facts<br>accepted after colloquy<br>and 278 §29D warning<br>☐ Bench Trial<br>☐ Jury Trial<br>☐ None of the Above<br><br>FINDING<br>☐ Not Guilty<br>☐ Guilty<br>☐ Not Responsible<br>☐ Responsible<br>☐ No Probable Cause<br>☐ Probable Cause | ☐ Sufficient facts found but continued without guilty finding until:<br>☐ Probation    ☐ Pretrial Probation (276 §87) - until:<br>☐ To be dismissed upon payment of court costs/restitution<br>☐ Dismissed upon: ☐ Request of Comm.    ☐ Request of Victim<br>    ☐ Request of Deft    ☐ Failure to prosecute    ☐ Other:<br>☐ Filed with Deft's consent    ☐ Nolle Prosequi    ☐ Decriminalized (277 §70C)<br><br>FINAL DISPOSITION                                    JUDGE                DATE<br>☐ Dismissed on recommendation of Probation Dept.<br>☐ Probation terminated: defendant discharged |

| COUNT/OFFENSE | FINE | SURFINE | COSTS | RESTITUTION | V/W ASSESSMENT |
|---|---|---|---|---|---|
| | | | | | ☐ WAIVED |

| DISPOSITION DATE and JUDGE | SENTENCE OR OTHER DISPOSITION |
|---|---|
| DISPOSITION METHOD<br>☐ Guilty Plea or Admission<br>to Sufficient Facts<br>accepted after colloquy<br>and 278 §29D warning<br>☐ Bench Trial<br>☐ Jury Trial<br>☐ None of the Above<br><br>FINDING<br>☐ Not Guilty<br>☐ Guilty<br>☐ Not Responsible<br>☐ Responsible<br>☐ No Probable Cause<br>☐ Probable Cause | ☐ Sufficient facts found but continued without guilty finding until:<br>☐ Probation    ☐ Pretrial Probation (276 §87) - until:<br>☐ To be dismissed upon payment of court costs/restitution<br>☐ Dismissed upon: ☐ Request of Comm.    ☐ Request of Victim<br>    ☐ Request of Deft    ☐ Failure to prosecute    ☐ Other:<br>☐ Filed with Deft's consent    ☐ Nolle Prosequi    ☐ Decriminalized (277 §70C)<br><br>FINAL DISPOSITION                                    JUDGE                DATE<br>☐ Dismissed on recommendation of Probation Dept.<br>☐ Probation terminated: defendant discharged |

☐ ADDITIONAL COUNTS ATTACHED

| A TRUE COPY ATTEST: | X | CLERK-MAGISTRATE/ASST. CLERK | ON (DATE) | COURT ADDRESS<br>Lynn District Court<br>580 Essex Street<br>Lynn, MA 01901 |
|---|---|---|---|---|

## SCHEDULING HISTORY

| NO. | SCHEDULED DATE | SCHEDULED EVENT | RESULT | | JUDGE | TAPE NO. | START | STOP |
|---|---|---|---|---|---|---|---|---|
| 1 | 3-24-04 | arr | ☐ Held ☐ Cont'd  5-17-04  PTH | Do | 1-128 | 1660 | 1711 |
| 2 | 5-17-04 | PTH | ☐ Held ☐ Cont'd  6-9-04 PTH | Zletty | 2-216 | 1700 | 1719 |
| 3 | 6-9-04 | PTH | ☐ Held ☐ Cont'd  7-28-04  MHO | Jemya | 2-257 | 2807 | 2886 |
| 4 | 7-28-04 | M | ☒ Held ☐ Cont'd  10-5-04  BT | Flatley | 42342 | 270 | 451 |
| 5 | 10-5-04 | BT | ☐ Held ☐ Cont'd  N G | Conley | 2-442 | 3200 | 3910 |
| 6 | | | ☐ Held ☐ Cont'd | Conley | 2-443 | 000 | 870 |
| 7 | | | ☐ Held ☐ Cont'd | | | | |
| 8 | | | ☐ Held ☐ Cont'd | | | | |
| 9 | | | ☐ Held ☐ Cont'd | | | | |
| 10 | | | ☐ Held ☐ Cont'd | | | | |

