UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC SOUVANNAKANE,<br>    Plaintiff<br><br>v.<br><br>SEARS, ROEBUCK & CO., WILLIAM<br>SULLIVAN, RICHARD SPELLMAN,<br>BARBARA TAGLIARINO, KEVIN SULLIVAN,<br>ALICIA COVIELLO, and GARY MANSFIELD<br>    Defendants | Civil Action No. 0412164MLW |

### MEMORANDUM OF DEFENDANTS SEARS, ROEBUCK AND CO., WILLIAM SULLIVAN, RICHARD SPELLMAN, BARBARA TAGLIARINO, KEVIN SULLIVAN AND ALICIA COVIELLO IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This is a civil rights action brought by the plaintiff, Eric Souvannakane, against his former employer, Sears, Roebuck and Co. ("Sears"), several current and former employees of Sears, including William Sullivan, Richard Spellman, Barbara Tagliarino, Kevin Sullivan and Alicia Coviello (collectively, the "Sears Defendants"), and Gary Mansfield, an officer with the Saugus Police Department. Souvannakane alleges that he was terminated by Sears because of his race and ethnicity and that, following his termination, the defendants conspired to falsely implicate him in an oil spill on Sears's premises, resulting in his criminal prosecution for malicious destruction of property.

As a result of the Court's ruling on the Sears Defendants' motion to dismiss, only Counts I, II, III, VI and VII of Souvannakane's complaint remain to be adjudicated. As demonstrated below, however, the undisputed facts make clear that Souvannakane will be unable to make out a *prima facie* case on any remaining theory of recovery. First, Souvannakane's wrongful

termination claim pursuant to 42 U.S.C. §1981 must fail as a matter of law because it is undisputed that Sears has articulated a legitimate, non-discriminatory reason for terminating Souvannakane – his use of profanity toward customers – and Souvannakane will be unable to produce any affirmative evidence which even suggests that this articulated reason was a mere pretext.  Indeed, the only evidence of alleged discriminatory animus put forth by Souvannakane is a single, stray remark by a co-employee who was not even involved in Sears's decision to terminate him.

Second, the undisputed evidence demonstrates that Souvannakane will be unable to establish that the Sears Defendants conspired to deprive him of any rights protected under 42 U.S.C. §1985 in connection with Sears's investigation of the oil spill.  Not only has Souvannakane failed to put forth any affirmative evidence of a single plan by two or more of the defendants to interfere with his rights, but the only two alleged conspirators who were responsible for investigating the circumstances of the oil spill were not even aware of Souvannakane's race or ethnicity.  Thus, Souvannakane will be unable to establish a violation of either 42 U.S.C. § 1985 or 1986 and, accordingly, will be unable to demonstrate any entitlement to attorneys fees and costs under 42 U.S.C. § 1988.  Therefore, the Sears Defendants request this Court to grant summary judgment in their favor on Counts I, II, III, VI and VII of the plaintiff's complaint.

## FACTUAL BACKGROUND

### Souvannakane's Termination

Souvannakane, who is of Asian descent, was employed as an automotive technician at the Sears automotive center in Saugus, Massachusetts, between August, 2002, and October 16, 2003. Statement of Undisputed Facts (hereinafter "UF ¶ __"), ¶¶ 1-2.  On September 29, 2003,

Souvannakane became involved in a verbal altercation with a customer, during the course of which he admits he swore at the customer. UF ¶ 3. As a result of this incident, Anthony Cieri, the manager of the automotive center, issued a "Final Warning" to Souvannakane on October 2, 2003. UF ¶ 4.

Less than two weeks later, on October 14, 2003, Souvannakane was involved in a similar incident with another customer. UF ¶ 5. Specifically, two other Sears mechanics reported to Cieri that they witnessed Souvannakane swear at a customer after she expressed frustration because the work that was being performed on her vehicle was not yet done. UF ¶¶ 6-8. As a result of this second incident, Cieri and the Store Manager, defendant Barbara Tagliarino, terminated Souvannakane's employment on October 16, 2003. UF ¶ 9. It is undisputed that Cieri informed Souvannakane that he was being terminated because of his continued use of profanity toward customers. UF ¶ 10.

