UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC SOUVANNAKANE,<br>    Plaintiff<br><br>v.<br><br>SEARS, ROEBUCK & CO., WILLIAM SULLIVAN, RICHARD SPELLMAN, BARBARA TAGLIARINO, KEVIN SULLIVAN, ALICIA COVIELLO, and GARY MANSFIELD<br>    Defendants | Civil Action No. 0412164MLW |

## THE SEARS DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, defendants, Sears, Roebuck and Co., William Sullivan, Richard Spellman, Barbara Tagliarino, Kevin Sullivan and Alicia Coviello (collectively, the "Sears Defendants") hereby submit the following statement of undisputed facts in support of their motion for summary judgment.

### UNDISPUTED MATERIAL FACTS

**Souvannakane's Employment at Sears**

1. The plaintiff, Eric Souvannakane, was employed as an automotive technician at the Sears automotive center in Saugus, Massachusetts from August, 2002, until October 16, 2003.[1]

2. Souvannakane is of Asian descent.[2]

---

[1] Complaint, attached as Exhibit 1, ¶ 1; Deposition of Eric Souvannakane ("Souvannakane Dep."), portions of which are attached as Exhibit 2, pp. 60-1.

[2] Complaint (Ex. 1), ¶ 1.

3. On September 29, 2003, Souvannakane was involved in an incident with a customer during which Souvannakane admits that he swore at the customer after the customer purportedly called him a "chink."[3]

4. As a result of the September 29, 2003, incident, Anthony Cieri, the manager of the automotive center, issued a "Final Warning" to Souvannakane on October 2, 2003. Under Sears's disciplinary policy, however, this incident also would have constituted grounds for termination.[4]

5. On October 14, 2003, Souvannakane was involved in a dispute with another customer named Pam Lacroix.[5]

6. Cieri investigated this second incident and obtained written statements from two employees who reported that Souvannakane had used profanity toward Lacroix.[6]

7. On October 15, 2003, Lacroix telephoned Cieri and reported that, on the previous day when she was having a tire replaced, Souvannakane called her an "asshole" and, when she told Souvannakane that he could not speak to a customer that way, Souvannakane said, "Fuck you."[7]

8. Lacroix also reported to Cieri that Souvannakane gave her "dirty looks" while she waited for her car to be serviced.[8]

---

[3] Souvannakane Dep. (Ex. 2), pp. 111-14; Affidavit of Anthony Cieri ("Cieri Aff."), attached as Exhibit 3, ¶ 5.

[4] Souvannakane Dep. (Ex. 2), pp. 111-12 and Dep. Ex. 5; Cieri Aff. (Ex. 3), ¶¶ 1-3, 6.

[5] Cieri Aff. (Ex. 3), ¶ 8.

[6] Cieri Aff. (Ex. 3), ¶¶ 9-11.

[7] Cieri Aff. (Ex. 3), ¶¶ 12-13.

[8] Cieri Aff. (Ex. 3), ¶ 14.

9. On October 16, 2003, Cieri and the Store Manager, defendant Barbara Tagliarino, met with Souvannakane and terminated his employment.[9]

10. Cieri told Souvannakane that he was being terminated for swearing at a customer.[10]

11. Tagliarino and Cieri were the only employees of the Saugus Sears store who had the authority to terminate Souvannakane's employment.[11]

12. No other employees at the Saugus Sears store were involved in the decision to terminate Souvannakane.[12]

13. Souvannakane admits that he does not have any basis for believing that either Tagliarino or Cieri discriminated against him because of his race.[13]

14. Souvannakane alleges that, at some point during the course of his employment at Sears, a co-employee named "Sal" became angry with him when he refused to retrieve a tire from the warehouse and said, "[G]o back to Cambodia you fucking Gook."[14]

15. Souvannakane alleges that he responded to Sal's "racial slur" by calling Sal a "meatball."[15]

---

[9] Cieri Aff. (Ex. 3), ¶¶ 15-16.

