EXHIBIT 10

**GARY MANSFIELD**
April 27, 2006

 COPY

```
                                                        Page 1
 1              UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF MASSACHUSETTS

 3                       C.A. NO. 04-12164-MLW

 4

 5

 6   ERIC SOUVANNAKANE,

 7          Plaintiff

 8   v.

 9   SEARS, ROEBUCK AND CO.,

10          Defendant

11

12

13

14

15       DEPOSITION OF:  GARY MANSFIELD

16          Law Offices of Kurt Olson

17              500 Federal Street

18            Andover, Massachusetts

19       April 27, 2006         10:00 a.m.

20

21

22

23          Charlotte C. Rosati

24       Registered Professional Reporter
```

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 2

```
 1   APPEARANCES:
 2
 3   Representing the Plaintiff:
 4   LAW OFFICES OF KURT OLSON
 5   500 Federal Street
 6   Andover, MA 01810
 7   (978) 681-0800
 8   BY:  KURT OLSON, ESQ.
 9
10
11   Representing the Defendant:
12   SUGARNAN, ROGERS, BARSHAK & COHEN, P.C.
13   101 Merrimac Street
14   Boston, MA 02114-4001
15   (617) 227-3030
16   BY:  CHRISTINE M. NETSKI, ESQ.
17
18
19   Representing Gary Mansfield:
20   PIERCE, DAVIS & PERRITANO, LLP
21   Ten Winthrop Square
22   Boston, MA 02110-1257
23   (617) 350-0950
24   BY:  JOHN J. CLOHERTY III
```

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 3

```
 1                        I N D E X
 2
 3   WITNESS:            GARY MANSFIELD
 4
 5   EXAMINATION BY:                              PAGE:
 6   Mr. Olson                                      4
 7                                                 31
 8   Ms. Netski                                    27
 9   Mr. Cloherty                                  28
10
11
12
13   E X H I B I T S                              PAGE:
14
15   No. 1       Defendant Gary Mansfield's        15
16               Answers To Plaintiff's First
17               Set Of Interrogatories
18   No. 2       ENPRO Services, Inc.              23
19               Invoice, 2pp
20   No. 3       Sears Asset Protection            24
21               Department Incident Report,
22               1pp
23
24
```

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA    Worcester, MA    Boston, MA    Lawrence, MA    Providence, RI

**GARY MANSFIELD**
April 27, 2006

Page 4

1              STIPULATIONS
2                       It is agreed by and between
3    the parties that all objections, except
4    objections as to the form of the questions, are
5    reserved and may be raised at the time of trial
6    for the first time.
7                       It is further agreed by and
8    between the parties that all motions to strike
9    unresponsive answers are reserved and may be
10   raised at the time of trial for the first time.
11                      It is further agreed by and
12   between the parties that the reading and signing
13   of the deposition by the deponent my be signed
14   under the pains and penalties of perjury within
15   (30) thirty days of receipt.
16                        - - - -
17                      GARY MANSFIELD, having been
18   satisfactorily identified and duly sworn by the
19   Notary Public, deposes and states as follows:
20
21   EXAMINATION BY MR. OLSON:
22
23       Q.   Good morning, Officer Mansfield.  As
24   you know, my name is Kurt Olson, and I represent

**GARY MANSFIELD**
**April 27, 2006**

Page 13

```
 1   record or a log of dispatchers kept by the
 2   Saugus Police Department?
 3        A.   I don't know what their recordkeeping
 4   is.
 5        Q.   Okay.  When you arrived at Sears
 6   Automotive on the 17th of October, 2003, what
 7   did you do?
 8        A.   I entered the building.
 9        Q.   Okay.  Which building.  The Sears
10   Automotive building?
11        A.   Yes.
12        Q.   Okay.  And with whom did you meet?
13        A.   I don't recall the name.  It was a
14   female.
15        Q.   Okay.  Do you recall whether it was a
16   loss prevention officer?
17        A.   My understanding, it was.
18        Q.   Okay.  And what did you discuss with
19   this person?
20        A.   She told me why I was called up
21   there.
22        Q.   And what did she say as to why you
23   were called up there?
24        A.   My recollection is that she said that
```