ARR=Arraignment  PT=Pretrial hearing  CE=Discovery compliance and jury election  T=Bench trial  J=Jury Trial  PC=Probable cause hearing  M=Motion hearing  SR=Status review
SRP=Status review of payments  FA=First appearance in jury session  S=Sentencing  CW=Continuance-without-finding scheduled to terminate  P=Probation scheduled to terminate
DFTA=Defendant failed to appear and was defaulted  WAR=Warrant issued  WARD=Default warrant issued  WR=Warrant or default warrant recalled  PR=Probation revocation hearing

| ENTRY DATE | OTHER DOCKET ENTRIES |
|---|---|
| 5-20-04 | B/E by prob |
| 7-22-04 | M/D filed |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## ADDITIONAL ASSESSMENTS IMPOSED OR WAIVED

| DATE IMPOSED and JUDGE | TYPE OF ASSESSMENT | AMOUNT | DUE DATES and COMMENTS | ✓WAIVED |
|---|---|---|---|---|
| | Legal Counsel Fee (211D §2A ¶2) | | | |
| | Legal Counsel Contribution (211D §2) | | | |
| | Court Costs (280 §6) | | | |
| | Drug Analysis Fee (280 §6B) | | | |
| | OUI §24D Fee (90 §24D ¶9) | | | |
| | OUI Head Injury Surfine (90 §24[1][a][1] ¶2) | | | |
| | Probation Supervision Fee (276 §87A) | | | |
| | Default Warrant Assessment Fee (276 §30 ¶2) | | | |
| | Default Warrant Removal Fee (276 §30 ¶1) | | | |

5

# EXHIBIT "J"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ERIC SOUVANNAKANE,<br>    Plaintiff<br><br>v.<br><br>SEARS, ROEBUCK & COMPANY, et al.,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 04-12164-MLW |

## DEFENDANT, GARY MANSFIELD'S, ANSWERS TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

## INTERROGATORIES

### A.    Identity and Background of Defendant Gary Mansfield

### INTERROGATORY NO. 1

State your full name, and the name you customarily use, your residence address and telephone number, your social security number and your date of birth, place of birth (city, county, and state, or what country), and the exact name appearing on your birth certificate.

### ANSWER NO. 1

**Objection:** The defendant objects to this interrogatory to the extent it seeks residential address and telephone number information concerning a law enforcement officer, which information is protected from disclosure by Mass. Gen. L. ch. 66 §10(d). The defendant further objects to this interrogatory to the extent it seeks a social security number for purposes other than those permitted under Federal law. Without waiving these objections, or any others that may apply, the defendant responds as follows:

Gary Mansfield, c/o Saugus Police Department, 27 Hamilton Street, Saugus, MA, date of birth 5-01-54, place of birth Lynn, MA.

### INTERROGATORY NO. 2

Please identify and describe your employment history, including military service if applicable, since high school. Include in your description your rank as a police officer, promotions, dates of promotion, and special training, if any.

**ANSWER NO. 2**

**Objection:** The defendant objects to this interrogatory on the grounds that it is overbroad, it is overly burdensome, it is not properly limited as to time, and it seeks information which is irrelevant to the subject matter of this action, which will be inadmissible at the trial of this action, and which is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, or any others that may apply, the defendant responds as follows:

I was a member of the National Guard from 1973 to 1979 and have been employed with the Saugus Police Department from 1978 to present in the position of Patrolman.

**B.     Defendant Mansfield's "Investigation"**

**INTERROGATORY NO. 3**

Please state how you came to be present at the "Sears Automotive Center" in Saugus, Massachusetts on October 17, 2003, including in your answer, the identity of the person/persons who sent you, the position held by the person/persons who sent you, all instructions given to you and the identity of any other individuals accompanying you, or sent independently by the same authority who sent you to Sears Automotive Center on that date.