Souvannakane nevertheless claims that he was terminated because of his race and that Sears's stated justification for his termination – that he swore at customers – was a mere pretext for discrimination. The sole basis for Souvannakane's contention is that, at some unidentified time, he had an argument with a co-employee, "Sal," during the course of which Sal called him a "gook." UF ¶ 14. Souvannakane testified at his deposition that he responded to this alleged remark by calling Sal a "meatball" and that he viewed this exchange with Sal as "nonsense back and forth." UF ¶¶ 15-16.

It is undisputed that Sal was never Souvannakane's supervisor and never had disciplinary authority over Souvannakane. UF ¶ 17. It is also undisputed that the only individuals who had the authority to terminate Souvannakane's employment were Tagliarino and Cieri, and

3

Souvannakane has admitted that he does not believe that either of these individuals discriminated against him in any way because of his race. UF ¶¶ 11-13.

**The Oil Spill and Resulting Criminal Prosecution**

On the evening of October 16, 2003 – several hours after Souvannakane was terminated – he came back to the automotive center to return a truck he had borrowed from another Sears technician, John Baldi. UF ¶ 18. It is undisputed that, while Souvannakane was in the automotive center with Baldi, he knocked over an oil drum, spilling oil onto the floor. Souvannakane not only admits that this occurred, but Baldi has testified that, as they were talking, Souvannakane deliberately "knocked" or "kicked" one of the "oil drums" in the "brake bay." UF ¶ 19. Both Souvannakane and Baldi have testified further that Souvannakane then attempted to clean up the spill with absorbent pads. UF ¶ 20.

Later that evening, shortly before the automotive center was scheduled to close, Baldi reported to the defendant Kevin Sullivan, who was the supervisor on duty, that he had seen some oil on the floor "in the back." UF ¶ 21. Baldi has testified that this oil was in the area of the "waste tanks," approximately 25 to 30 feet away from where Souvannakane had knocked over the oil drum. UF ¶ 22. Another technician, Michael Katsaris, also reported to Kevin Sullivan that he had seen some oil on the floor. UF ¶ 21.

When Kevin Sullivan arrived at the automotive center the next morning, Andrew DiGaeotono, one of the technicians who was already on duty, informed him that there was a large oil spill in the oil bay. UF ¶ 23. Kevin Sullivan inspected the spill and immediately reported the incident to defendant Alicia Coviello, a Loss Prevention Associate at the store. UF ¶ 24. DiGaetono then attempted to clean up the spill by thinning the oil with water and degreaser, and attempting to push the mixture into the drains in the oil bay floor. UF ¶ 25. After

Coviello viewed the scene, she reported the spill to Sears's District Loss Prevention Manager, defendant William Sullivan, and then contacted an environmental clean-up company to remediate the spill.  UF ¶ 26.

Shortly after speaking with Coviello, William Sullivan came to the automotive center to investigate the spill.  UF ¶ 27.  During his investigation, he took statements from several Sears employees, including Baldi, Katsaris and Jose Hernandez, in the presence of Coviello.  UF ¶¶ 28-29.  Baldi told William Sullivan that he had noticed a "small spill" around 8:30 p.m. the previous night and had informed Kevin Sullivan of "a mess down back." UF ¶ 30.  Baldi did not tell William Sullivan that Souvannakane was at the automotive center the previous evening or that Souvannakane had knocked over an oil drum.  UF ¶ 31.  Hernandez and Katsaris, however, both told William Sullivan that Souvannakane spilled some oil the previous evening.  UF ¶ 32.  Specifically, Hernandez reported that, while Souvannakane was with Baldi, he saw Souvannakane "throw windshield washer fluid" and "heard a bang and the barrel hit the floor." UF ¶ 34.  Hernandez reported further that he saw Souvannakane "place oil pads on [the] spill" and that Souvannakane said, "You didn't see anything, right?" UF ¶ 35.