[10] Souvannakane Dep. (Ex. 2), p. 96; Cieri Aff. (Ex. 3), ¶ 17.

[11] Souvannakane Dep. (Ex. 2), p. 81; Cieri Aff. (Ex. 3), ¶ 4.

[12] Cieri Aff. (Ex. 3), ¶ 18.

[13] Souvannakane Dep. (Ex. 2), pp. 79-81.

[14] Souvannakane Dep. (Ex. 2), pp. 84-8.

[15] Souvannakane Dep. (Ex. 2), pp. 84-5.

16. At his deposition, Souvannakane characterized the incident with Sal as "nonsense back and forth."[16]

17. At no time during the course of Souvannakane's employment did Sal have any supervisory authority over Souvannankane.[17]

### The Oil Spill and Resulting Criminal Prosecution

18. On the evening of October 16, 2003 – after Souvannakane was terminated – he came back to the automotive center to return a set of keys to his former co-employee, John Baldi, and to pick up his toolbox.[18]

19. While Souvannakane was with Baldi at the automotive center on the evening of October 16, 2003, Souvannakane "knocked" or "kicked" an "oil drum," spilling oil onto the floor.[19]

20. Souvannakane attempted to clean up the oil he spilled with absorbent pads.[20]

21. Later that evening, Baldi and another technician, Michael Katsaris, told defendant Kevin Sullivan, the supervisor on duty, that some oil had been spilled in the oil bay.[21]

---

[16] Souvannakane Dep. (Ex. 2), p. 88.

[17] Souvannakane Dep. (Ex. 2), pp. 85-6; Cieri Aff. (Ex. 3), ¶ 3.

[18] Souvannakane Dep. (Ex. 2), p. 125; Deposition of John W. Baldi ("Baldi Dep"), portions of which are attached as Exhibit 4, pp. 44-5.

[19] Baldi Dep. (Ex. 4), pp. 50-51; Souvannakane Dep. (Ex. 2), pp. 129-31.

[20] Baldi Dep. (Ex. 4), p. 54.

[21] Baldi Dep. (Ex. 4), p. 58; Defendant, Kevin Sullivan's Answers to Plaintiff, Eric Souvannakane's First Set of Interrogatories ("K. Sullivan Ans. Ints."), attached as Exhibit 5, Answer No. 4.

22. Baldi has testified that the spill he reported to Kevin Sullivan was in the area of the "waste tanks," approximately 25 to 30 feet from where he observed Souvannakane knock over the oil drum.[22]

23. On the morning of October 17, 2003, Andrew DiGaetono, the technician who opened the automotive center, informed Kevin Sullivan that there was a large oil spill in the oil bay.[23]

24. Kevin Sullivan inspected the spill and immediately reported the spill to defendant Alicia Coviello, a Loss Prevention Associate at the store.[24]

25. DiGaetono attempted to clean the spill by thinning the oil with a mixture of water and degreaser, and pushing the mixture into the drains in the oil bay floor.[25]

26. When Coviello arrived at the scene, she inspected the spill, contacted an environmental clean-up company, and then reported the spill to William Sullivan, Sears's District Loss Prevention Manager.[26]

27. Later that morning, William Sullivan came to the automotive center and conducted an investigation into the circumstances of the spill.[27]

---

[22] Baldi Dep. (Ex. 4), pp. 42, 56-7.

[23] K. Sullivan Ans. Ints. (Ex. 5), Answer No. 4

[24] K. Sullivan Ans. Ints. (Ex. 5), Answer Nos. 4 and 5.

[25] K. Sullivan Ans. Ints. (Ex. 5), Answer No. 5.

[26] Defendant Alicia Coviello's Answers to Plaintiff, Eric Souvannakane's First Set of Interrogatories ("Coviello's Ans. Ints."), attached as Exhibit 6, Answer No. 4.

[27] Coviello's Ans. Ints. (Ex. 6), Answer No. 4; Defendant, William Sullivan's Answers to Plaintiff, Eric Souvannakane's First Set of Interrogatories ("W. Sullivan's Ans. Ints."), attached as Exhibit 7, Answer No. 3.