## GARY MANSFIELD
## April 27, 2006

Page 14

```
 1  they had an incident with a past employee who
 2  had come on the property and caused property
 3  damage, and that they wanted it adjudicated.
 4       Q.   Okay.  And what did you observe after
 5  having this conversation with the female
 6  employee of Sears?
 7       A.   I obtained a voluntary statement from
 8  one of the employees who stated that he
 9  witnessed the event.
10       Q.   So you spoke to the person that I will
11  identify as a loss prevention officer.  You
12  spoke to her, and then spoke to a witness that
13  the loss prevention person told you to speak to;
14  is that correct?
15       A.   Yes.
16       Q.   Okay.  And do you remember that
17  person's name?
18       A.   An Hispanic name.  It doesn't come to
19  me right now.
20       Q.   Might it have been Hernandez?
21       A.   It might have been.
22       Q.   Okay.  And once you finished your
23  conversation with Mr. Hernandez and the loss
24  prevention person, did you go to observe the
```

Page 20

1  you ask the question of the witness.
2      Q.   (By Mr. Olson)  Didn't you make a
3  determination that you had probable cause to
4  believe that a crime had been committed?
5      A.   Yes.
6      Q.   Based on what information?
7      A.   The information that I was given by
8  the Sears employees.
9      Q.   Okay.  And when you refer to the
10 information given by the Sears employees, you're
11 talking about the statements made by the loss
12 prevention officer?
13     A.   And the witness, yes.
14     Q.   Okay.  And you said you received from,
15 who we will assume is Mr. Hernandez, a written
16 statement?
17     A.   That is my recollection, yes.
18     Q.   Okay.  On that day, did you observe--
19 I believe you already answered this, but I'll
20 ask, did you observe any damage to the concrete
21 floor in the Sears Automotive building?
22     A.   No.
23     Q.   Okay.  Turning back to the Exhibit
24 No. 1, one more time, would you please turn to

**GARY MANSFIELD**
**April 27, 2006**

Page 28

1  Q.   And so would it be fair to say you
2  didn't receive any substantive information in
3  the investigation from anyone other than
4  Miss Coviello and Mr. Hernandez?
5  A.   That's my recollection and my
6  understanding, yes.
7  Q.   Okay.
8          MS. NETSKI:  That's all I
9  have.
10
11 EXAMINATION BY MR. CLOHERTY:
12
13 Q.   Sir, you were asked on direct
14 examination by Mr. Olson about the value of
15 three thousand dollars assigned as the property
16 damage.  Do you recall that line of questioning,
17 sir?
18 A.   Yes, sir.
19 Q.   And from where was that three
20 thousand-dollar figure derived?
21 A.   That was a total value of the damage
22 including the clean-up.
23 Q.   Okay.  And how were you informed or
24 how did you determine that value, sir?

```
 1        A.   I was given that value by the
 2   complainant, Miss Coviello.
 3        Q.   And, in fact, looking at what was
 4   marked as Exhibit No. 2, it appears to be an
 5   invoice of services from a clean-up company.  Do
 6   you see that, sir?
 7        A.   Yes, sir.
 8        Q.   Have you ever seen that before?
 9        A.   Just earlier today.
10        Q.   Okay.  And on page 2 of that document,
11   there's a total value of clean-up on that
12   invoice.  Did you see that, sir?
13        A.   Yes, sir.
14        Q.   And what is that amount?
15        A.   Four thousand four hundred
16   eighty-three dollars and sixty-five cents.
17        Q.   Earlier, sir, you were asked on direct
18   examination about a probable cause
19   determination.  Do you recall that line of
20   questioning, sir?
21        A.   Yes, sir.
22        Q.   In your role as a responding officer
23   in this case, did you effect any arrests as a
24   result of your investigation?
```

Page 30

1    A.    I did not.
2    Q.    And why not?
3    A.    I brought this matter before the court
4    as requested for a probable cause hearing. The
5    information was given to me, and my
6    understanding met the elements of the crime, and
7    the next step in that is to bring it before a
8    magistrate and have him adjudicate it.
9    Q.    And how did that process take place,
10   sir?
11   A.    I submitted a request for a hearing.
12   Q.    And accompanying the request for a
13   hearing, what did you submit, sir?
14   A.    My report and witness statements.
15   Q.    And do you know if that hearing took
16   place, sir?
17   A.    Umm.  I believe it did.
18   Q.    Okay.  Did you have any further
19   participation in this matter after submitting
20   the request for a hearing?
21   A.    My best recollection is that I did
22   not.
23              MR. CLOHERTY:  I don't have
24   anything further.