**ANSWER NO. 3**

I was dispatched to Sears by a police department dispatcher, name unknown, to investigate a complaint of malicious destruction of property.

**INTERROGATORY NO. 4**

Please describe in detail what you observed when you arrived at the "Sears Automotive Center" in Saugus, Massachusetts on October 17, 2003, including but not limited to, a complete description of the nature of the spilled liquid (the liquid alleged to have been spilled by Mr. Souvannakane), in detail the area in which you observed the liquid (complete/part parking lot, complete floor/parts of floor of the automotive center, and your initial conclusion as to what had transpired.

**ANSWER NO. 4**

**NOTATION BY COUNSEL:** Pursuant to Fed.R.Civ.P. 33(d), the defendant refers to the following documents from which the answer to this interrogatory may be derived or ascertained, and which documents have been previously produced: Saugus Incident Report #03-1692-OF and accompanying witness statements.

Further Responding:

I do not recall seeing the damaged property.

## INTERROGATORY NO. 5

Please describe in detail all property observed by you at the "Sears Automotive Center" in Saugus, Massachusetts that in your opinion was destroyed by the liquid spilled that you observed on October 17, 2003. Include in your answer whether the destruction was total or partial, any damage done to the structure or fixtures and the estimated dollar value of the property destroyed.

## ANSWER:

**Objection:** The defendant objects to this interrogatory on the grounds that it attempts to discover facts known and opinions held by experts beyond the scope allowed by Fed.R.Civ.P. 26(b)(4) without leave of court, and such leave of court has not been granted. Without waiving these objections, as well as any other that may apply, the defendant responds as follows:

I have no opinion regarding damages.

## INTERROGATORY NO. 6

Please state how you arrived at the conclusion that the waste oil contained in a 30 gallon drum had a value of $3,000.

## ANSWER NO. 6

**Objection:** The defendant objects to this interrogatory as argumentative in that it presumes the defendant reached a conclusion as to value. Without waiving this objection, or any others that may apply, the defendant responds as follows:

That figure was given to me by Sears' employee Alicia Coviello.

## INTERROGATORY NO. 7

Please state the identity of each individual to whom you spoke during your presence at the "Sears Automotive Center" in Saugus, Massachusetts on October 17, 2003, their position, the content of the conversation, your conclusions after interviewing the individuals alleged to have witnessed the "Spill."

## ANSWER NO. 7

**NOTATION BY COUNSEL:** Pursuant to Fed.R.Civ.P. 33(d), the defendant refers to the following documents from which the answer to this interrogatory may be derived or ascertained, and which documents have been previously produced: Saugus Incident Report #03-1692-OF and accompanying witness statements.

-3-

Further Responding:

I spoke to Alicia Coviello and Jose Hernandez. I did not reach any conclusions as to the cause of the damaged property, but instead referred the case to the Clerk Magistrate for a Show Cause Hearing.

**INTERROGATORY NO. 8**

How did you conclude that the race/ethnicity of Eric Souvannakane was unknown? Did you learn this by questioning Sears employees as part of your "investigation?"

**ANSWER NO. 8**

**Objection:** The defendant objects to this interrogatory as argumentative. Without waiving this objection, or any others that may apply, the defendant responds as follows:

His race/ethnicity is/was a non-factor and unknown to me. It was listed as unknown.