After speaking with Hernandez, William Sullivan interviewed Baldi a second time and, according to Baldi, Sullivan threatened to fire him if he did not implicate Souvannakane in the spill.  UF ¶¶ 36-37.  Baldi has acknowledged, however, that Sullivan's alleged threats did not cause him to reveal that Souvannakane had spilled some oil the previous evening.  UF ¶ 38.  Moreover, even though Baldi did not tell Sullivan that Souvannakane had in fact knocked over an oil drum the night before, it is undisputed that Sears did not take any disciplinary action against Baldi in connection with the investigation into the spill.  UF ¶ 39.

At the conclusion of his investigation, William Sullivan telephoned the Saugus Police Department to report the oil spill and resulting damage to the automotive center. UF ¶ 42. In response, the Saugus Police Department dispatched Officer Mansfield to the scene. UF ¶ 43. When Officer Mansfield arrived at the Sears automotive center on the evening of October 17, 2003, he had a conversation with Coviello, in which Coviello informed him of the status of the investigation, including Souvannakane's suspected involvement in the spill. UF ¶ 44. Officer Mansfield then interviewed Hernandez and determined that there was sufficient evidence to refer the case to the clerk magistrate for a show cause hearing for the criminal offense of malicious destruction of property. UF ¶¶ 46-47. Neither William Sullivan nor Officer Mansfield was aware of Souvannakane's race or ethnicity when they conducted their separate investigations into the oil spill. UF ¶¶ 40-41, 49.

Both Coviello and Hernandez were subpoenaed to testify at the show cause hearing at the Lynn District Court on November 25, 2003. UF ¶ 50. Although Hernandez appeared at the courthouse on that date, he did not testify because, according to Souvannakane, "he was not going to lie for Sears." UF ¶¶ 53-54. Coviello did testify at the show cause hearing and, according to Souvannakane, "falsely testified that [he] was seen knocking over the container of waste oil that wound up in the parking lot." UF ¶ 51.

The show cause hearing resulted in a probable cause finding against Souvannakane and he subsequently was prosecuted for malicious destruction of property. UF ¶ 55. Both Coviello and Hernandez testified at the criminal trial, again pursuant to subpoenas issued by the prosecution. UF ¶¶ 56, 60. Coviello's testimony related exclusively to the damage caused by the oil spill and she did not provide any testimony concerning Souvannakane's alleged involvement in the spill. UF ¶¶ 58-59. Hernandez testified that, on the evening of October 16,

6

2003, after hearing a loud noise, he saw Souvannakane pick up a barrel of waste oil and put absorbent pads on the floor to clean up oil that had spilled.  UF ¶ 61.  Hernandez testified further that Souvannakane then said, "You didn't see anything, right," to which Hernandez replied, "No."  UF ¶ 62.

Souvannakane was found not guilty of malicious destruction of property and, shortly thereafter, filed the present lawsuit.  UF ¶ 64.

## ARGUMENT

Summary judgment is proper where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact.  *See Bermuda-Vazquez, et al. v. Centennial De Puerto Rico*, 278 F.Supp.2d 174, 180 (D. P.R. 2003).  "The party filing the motion bears the initial burden of proof to show that there is an absence of evidence to support the non-moving party's case."  *Id.*  Obviously, this burden is met if the moving party demonstrates a "'complete failure of proof concerning an essential element of the non-moving party's case, thereby rendering all other facts immaterial.'"  *Morgan v. Driscoll*, 2002 WL 15695, Civil Action No. 9810766RWZ at *2 (D. Mass. 2002), *quoting Celotex Corp. v .Catrett*, 477 U.S. 317, 322-323 (1986).  Once the moving party has made such a demonstration, the burden then shifts to the non-moving party to show that "'sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial.'"  *Bermuda-Vazquez*, 278 F. Supp. at 180, *quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968).  The party opposing summary judgment cannot make this showing through "mere allegations or denials of the pleadings, but must affirmatively show . . . that there is a genuine issue for trial."  *Bermuda-Vazquez*, 278 F. Supp. at 180.  Moreover, "on issues where the non-movant bears the ultimate burden of proof, he must present

definite, competent evidence to rebut the motion." *Id; see also Burns v. State Police Assoc. of Massachusetts*, 230 F.3d 8, 9 (1st Cir. 2000).