28.  During the course of his investigation, William Sullivan interviewed and took written statements from several employees, including Baldi, Katsaris, and another technician, Jose Hernandez.[28]

29.  Coviello was present when William Sullivan interviewed each of these employees.[29]

30.  Baldi reported that he had noticed a "small spill" the previous night.[30]

31.  Baldi did not tell William Sullivan that Souvannakane was present in the automotive center the previous evening or that Souvannakane had knocked over an oil drum.[31]

32.  Hernandez and Katsaris both told William Sullivan that Souvannakane was present at the automotive store on the evening of October 16, 2003 and was involved in some type of oil spill.[32]

33.  Hernandez also told William Sullivan that Baldi was present when this incident occurred.[33]

34.  Hernandez reported further that, while Souvannakane was with Baldi, he saw Souvannakane "throw windshield washer fluid" and "heard a bang and the barrel his the floor."[34]

---

[28] Affidavit of William Sullivan, attached as Exhibit 8, ¶ 3; W. Sullivan Ans. Ints. (Ex. 7), Answer No. 3.

[29] Sullivan Aff. (Ex. 8), ¶¶ 2-3; W. Sullivan Ans. Ints. (Ex. 7), Answer No. 3; Coviello Ans. Ints. (Ex. 6), Answer No. 4.

[30] Sullivan Aff. (Ex. 8), ¶ 5 and Ex. A; Baldi Dep. (Ex. 4), pp. 70-71 and Dep. Ex. 1.

[31] Baldi Dep. (Ex. 4), pp. 63-4 and Dep. Ex. 1.

[32] Sullivan Aff. (Ex. 8), ¶¶ 6-7 and Exs. B and C.

[33] Sullivan Aff. (Ex. 8), ¶ 7 and Ex. C.

[34] Sullivan Aff. (Ex. 8), ¶ 7 and Ex. C.

35. Hernandez also reported that he saw Souvannakane "place oil pads on [the] spill" and that Souvannakane said, "You didn't see anything, right?"[35]

36. After speaking with Hernandez, William Sullivan interviewed Baldi a second time.[36]

37. Baldi testified at his deposition that, during the second interview, William Sullivan appeared "furious," and told Baldi that his "job [was] at stake" and that he could "get fired over this."[37]

38. At no time in either interview did Baldi tell William Sullivan that Souvannakane had caused the oil spill.[38]

39. Sears did not take any disciplinary action against Baldi as a result of his failure to disclose to William Sullivan that Souvannakane was involved in an oil spill at the automotive center on October 16, 2003.[39]

40. William Sullivan has never met Souvannakane and was not aware of Souvannakane's racial or ethnic background during the course of his investigation.[40]

41. William Sullivan first learned of Souvannakane's race when he learned that Souvannakane had filed a lawsuit against him.[41]

---

[35] Sullivan Aff. (Ex. 8), ¶ 7 and Ex. C.

[36] Baldi Dep. (Ex. 4), p. 65-6.

[37] Baldi Dep. (Ex. 4), p. 66.

[38] Baldi Dep. (Ex. 4), p. 96.

[39] Baldi Dep. (Ex. 4), pp. 96-7.

[40] Sullivan Aff. (Ex. 8), ¶¶ 7-8.

[41] Sullivan Aff. (Ex. 8), ¶ 9.

42. At the conclusion of his investigation, William Sullivan reported the oil spill and resulting property damage to the Saugus Police Department.[42]

43. The Saugus Police Department dispatched Officer Gary Mansfield to the automotive store on the evening of October 17, 2003.[43]

44. When Officer Mansfield arrived at the scene, he spoke with Coviello and took a statement from Hernandez.[44]

45. Officer Mansfield did not receive any substantive information concerning the oil spill from any Sears employees other than Coviello and Hernandez.[45]

46. Based upon his investigation, Officer Mansfield determined that there was sufficient evidence to refer to case to a clerk magistrate for a show cause hearing.[46]

47. Officer Mansfield referred the matter to the Lynn District Court and requested a show cause hearing.[47]

48. Officer Mansfield did not have any further involvement in the criminal case arising out of the oil spill at the Saugus Sears store.[48]

---

[42] W. Sullivan Ans. Ints. (Ex. 7), Answer No. 4.