**INTERROGATORY NO. 9**

In the "Response Of The Sears Defendants To Plaintiffs Request For Admissions Under Rule 36 Fed. R. Civ. P.," the defendants admit that in a written statement to William Sullivan, dated October 17, 2003, John Baldi wrote that he noticed a small spill about 8:30 p.m. on October 16, 2003 and was told by another tech that [the other tech] informed LCSA of a mess down back [in the Auto Center]"(*See*, Page 3 of admissions). Please state whether or not you were provided with this information, given a copy of the written statement given to William Sullivan, interviewed John Baldi, and your conclusion as to how a "**small spill**" at 8:30 p.m. on October 16, 2003 became a large spill on October 17, 2003, including in your answer an explanation how Eric Souvannakane increased the quantity of the spill either overnight when the building was closed or the following morning where the "Sears Defendants admit he was not present at the location."(See, pages 5 & 6 of admissions)

**ANSWER NO. 9**

**Objection:** The defendant objects to this interrogatory on the grounds that it is so vague and ambiguous that defendant cannot fairly respond, because it calls for speculation and surmise in explaining disputed evidence. Defendant further objects to this interrogatory to the extent it seeks to have defendant disprove plaintiff's allegations whereas the burden remains on plaintiff to prove his allegations. Without waiving these objections, or any others that may apply, the defendant responds as follows:

No I was not given the statement. I do not know what size the spill was.

-4-

**INTERROGATORY NO. 10**

Please state whether or not you interviewed Kevin Sullivan and/or Andrew DiGaetono when you responded to the Sears Automotive Center in Saugus, Massachusetts on October 17, 2003, their response to your questions, Mr. DiGaetono's explanation why he hydrated the oil spill with water from a hose in the building, whether or not Mr. Sullivan instructed him to hydrate the floor with water, and if your response is that you did not interview Kevin Sullivan and/or Andrew DiGaetono, an explanation why you did not do I so.

**ANSWER NO. 10**

I do not recall speaking to them, or meeting with them. I did not reach any conclusions as to the cause of the property damage. Based on the statements of the witnesses I did obtain, there was sufficient evidence to refer the case to the Clerk Magistrate for a Show Cause Hearing.

**INTERROGATORY NO. 11**

Please identify and describe all evidence collected/observed by you that incriminated Eric Souvannakane as having perpetrated the crime of "Malicious Destruction of Property in excess of $250" and all evidence collected/observed by you that would exculpate Eric Souvannakane of the crime for which he was prosecuted. Include in your answer the results of any tests performed on samples of the spill collected by you or an explanation why samples were not collected.

**ANSWER NO. 11**

**NOTATION BY COUNSEL:** Pursuant to Fed.R.Civ.P. 33(d), the defendant refers to the following documents from which the answer to this interrogatory may be derived or ascertained, and which documents have been previously produced: Saugus Incident Report #03-1692-OF and accompanying witness statements.

**INTERROGATORY NO. 12**

Based on the circumstances now known to you, and your knowledge, training and experience as a police officer, state what you now believe happened at the "Sears Automotive Center" in Saugus, Massachusetts on October 16 & 17, 2003, including in your statement whether or not you believe the people you interviewed on October 17, 2003 were forthright and truthful with you and whether or not given the information you now possess Eric Souvannakane was improperly prosecuted for "Malicious Destruction of Property Over $250."

**ANSWER NO. 12**

**Objection:** The defendant objects to this interrogatory on the grounds that it seek an opinion of law beyond the application of law to fact permitted by Fed.R.Civ.P. 33(b). Defendant further objects to this interrogatory to the extent it seeks to have defendant disprove plaintiff's

allegations whereas the burden remains on plaintiff to prove his allegations.  Without waiving these objections, or any others that may apply, the defendant responds as follows:

I have no opinion.  I was given a statement regarding the incident and asked to bring the matter before the court on behalf of Sears.

Signed under the pains and penalties of perjury this _22_ day of _MAR_____, 2006.

_____
Gary Mansfield

AS TO OBJECTIONS:
Counsel for Defendant,
Gary Mansfield,


_____
John J. Cloherty III, BBO#566522
PIERCE, DAVIS & PERRITANO, LLP
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950


CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the above document was served upon each attorney of record, or pro se litigant, by mail/by hand.

_4/7/06_
Date

-6-