As discussed below, the undisputed evidence demonstrates that Souvannakane will be unable to establish the essential elements of any of his remaining claims and summary judgment should be entered in favor of the Sears Defendants on Counts I, II, III, VI and VII of his complaint.

**I.   Souvannakane's Wrongful Termination Claim Must Fail As A Matter Of Law Because Sears Has Articulated A Legitimate, Non-discriminatory Reason For Terminating Souvannakane And Because Souvannakane Is Unable To Demonstrate That This Articulated Reason Was A Mere Pretext For Discrimination.**

In Count VI, Souvannakane alleges that he was denied "the right to an occupation because of his race (Asian) and ethnic background (Cambodian)," in violation of 42 U.S.C. § 1981. The relevant portion of 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts …, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens …." 42 U.S.C. § 1981.

When employment discrimination is alleged as the basis for a cause of action under 42 U.S.C. § 1981, the standards applicable to Title VII of the Civil Rights Act of 1964 apply even where, as here, no direct claim under Title VII has been made. *See Powell v. City of Pittsfield*, 143 F. Supp. 2d 94 (D. Mass. 2001). In other words, in order to prevail under Section 1981, "a plaintiff must prove purposeful employment discrimination: the ultimate issue is whether the defendant intentionally discriminated against the plaintiff, under the by-now familiar analytical framework used in disparate treatment cases under Title VII." *Ayala-Gerena v. Bristol Meyers-Squibb, Co.*, 95 F.3d 86, 95 (1st Cir. 1996). Thus, absent direct evidence of discrimination, the three stage, burden-shifting framework first outlined in *McDonnell Douglas Corp. v. Green*,

8

411 U.S. 792, 802-05 (1973), applies to Souvannakane's Section 1981 claim. *See Ayala-Gerena*, 95 F.3d at 95.

In this case, the only evidence of racial animus put forth by Souvannakane is the alleged remark by Sal, a co-employee who had no supervisory authority over Souvannakane and who had no involvement in the termination decision. It is well established that this type of stray remark does not constitute "direct" evidence that would relieve the plaintiff of establishing a *prima facie* case under the *McDonnell Douglas* framework. *See Vesprini v. Shaw Contract Flooring Services*, 315 F.3d 37, 41 (1st Cir. 2002) (stating that "the term 'direct evidence' normally contemplates only those 'statements by a decision maker that directly reflect the alleged animus and bear squarely on the contested employment decision'"); *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 13 (1st Cir. 1998) (holding that stray remarks in the workplace made by non-decision makers, or statements by decision makers unrelated to the decisional process itself, do not qualify as direct evidence of discriminatory animus on the part of the employer).[1]

Under these circumstances, Souvannakane must make a *prima facie* showing of discrimination by demonstrating that (1) he is a member of a protected class; (2) an adverse employment action was taken against him; (3) he was qualified for the position he held; and (4) his position remained open and was eventually filled by persons with plaintiff's qualifications. *See Powell*, 143 F. Supp. 2d at 115. Upon making this showing, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 116. If the defendant meets this requirement, then the burden shifts back to the plaintiff to show that the "facially legitimate reasons" offered by the defendant were not its true reasons, but were a "pretext for discrimination." *Id.*

---

[1] Indeed, even Souvannakane has described Sal's remark as "nonsense," further demonstrating the attenuated evidentiary basis for Souvannakane's claim that Sears harbored some sort of racial or ethnic discriminatory animus against him that motivated his termination.

Although the Sears Defendants assume for purposes of this motion that Souvannakane will be able to offer affirmative evidence supporting the first three elements of his *prima facie* case, he has not even alleged that he was replaced by an individual with his qualifications. Even if Souvannakane is able to come forward with sufficient affirmative evidence to satisfy this element, however, the undisputed facts demonstrate that the Sears Defendants have met their burden of articulating a valid, non-discriminatory reason for his termination – Souvannakane's repeated use of profanity toward customers. Indeed, with respect to the first such incident, Souvannakane does not even dispute that he swore at the customer. Nor is there is any dispute that the reason that Sears articulated to Souvannakane for his termination was that he swore at a customer.