[43] Defendant Gary Mansfield's, Answers to Plaintiff's First Set of Interrogatories ("Mansfield Ans. Ints."), attached as Exhibit 9, Answer No. 3.

[44] Deposition of Gary Mansfield ("Mansfield Dep."), portions of which are attached as Exhibit 10, pp. 13-14.

[45] Mansfield Dep. (Ex. 10), p. 28.

[46] Mansfield Dep. (Ex. 10), p. 20.

[47] Mansfield Dep. (Ex. 10), p. 30.

[48] Mansfield Dep. (Ex. 10), p. 30.

49. Officer Mansfield was not aware of Souvannakane's race or ethnicity when he investigated the circumstances of the oil spill and made his determination to refer the matter for a show cause hearing.[49]

50. Pursuant to a subpoena, Coviello testified at the show cause hearing on November 25, 2003.[50]

51. Souvannakane alleges that Coviello "falsely testified that [he] was seen knocking over the container of waste oil that wound up in the parking lot."[51]

52. No employee of Sears intimidated or coerced Coviello to provide false testimony at the show cause hearing.[52]

53. Souvannakane alleges that Hernandez came to the Lynn District Court on November 25, 2003, but did not testify.[53]

54. Souvannakane alleges that, while he and Hernandez were at the Lynn District Court on November 25, 2003, Hernandez said, "Fuck this lying shit," and left the courthouse.[54]

55. Following the show cause hearing, Souvannakane was prosecuted by the Commonwealth of Massachusetts for malicious destruction of property.[55]

---

[49] Mansfield's Ans. Ints. (Ex. 9), Answer No. 8.

[50] Coviello Ans. Ints. (Ex. 6), Answer No. 4(k).

[51] Complaint (Ex. 1), ¶ 26.

[52] Coviello Ans. Ints. (Ex. 6), Answer No. 7.

[53] Souvannakane Dep. (Ex. 2), pp. 189-92.

[54] Souvannakane Dep. (Ex. 2), pp. 189-92.

[55] Complaint (Ex. 1), ¶¶ 28-9.

56. Pursuant to a second subpoena, Coviello testified at Souvannakane's criminal trial on October 5, 2004.[56]

57. Coviello testified that, in her capacity as a Loss Prevention Associate at the Saugus Sears store, she inspected and dealt with the oil spill at the automotive center on the morning of October 17, 2003.[57]

58. Coviello testified further at the criminal trial that the spill was confined to the inside of the building and that it involved approximately 40 to 60 gallons of oil.[58]

59. Coviello did not provide any testimony at the criminal trial concerning Souvannakane's alleged involvement in the spill.[59]

60. Hernandez testified at Souvannakane's criminal trial on October 5, 2004.[60]

61. At the Coviello trial, Hernandez testified that he saw Souvannakane in the automotive center on the evening of October 16, 2003, and that, after hearing a loud noise, he observed Souvannakane pick up a barrel of waste oil and then put down absorbent pads to clean up oil that had spilled on the floor.[61]

62. Hernandez testified further that, after the spill, Souvannakane said, "You didn't see anything, right," to which Hernandez replied, "No."[62]

---

[56] Coviello Ans. Ints. (Ex. 6), Answer No. 4(p) and (q).

[57] Transcript of trial of Eric Souvannakane on October 5, 2004 ("Trial transcript"), attached as Exhibit 11, pp. 5-11.

[58] Trial transcript (Ex. 11), p. 8.

[59] Trial transcript (Ex. 11), p. 9.

[60] Trial transcript (Ex. 11), pp. 11-21.

[61] Although the Assistant District Attorney referred to October 17, 2003 as the relevant date when he questioned Hernandez about Souvannakane's involvement in the oil spill, it is undisputed that the incident which Hernandez testified about occurred on the evening of October 16, 2003.