In addition, as to the third stage of the *McDonnell Douglas* framework, there is no question that Souvannakane will be unable to prove that the stated reason for his termination was a mere pretext for race-based discrimination. First, there is no basis upon which a jury could infer that Sears's termination of Souvannakane for swearing at a customer on two separate occasions "was obviously or manifestly unsupported." *See Estades-Neogroni v. Associates Corp. of N. America*, 345 F.3d 25, 32 (1st Cir. 2003). In fact, termination would have been justified under Sears's disciplinary policy after only one such incident. UF ¶ 4. Second, the stray remark by Sal is clearly insufficient to create a factual dispute as to whether Sears's asserted reason for Souvannakane's termination was a pretext for race discrimination, particularly because Souvannakane does not even allege any link between this remark and the adverse employment action. Nor can Souvannakane offer any affirmative evidence that the actual decision-makers – Cieri and Tagliarino – harbored any racial animus toward him. To the

contrary, Souvannakane testified that he is unaware of any discriminatory actions by either of these individuals.[2]

For all of these reasons, Souvannakane's claim pursuant to 42 U.S.C. §1981 must fail as a matter of law.

**II.  Count I Must Fail As A Matter of Law Because Souvannakane Is Unable to Prove The Existence Of A Conspiracy Or To Demonstrate That Such Alleged Conspiracy Was Motivated By Racially-Based Discriminatory Animus.**

In Count I of his complaint, Souvannakane alleges that the Sears Defendants, in collusion with Officer Mansfield, violated 42 U.S.C. § 1985(2) by conspiring to "provide false testimony and threaten witnesses for the purpose of impeding, hindering, obstructing, or defeating . . . the due course of justice . . . with the intent to deny him equal protection of the law and to injure him in his person with an unjust criminal conviction." UF, Ex. 1, ¶ 33.  To state a cause of action under this subsection, a plaintiff must show:  (1) a conspiracy; (2) that the conspiracy was for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) that he has been either injured in his person or property or deprived of any right or privilege of citizenship.  *See Zezulewicz v. Port Authority of Allegheny County*, 290 F. Supp. 2d 583 (W.D.Pa. 2003).

In order to satisfy the first element – the existence of the conspiracy – the plaintiff must show that there was a combination of two or more persons acting in concert to commit an unlawful act, the principal element of which is that they specifically agreed to inflict the wrong or injury upon the plaintiff.  *See Baxter v. Conte*, 190 F. Supp. 2d 123, 129 (D. Mass. 2001); *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir. 1975).  *See also Sampson v. Village Discount*

---

[2]  Although Count VI of Souvannakane's complaint appears to be directed to all of the defendants, it is undisputed that Richard Spellman, William Sullivan, Alicia Coviello and Kevin Sullivan had no direct supervisory authority over Souvannakane and did not have any involvement in the decision to terminate Souvannakane.

*Outlet, Inc*. 832 F. Supp. 1163, 1168 (N.D. Ill. 1993) (stating that to prove a conspiracy under Section 1985(2), a plaintiff must establish the existence of "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences").

Souvannakane has not produced any evidence which even suggests that such a plan existed, let alone any evidence detailing the nature of the cooperation between two or more of the Sears Defendants and/or Officer Mansfield. In fact, when questioned about the factual basis for his allegation that the Sears Defendants conspired to interfere with his civil rights, Souvannakane testified that he "[has] no evidence" to support this allegation and "[doesn't] know" whether there are any facts to support the alleged conspiracy. UF ¶ 66.

Similarly, when asked in interrogatories to provide the factual basis for his claim under Section 1985(2), Souvannakane did not put forth any evidence from which a jury could find the existence of a conspiracy between or among any of the named co-conspirators. First, Souvannakane did not even identify defendants Richard Spellman and Barbara Tagliarino as being involved in the alleged conspiracy, and it is undisputed that these Sears employees were not involved in the investigation into the oil spill. UF ¶¶ 69-71.