[62] Trial transcript (Ex. 11), p. 16.

63. Hernandez also testified at the trial that he informed his "bosses" of Souvannakane's involvement in this spill when he arrived at work the next day and was informed that there was a large spill in the oil bay.[63]

64. Souvannakane was found not guilty of malicious destruction of property in Lynn District Court on October 5, 2004.[64]

## The Civil Lawsuit

65. On October 14, 2004, Souvannakane filed the present lawsuit against the Sears Defendants and Officer Mansfield.[65]

66. At his deposition, when questioned about the factual basis for his allegation that the Sears Defendants conspired to interfere with his civil rights, Souvannakane testified that he "[has] no evidence" to support this allegation and "[doesn't] know" whether there are any facts to support an actual conspiracy.[66]

67. Souvannakane admits that he is unaware of any occasion on which Kevin Sullivan discriminated against him.[67]

68. Souvannakane admits that he is unaware of any occasion on which Alicia Coviello discriminated against him.[68]

---

[63] Trial transcript (Ex. 11), p. 17.

[64] Complaint (Ex. 1); Lynn District Court, Criminal Docket, Docket No. 0413CR001350, attached hereto as Exhibit 12.

[65] Complaint (Ex. 1).

[66] Souvannakane Dep. (Ex. 2), pp. 145-46.

[67] Souvannakane Dep. (Ex. 2). pp. 69-70.

[68] Souvannakane Dep. (Ex. 2), p. 76.

69. Souvannakane does not even allege that Richard Spellman was involved in either the termination of his employment or the investigation of the oil spill.

70. Souvannakane does not know who Richard Spellman is or whether he was ever employed by Sears.[69]

71. Barbara Tagliarino was not involved in the investigation into the oil spill.[70]

72. In response to an interrogatory propounded by the Sears Defendants seeking the factual basis for his allegation that the Sears Defendants conspired to interfere with his civil rights, Souvannakane answered as follows:

> Sears was the party who executed the criminal complaint against the plaintiff, knowing that he was not present and had not been present on the premises on the date of October 17, 2003 when a Sears employee hydrated an oil spill with a hose, and thus caused the violation of the Federal Clean Waters Act, initiated the need to blame the plaintiff. All of the above named defendants knew that the plaintiff was not present and that under the direction of Kevin Sullivan, an employee of Sears caused all of the damages for which they sought to blame the plaintiff.
>
> Procedural due process was denied to the plaintiff by the false accusations of Sears in the criminal complaint, the perjury of Alicia Coviello at the Magistrate's hearing, the failure of officer Mansfield to personally interview the alleged witnesses when he responded to the spill, the failure of Kevin Sullivan to inform officer Mansfield that it was an in house error that caused the environmental violations of 33 U.S.C., and William Sullivan's threats of dismissal to Mr. Hernandez and other employees if they did not sign untruthful statements."[71]

---

[69] Souvannakane Dep. (Ex. 2), p. 80.

[70] Deposition of Barbara Tagliarino ("Tagliarino Dep."), portions of which are attached as Exhibit 13, p. 24.

[71] Plaintiff's Response to Defendant Sears, Roebuck & Co.'s (sic) First Set of Interrogatories, attached as Exhibit 14, Answer No. 3.

SEARS, ROEBUCK AND CO., WILLIAM SULLIVAN, RICHARD SPELLMAN, BARBARA TAGLIARINO, KEVIN SULLIVAN and ALICIA COVIELLO
By their Attorneys,

*/s/ Christine M. Netski*
Christine M. Netski, (BBO No. 546936)
Liza J. Tran (BBO No. 646818)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114
(617) 227-3030
netski@srbc.com
tran@srbc.com

DATED:  January 5, 2007

CERTIFICATE OF SERVICE

I, Christine M. Netski, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 5, 2007.

*/s/ Christine M. Netski*
Christine M. Netski
netski@srbc.com

#382575