Second, the sole basis for Souvannakane's contention that Kevin Sullivan participated in the alleged conspiracy is his assertion that Kevin Sullivan failed to inform Officer Mansfield that the spill "was an in house error that caused the environmental violations." UF ¶ 72. Even if this allegation were true, it does not support an inference that Kevin Sullivan entered into an agreement with any other defendant to falsely implicate Souvannakane in the oil spill. Instead, it is undisputed that Kevin Sullivan did not tell either William Sullivan or Officer Mansfield – the only two individuals who were responsible for investigating the spill – that Souvannakane had

any involvement in the spill. In addition, Souvannakane admits that he is unaware of any occasion on which Kevin Sullivan discriminated against him. UF ¶ 67.

Third, although Souvannakane asserts that Alicia Coviello committed perjury at the show cause hearing by "falsely" testifying that he knocked over a container of waste oil, Souvannakane admits that he did in fact knock over an oil drum when he returned to the automotive center after he was terminated. Furthermore, it is undisputed that Coviello testified in response to a subpoena and there is simply no evidence that she was coerced by anyone at Sears to implicate Souvannakane in the spill. Nor has Souvannakane identified any other conduct by Coviello which even suggests that she entered into an agreement with any of the other alleged co-conspirators to falsely implicate him in the spill.

Finally, although Souvannakane claims that William Sullivan threatened Hernandez into signing an "untruthful" statement, UF ¶ 72, he has not identified any respect in which that statement was inaccurate and, in fact, Hernandez's account of the events on the evening of October 16, 2003, is remarkably similar to Souvannakane's own account. Hernandez's trial testimony was also entirely consistent with his prior statement and Souvannakane's version of the events. Nor has Souvannakane pointed to any other witness statements which purportedly demonstrate that he was falsely implicated in the spill in furtherance of some conspiracy among the Sears Defendants and/or Officer Mansfield. UF ¶ 72.

Thus, as Souvannakane's deposition testimony and answers to interrogatories make clear, he will be unable to establish the existence of a conspiracy among two or more of the Sears Defendants and/or Officer Mansfield. At most, Souvannakane has identified a list of independent actions of various individuals, without providing any details of the alleged

agreement to conspire against him, or even any details of any interactions among the defendants providing an opportunity for them to do so. UF ¶ 72.[3]

Even if Souvannakane were able to prove that two or more of the Sears Defendants and/or Officer Mansfield conspired to falsely implicate him in the spill, he also must prove that the alleged conspiracy was motivated by some race-based discriminatory animus on the part of each of the individual conspirators. *See Burns*, 230 F.3d at 12 (recognizing that both § 1985(2) and § 1985(3) require the plaintiff to show that the conspiracy itself, as well as each of the individual conspirators, are motivated by some racial or otherwise class-based discriminatory animus); *see also Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996), *quoting Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). As previously stated, Souvannakane's only allegation of race-based animus by any employee of Sears is the single, off-color comment purportedly made by Sal, who is not even identified as a named conspirator in Souvannakane's complaint. Evidence of a single racist comment by an individual who is not even alleged to be a co-conspirator clearly is not sufficient to avoid the entry of summary judgment in favor of the Sears Defendants on Souvannakane's conspiracy claim. *See Burns* (affirming entry of summary judgment for defendant on Section 1985 claim where only evidence of racial animus was offensive comments by individuals other than the named conspirators).

In addition, it is undisputed that William Sullivan, who Souvannakane claims coerced Sears employees to falsely implicate Souvannakane in the oil spill, was not even aware of Souvannakane's race or ethnicity during the course of his investigation. Nor will there be any

---

[3] In his answer to Sears's contention interrogatory, Souvannakane also asserts that the defendants knew that Souvannakane was not present on October 17, 2003, and still "executed the criminal complaint" against him. UF ¶ 72. Contrary to Souvannakane's assertion, the Sears Defendants did not execute a criminal complaint; instead, Officer Mansfield determined that there was sufficient evidence to refer the matter to a clerk magistrate for a show cause hearing. In addition, it is irrelevant that Souvannakane was not present at the Sears store on the date of the investigation into the spill because there is no dispute that Souvannakane was involved in a spill at the store the prior evening.

evidence that Officer Mansfield was aware of Souvannakane's race or ethnicity during the course of his investigation, let alone any evidence that Souvannakane's race or ethnicity was a determining factor in Officer Mansfield's decision to refer the case to a clerk magistrate for a show cause hearing.

Under these circumstances, there simply is no basis upon which a jury could infer that any of the Sears Defendants or Officer Mansfield harbored any racial or ethnic animus toward Souvannakane that motivated each of them to enter into an alleged conspiracy to falsely implicate him in the oil spill. This is particularly true where Souvannakane himself suggests in his answers to interrogatories that the purpose of the alleged conspiracy was to deflect the blame to Souvannakane for Sears's alleged violation of the Clean Waters Act. UF ¶ 72. As stated in *Burns*, such evidence of other possible motivations for the purportedly false charges against Souvannakane, "further weakens his already attenuated allegation of racial animus." *Burns*, 230 F.3d at 13. In short, Souvannakane has improperly "attempted to construct a civil rights conspiracy case by superimposing general allegations of racism" by a single Sears employee on an incident as to which in which he feels he was treated unfairly. *Id*. at 14.

**III.    Count II Must Fail As A Matter Of Law Because The Plaintiff Is Unable To Prove The Existence Of A Racially-Motivated Conspiracy Involving State Action.**

Souvannakane alleges in Count II that the Sears Defendants, again in collusion with Officer Mansfield, conspired to interfere with and deprive him of his Fifth and Fourteenth Amendment rights to procedural and substantive due process based on his race for the purpose of depriving him of the equal protection of the law and immunities under the law, in violation of 42 U.S.C. § 1985(3). To state a cause of action under 42 U.S.C. § 1985(3), a plaintiff must show that (1) two or more persons conspired, (2) to deprive, either directly or indirectly, a person or class of persons of the equal protection of the laws or of equal privileges and immunities under

15

the laws, (3) one or more of the conspirators did or caused to be done an act in furtherance of the object of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. *See Powell*, 143 F. Supp. 2d at 130. As with a conspiracy claim under Section 1985(2), a plaintiff alleging a violation of Section 1985(3) must not only prove the existence of a conspiracy, but also must demonstrate that the goal of the conspiracy was to deprive an individual or a class of individuals of protected rights as a result of "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Burns*, 230 F.3d at 12. For the reasons stated in Section II above, the undisputed facts demonstrate that Souvannakane will be unable to prove either of these elements and, therefore, judgment should be entered in favor of the Sears Defendants on Count II as a matter of law.

  Souvannakane's claim under Section 1985(3) must fail for the additional reason that he will be unable to prove that the Sears Defendants were acting under color of state law in carrying out the alleged conspiracy. *See Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 219-20 (D. Mass. 1995). Unlike Section 1985(2), Section 1985(3) does not itself provide substantive rights and, instead, only provides a cause of action "when some otherwise defined federal law . . . is breached." In this case, because Souvannakane's claim under Section 1985(3) is based upon the Sears Defendants' alleged violation of his Fifth and Fourteenth Amendment rights, he must prove state action in order to prevail. *See Lowden*, 903 F. Supp. at 219-20 (holding that allegations under the Fifth and Fourteenth Amendments do not constitute protected rights under 1985(3) without proof of state involvement). *See also Sampson*, 832 F. Supp. at 1169 (stating that allegation of state action is necessary to state a claim under § 1985(3) if "the federal right relied upon is one requiring an element of state action").

Because all of the Sears Defendants are private parties, in order to meet the state action requirement Souvannakane must demonstrate that one or more of the Sears Defendants and Officer Mansfield acted jointly to deprive him of his civil rights. *See Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 351 (1st Cir. 1995) (interpreting analogous state action requirement under 42 U.S.C. § 1983). *See also Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253-54 (1st Cir. 1996) ("[P]rivate actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of §1983."). In determining whether a private actor may be found to be a state actor under Section 1985(3), courts consider (1) whether there was a sufficient nexus between the state and the private actor which compelled the private actor to act as it did; (2) whether the private actor has assumed a traditionally public function; or (3) whether there is a sufficient "symbiotic relationship" between the state and the private actor so that the state might be recognized as a joint participant in the challenged activity." *Rolon v. Rafael Rosario & Associates, Inc.*, 2006 WL 2556408, Civil Action No. 05-1988 (D. Mass. 2006).

In this case, there is simply no evidence supporting a finding of state action against any of the Sears defendants. First, there is no evidence that Officer Mansfield compelled any of the Sears Defendants to take any action whatsoever. Instead, upon being called to the scene, Officer Mansfield independently investigated the oil spill and then referred the matter for a show cause hearing. Second, there is no evidence that any of the Sears Defendants assumed a traditionally public function in connection with the oil spill. Once Sears completed its internal investigation, it turned the matter over to the public authorities, who then took entire responsibility for the criminal prosecution. Finally, there is absolutely no evidence of any symbiotic relationship between any Sears Defendant and Officer Mansfield. Indeed, Souvannakane will be unable to

show that there were any interactions between any of the Sears Defendants and Officer Mansfield beyond the extremely limited interactions which occurred on October 17, 2003.

The facts in the present case are remarkably similar to those in *Roche*, *supra*, where a former employee ("Roche") brought a Section 1983 action against his former employer, John Hancock Mutual Life Insurance Co. ("Hancock"), after Hancock provided the police with evidence that Roche had left threatening voice-mail messages for Hancock employees following his termination. The police pursued the case and, following an investigation, Roche was arrested and prosecuted by the district attorney's office. In affirming the trial court's award of summary judgment in favor of Hancock, the Court of Appeals for the First Circuit held that there was no basis for attributing the state action of the police officer and/or the prosecutor's office to the employer who had investigated the threatening phone calls. Specifically, the Court reasoned that "[b]ecause (1) the officers who requested the warrant independently exercised reasonable professional judgment in applying for it, (2) the magistrate acted autonomously and within the range of her judicial competence in issuing the warrant, and (3) the district attorney acted autonomously in prosecuting the case, there is no principled basis for attributing state action to the defendant employer." *Roche*, 81 F. 3d at 254.

As in *Roche*, the undisputed facts in this case demonstrate that Officer Mansfield, based upon his independent assessment of the evidence, decided to refer the matter to a magistrate for a show cause hearing. The magistrate then presumably examined the evidence and found it sufficient to justify prosecution of the matter. So too, from that point forward, the relevant authorities, including the court and the district attorney's office, dictated the time, place, and manner of the prosecution, as well as any additional investigation into the viability of the charges. Although both Coviello and Hernandez testified on behalf of the Commonwealth of

18

Massachusetts at various stages during the prosecution of Souvannakane's criminal case, they did so under subpoena and at the direction of the assistant district attorney assigned to the case. There is no evidence whatsoever that Officer Mansfield was even involved in the case after he made his recommendation. Thus, it is clear that the plaintiff will be unable to establish that the Sears Defendants were state actors or were in collusion with a state actor. For these reasons, this Court should grant summary judgment in favor of the Sears Defendants and dismiss Count II of the plaintiff's complaint.

### IV.    Counts VI And VII Also Must Fail As A Matter Of Law.

Because Souvannakane has failed to establish the elements of a *prima facie* case under 42 U.S.C. § 1985, his claim under 42 U.S.C. § 1986 fails as a matter of law as well. *See Morgan v. Driscoll*, 2002 WL 15695, *5 (D. Mass. 2002) ("Where a plaintiff has not made out a claim for conspiracy under § 1985, there can be no corresponding claim under § 1986."). So too, Souvannakane will be unable to demonstrate any entitlement to attorneys fees and costs under 42 U.S.C. § 1988.

### CONCLUSION

For all of the foregoing reasons, the Sears Defendants are entitled to judgment as a matter of law on all of Souvannakane's claims and summary judgment should therefore be granted in their favor.

SEARS, ROEBUCK AND CO., WILLIAM SULLIVAN, RICHARD SPELLMAN, BARBARA TAGLIARINO, KEVIN SULLIVAN and ALICIA COVIELLO
By their Attorneys,

 */s/ Chrstine M. Netski*
Christine M. Netski, (BBO No. 546936)
Liza J. Tran (BBO No. 646818)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114
(617) 227-3030
netski@srbc.com
tran@srbc.com

DATED:  January 5, 2007

## CERTIFICATE OF SERVICE

I, Christine M. Netski, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 5, 2007.

*/s/ Christine M. Netski*
Christine M. Netski
netski@srbc.com

#381099