# Exhibit D

**GARY MANSFIELD**
**April 27, 2006**

 **ORIGINAL**

                                                            Page 1

1              UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF MASSACHUSETTS

3                            C.A. NO. 04-12164-MLW

4

5

6   ERIC SOUVANNAKANE,

7              Plaintiff

8   v.

9   SEARS, ROEBUCK AND CO.,

10             Defendant

11

12

13

14

15       DEPOSITION OF:  GARY MANSFIELD

16          Law Offices of Kurt Olson

17            500 Federal Street

18          Andover, Massachusetts

19        April 27, 2006        10:00 a.m.

20

21

22

23          Charlotte C. Rosati

24      Registered Professional Reporter

**GARY MANSFIELD**
**April 27, 2006**

1    APPEARANCES:

2

3    Representing the Plaintiff:

4    LAW OFFICES OF KURT OLSON

5    500 Federal Street

6    Andover, MA 01810

7    (978) 681-0800

8    BY:  KURT OLSON, ESQ.

9

10

11   Representing the Defendant:

12   SUGARNAN, ROGERS, BARSHAK & COHEN, P.C.

13   101 Merrimac Street

14   Boston, MA 02114-4001

15   (617) 227-3030

16   BY:  CHRISTINE M. NETSKI, ESQ.

17

18

19   Representing Gary Mansfield:

20   PIERCE, DAVIS & PERRITANO, LLP

21   Ten Winthrop Square

22   Boston, MA 02110-1257

23   (617) 350-0950

24   BY:  JOHN J. CLOHERTY III

**GARY MANSFIELD**
**April 27, 2006**

```
                                                    Page 3

1                         I N D E X

2

3    WITNESS:            GARY MANSFIELD

4

5    EXAMINATION BY:                         PAGE:

6    Mr. Olson                                  4

7                                              31

8    Ms. Netski                                27

9    Mr. Cloherty                              28

10

11

12

13   E X H I B I T S                        PAGE:

14

15   No. 1           Defendant Gary Mansfield's  15

16                   Answers To Plaintiff's First

17                   Set Of Interrogatories

18   No. 2           ENPRO Services, Inc.       23

19                   Invoice, 2pp

20   No. 3           Sears Asset Protection     24

21                   Department Incident Report,

22                   1pp

23

24
```

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA    Worcester, MA    Boston, MA    Lawrence, MA    Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 4

```
 1                      STIPULATIONS

 2                      It is agreed by and between

 3      the parties that all objections, except

 4      objections as to the form of the questions, are

 5      reserved and may be raised at the time of trial

 6      for the first time.

 7                      It is further agreed by and

 8      between the parties that all motions to strike

 9      unresponsive answers are reserved and may be

10      raised at the time of trial for the first time.

11                      It is further agreed by and

12      between the parties that the reading and signing

13      of the deposition by the deponent my be signed

14      under the pains and penalties of perjury within

15      (30) thirty days of receipt.

16                          - - - -

17                      GARY MANSFIELD, having been

18      satisfactorily identified and duly sworn by the

19      Notary Public, deposes and states as follows:

20

21      EXAMINATION BY MR. OLSON:

22

23          Q.    Good morning, Officer Mansfield.    As

24      you know, my name is Kurt Olson, and I represent
```

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 5

1    the Plaintiff in this action, Eric

2    Souvannakane.  We have already agreed to the

3    stipulations.

4                         Have you ever been deposed

5    before, sir?

6        A.    Yes.

7        Q.    Okay.  And are you taking any

8    medication, or do you suffer from any allergies

9    that might impair your ability to testify

10   competently?

11       A.    No.

12       Q.    Just some brief information as to how

13   we conduct the deposition.  I'm going to ask you

14   a series of questions.  The Court Reporter will

15   attempt to record everything verbatim.  If

16   there's anything you don't understand, please

17   stop me and ask for clarification, and I'll be

18   happy to provide it.

19                         If you do answer without

20   asking for clarification, I'll take it that you

21   understood the nature of my question.

22       A.    Yes.

23       Q.    Can we agree that we also will speak

24   and respond in words, rather than nodding and in

**GARY MANSFIELD**
**April 27, 2006**

Page 6

1    body movements, just so the Court Reporter

2    understands?

3        A.    I'll do my best.

4        Q.    All right.  And can we also agree that

5    we don't interrupt each other so I can ask my

6    question before you answer another one and I

7    finish asking the question before you answer?

8        A.    Yes.

9        Q.    Okay.  Great.  It would also be a good

10   idea for the Court Reporter if we avoid speaking

11   over each other because obviously it would be

12   hard for her to make an accurate record if we

13   are.

14                     It's also important for the

15   Court Reporter that we keep our voices up.

16   Usually I sort of trail off toward the end of my

17   sentences, but I'll keep my voice up, if that's

18   agreeable.

19       A.    Okay.

20       Q.    I'm also well-known around the school

21   for speaking fast on occasion, so I'll try to

22   speak slow and clearly.  And if you could do the

23   same, it would make it easier for her.

24                     If you have need a break

**GARY MANSFIELD**
**April 27, 2006**

Page 7

1    for the rest room at any point, please let me

2    know.  I'll be happy to accommodate you.

3        A.    Thank you.

4        Q.    And you understand the Court Reporter

5    has already sworn you, so your testimony today

6    is given under oath?

7        A.    Yes.

8        Q.    Okay.  With whom did you speak in

9    order to prepare for your deposition today, if

10   anyone?

11                    MR. CLOHERTY:  Objection.

12   Other than counsel?

13                    MR. OLSON:  Yes, other than

14   counsel.

15       A.    No one.

16       Q.    (By Mr. Olson)  And did you bring any

17   documents with you today?

18       A.    No.

19       Q.    I guess I'm assuming since you didn't

20   bring your license, you didn't bring any

21   documents.  Did you make any notes in

22   preparation for your testimony today?

23                    MR. CLOHERTY:  Objection.

24   You can answer.

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 8

```
 1      A.   No.

 2      Q.   (By Mr. Olson)  Could you state your

 3   full name?

 4      A.   Gary Mansfield.

 5      Q.   And spell your last name for the

 6   record, please?

 7      A.   M-A-N-S-F-I-E-L-D.

 8      Q.   Thank you.  And when were you born?

 9      A.   May 1st, 1954.

10      Q.   Where?

11      A.   Where?

12      Q.   Yes.

13      A.   Lynn, Massachusetts.

14      Q.   Okay.  Where do you live now?

15      A.   In Saugus.

16      Q.   And how long have you lived there?

17      A.   Fifty-one point eleven--  I'm

18   fifty-two.  It will be fifty-two years Sunday,

19   actually.

20      Q.   Born in Lynn and then moved to Saugus

21   thereafter; is that correct?

22      A.   Lynn was the hospital for the area.

23      Q.   I see.  Do you live now in a house or

24   in an apartment building?
```

**GARY MANSFIELD**
**April 27, 2006**

Page 9

1      A.    I have a house.

2      Q.    And did you live somewhere else in

3  Saugus prior to the house that you're in now?

4      A.    Yes.

5      Q.    Okay.  And how long did you live in

6  that prior residence?

7      A.    Thirty-five years.

8      Q.    Okay.  Are you married or single?

9      A.    I am married.

10     Q.    Do you have any children?

11     A.    Yes.

12     Q.    And your educational background?

13  Where were you educated?

14     A.    Saugus schools.

15     Q.    Anything postgraduate from high

16  school?

17     A.    Umm.  Accredited?  I don't know what

18  you mean.

19     Q.    College?  Junior college?

20     A.    No.

21     Q.    Training programs?

22     A.    Military and police.  That's it.

23     Q.    Okay.  Where do you work now?

24     A.    Saugus Police Department.

**GARY MANSFIELD**
**April 27, 2006**

Page 10

1      Q.    And how long have you worked there?

2      A.    I believe this is my twenty-eighth

3   year.

4      Q.    Okay.  And what is your position at

5   the Saugus Police Department?

6      A.    I am a patrol officer.

7      Q.    So you worked as a patrolman or patrol

8   officer for the Saugus Police Department going

9   on twenty-eight years; is that correct?

10     A.    Yes.  The first eight were full-time

11  reserve status, and from '85 on, it was

12  full-time status.

13     Q.    Okay.  As part of your training for

14  becoming a police officer in Saugus, did you

15  attend either the State Police Academy or a

16  local academy?

17     A.    Yes.

18     Q.    Which one?

19     A.    It was a municipal academy run by the

20  State Police.

21     Q.    Okay.  And have you ever applied for

22  or tested for a sergeant's exam?

23     A.    I have tested for it.

24     Q.    And what are the results of those

**GARY MANSFIELD**
**April 27, 2006**

Page 11

1    tests?

2                    MR. CLOHERTY:   Objection.

3    You can answer.

4         A.    If you are looking for a grade, I

5    don't recall.

6         Q.    (By Mr. Olson)   Has the Saugus Police

7    Department ever considered you for a promotion?

8         A.    You will have to ask them.

9         Q.    Okay.   And in addition to the training

10   prior to you becoming a police officer, has

11   Saugus provided you with any additional training

12   or any other kinds of education to help you

13   perform your training as a patrolman?

14        A.    I didn't get that.

15        Q.    All right.   In addition to the

16   training that you received prior to becoming a

17   police officer--

18        A.    The academy?

19        Q.    Yes.   -- has the Saugus Police

20   Department provided you with additional training

21   or education to help you perform your duties as

22   a patrolman?

23        A.    Yes.

24        Q.    And what did that consist of?

**GARY MANSFIELD**
**April 27, 2006**

Page 12

1      A.    We have annual in-service.

2      Q.    And were you on duty and performing

3  your functions as a patrol officer on, I believe

4  it was a Friday, October 17th, 2003?

5      A.    Yes.

6      Q.    And at sometime during the course of

7  that day, did you go to the Sears Automotive

8  building at the Square One Mall in Saugus?

9      A.    Yes, I did.

10     Q.    Do you remember approximately what

11 time you went to the Sears Automotive building?

12     A.    I do not.  My best guess is early

13 evening.

14     Q.    Okay.  And what were the circumstances

15 that caused you to go to the Square One Mall,

16 Sears Automotive?

17     A.    I was sent there.

18     Q.    And who dispatched you to the Square

19 One Mall?

20     A.    Police dispatch.

21     Q.    Okay.  Did anyone accompany you, a

22 partner, to the Sears Automotive?

23     A.    No.

24     Q.    Okay.  Do you know if there is a

GARY MANSFIELD
April 27, 2006

Page 13

1    record or a log of dispatchers kept by the

2    Saugus Police Department?

3        A.    I don't know what their recordkeeping

4    is.

5        Q.    Okay.  When you arrived at Sears

6    Automotive on the 17th of October, 2003, what

7    did you do?

8        A.    I entered the building.

9        Q.    Okay.  Which building.  The Sears

10   Automotive building?

11       A.    Yes.

12       Q.    Okay.  And with whom did you meet?

13       A.    I don't recall the name.  It was a

14   female.

15       Q.    Okay.  Do you recall whether it was a

16   loss prevention officer?

17       A.    My understanding, it was.

18       Q.    Okay.  And what did you discuss with

19   this person?

20       A.    She told me why I was called up

21   there.

22       Q.    And what did she say as to why you

23   were called up there?

24       A.    My recollection is that she said that

CATUOGNO COURT REPORTING SERVICES
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 14

1    they had an incident with a past employee who

2    had come on the property and caused property

3    damage, and that they wanted it adjudicated.

4        Q.    Okay.  And what did you observe after

5    having this conversation with the female

6    employee of Sears?

7        A.    I obtained a voluntary statement from

8    one of the employees who stated that he

9    witnessed the event.

10        Q.    So you spoke to the person that I will

11    identify as a loss prevention officer.  You

12    spoke to her, and then spoke to a witness that

13    the loss prevention person told you to speak to;

14    is that correct?

15        A.    Yes.

16        Q.    Okay.  And do you remember that

17    person's name?

18        A.    An Hispanic name.  It doesn't come to

19    me right now.

20        Q.    Might it have been Hernandez?

21        A.    It might have been.

22        Q.    Okay.  And once you finished your

23    conversation with Mr. Hernandez and the loss

24    prevention person, did you go to observe the

**GARY MANSFIELD**
**April 27, 2006**

1   Sears Automotive building?

2                    MR. CLOHERTY:   Objection.

3   You can answer.

4        A.   No.

5        Q.   (By Mr. Olson)   Okay.  So let me

6   understand you.   You never actually went to the

7   Sears Automotive building to witness what had

8   been described as destroyed property; is that

9   correct?

10                   MR. CLOHERTY:   Objection.

11   You can answer.

12       A.   I was in that building.

13       Q.   (By Mr. Olson)   Okay.

14       A.   I did not go to the area that they

15   stated there was damage.

16       Q.   Okay.  And why not?

17       A.   My recollection is that it had already

18   been cleaned.

19       Q.   I see.  I would like to now actually

20   refer you to a document that I would like to

21   have marked as Exhibit 1, if I may.

22                   (Exhibit No. 1 was marked

23   for identification)

24       Q.   (By Mr. Olson)   You have just been

GARY MANSFIELD
April 27, 2006

Page 16

1    handed a document that we've marked as Exhibit

2    1.  Do you recognize this document, officer?

3        A.    Yes, I do.

4        Q.    And what is it?

5        A.    It's my answers to Interrogatory

6    questions.

7        Q.    Okay.  If you could turn to page 2

8    with me?

9        A.    (Complying)

10       Q.    Your answer to No. 3 states, and

11   correct me if I'm wrong:  I was dispatched to

12   Sears by a police department dispatcher, name

13   unknown, to investigate a complaint of malicious

14   destruction of property.

15                      Is that correct, to the

16   best of your recollection?

17       A.    Yes.

18       Q.    Okay.  And you have already testified

19   that you don't know which dispatcher it was; is

20   that correct?

21       A.    That's correct.

22       Q.    Okay.  And do you know how many

23   dispatchers the Town of Saugus has?

24       A.    No.

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 17

1    Q.    Okay.    I'll put the exhibit aside for

2    a moment.    According to your understanding of

3    the Massachusetts General Laws, do you know of a

4    crime of malicious destruction of property?

5                    MR. CLOHERTY:    Objection.

6    You can answer.

7        A.    Yes.

8        Q.    (By Mr. Olson)    And do you know where

9    in the Massachusetts General Laws section and

10   chapter that is located?

11                   MR. CLOHERTY:    Objection.

12   You can answer.

13       A.    266, I believe.

14       Q.    (By Mr. Olson)    Okay.    The chapter

15   number?    The chapter number 266?

16       A.    Yes.

17       Q.    Okay.    And do you know if this crime

18   is a felony or a misdemeanor?

19       A.    Under two hundred fifty dollars, a

20   misdemeanor, and over two hundred fifty dollars,

21   a felony, is my understanding.

22       Q.    And do you know whether violators of

23   this statute can be fined or imprisoned, or

24   both?

**GARY MANSFIELD**
**April 27, 2006**

1            MR. CLOHERTY:  Objection.

2       A.   Yes.  The law dictates that that is

3   part of the punishment, I believe.

4       Q.   **(By Mr. Olson)  would you turn to page**

5   **3, again, of Exhibit 1, please?**

6       A.   (Complying)

7       Q.   **Your answer to Interrogatory No. 4--**

8   **I'm sorry.  Actually it's the question.  The**

9   **question is on the bottom of page 2, and your**

10  **answer is on the top of page 3.**

11                 **The question asked you what**

12  **damage to property you saw, and your response on**

13  **the top of page 3 is:  I do not recall seeing**

14  **the damaged property.**

15            MR. CLOHERTY:  Objection.

16  You can answer.

17      Q.   **(By Mr. Olson)  Is that correct?**

18      A.   Yes, that's correct.

19      Q.   **Okay.  And have you investigated**

20  **complaints of malicious destruction of property**

21  **in the past prior to this incident?**

22      A.   Yes.

23      Q.   **Okay.  And when you did those**

24  **investigations, do you recall seeing the damaged**

**GARY MANSFIELD**
**April 27, 2006**

Page 19

1   property?

2      A.   Probably more than not.

3      Q.   Okay.  So there had been circumstances

4   in the past when you didn't see the damaged

5   property and still charged them with that

6   offense; is that correct?

7      A.   I think that would be a fair

8   statement.  I could not tell you any specific

9   ones.

10      Q.   Okay.  And you're familiar, officer, I

11   assume with the term "probable cause"?

12      A.   Yes.

13      Q.   Okay.  What led you to think that you

14   had probable cause to believe that a crime had

15   been committed on the day in question?

16                  MR. CLOHERTY:  Objection.

17   You know, at this stage, counsel, I think it's

18   not necessarily a fair question.  Why don't you

19   ask him if he made that determination.  The

20   question assumes he made a probable cause

21   determination.

22                  MR. OLSON:  Well, didn't

23   he?

24                  MR. CLOHERTY:  Why don't

**GARY MANSFIELD**
**April 27, 2006**

Page 20

1    you ask the question of the witness.

2        Q.    (By Mr. Olson)  Didn't you make a

3    determination that you had probable cause to

4    believe that a crime had been committed?

5        A.    Yes.

6        Q.    Based on what information?

7        A.    The information that I was given by

8    the Sears employees.

9        Q.    Okay.  And when you refer to the

10   information given by the Sears employees, you're

11   talking about the statements made by the loss

12   prevention officer?

13       A.    And the witness, yes.

14       Q.    Okay.  And you said you received from,

15   who we will assume is Mr. Hernandez, a written

16   statement?

17       A.    That is my recollection, yes.

18       Q.    Okay.  On that day, did you observe--

19   I believe you already answered this, but I'll

20   ask, did you observe any damage to the concrete

21   floor in the Sears Automotive building?

22       A.    No.

23       Q.    Okay.  Turning back to the Exhibit

24   No. 1, one more time, would you please turn to

**GARY MANSFIELD**
**April 27, 2006**

1    page 3?

2        A.    (Complying)

3        Q.    Interrogatory No. 6 asked you how you

4    arrived at the conclusion that the waste oil

5    contained in the 30-gallon drum had a value of

6    three thousand dollars.  And you responded:

7    That figure was given to me by Sears employee,

8    Alicia Coviello.  A-L-I-C-I-A  C-O-V-I-E-L-L-O.

9    Is that correct?

10       A.    Say the question again, please.

11       Q.    (By Mr. Olson)  Yes.  You said in

12   response to the Interrogatory about the value of

13   waste oil in the 30-gallon drum that you had

14   obtained that figure-- I'm sorry.  The quote

15   was:  That figure was given to me by Sears

16   employee, Alicia Coviello.  Is that correct?

17       A.    Yes, my dollar values that I assigned

18   to this case were given to me by Sears.

19       Q.    And did you ask Miss Coviello how she

20   arrived at that figure?

21       A.    My recollection was that I did.

22       Q.    Okay.  And have you ever purchased a

23   quart of oil for your car?

24       A.    Yes.

**GARY MANSFIELD**
**April 27, 2006**

1    Q.    Okay.  And do you recall-- with rising

2    gas prices it's hard to tell-- but do you recall

3    what it cost when you bought that quart?

4                    MR. CLOHERTY:  Objection.

5    A.    No.

6    Q.    (By Mr. Olson)  If I told you that a

7    30-gallon drum contains a hundred and twenty

8    quarts of oil, and if you multiply that by three

9    dollars for the average price, that would be

10   three hundred and sixty dollars for fresh rather

11   than waste oil, would you be more likely to

12   question Miss Coviello as to how she arrived at

13   the figure of three thousand dollars?

14                    MR. CLOHERTY:  Objection.

15   It calls for speculation, counsel.

16                    You can answer it if you

17   can.

18   A.    Would you repeat your question again?

19   Q.    (By Mr. Olson)  Absolutely.  If a

20   30-gallon drum of waste oil contains one hundred

21   twenty quarts of oil, and we assume that quarts

22   of oil cost three dollars, that would be three

23   hundred and sixty dollars for fresh oil--

24   A.    Okay.

**GARY MANSFIELD**
**April 27, 2006**

Page 23

1      Q.    -- would you be more likely to

2  question how Miss Coviello arrived at the figure

3  of three thousand dollars for thirty gallons of

4  waste oil knowing what I just told you?

5                      MR. CLOHERTY:  Objection.

6  I'm objecting to the form of the question.  You

7  can answer if you can.

8      A.    I do not question how she came to that

9  figure.  I understand how she came to it.

10     Q.    (By Mr. Olson)  Okay.

11                      MR. OLSON:  I would like to

12  mark this as Exhibit 2, if I could.

13                      (Exhibit No. 2 was marked

14  for identification)

15     Q.    (By Mr. Olson)  Have you ever seen

16  this document before, officer?

17     A.    I do not recall ever seeing this, no.

18     Q.    Okay.  If you would look on the first

19  page of this two-page document, underneath where

20  it says Project Location, do you see Sears and

21  Roebuck Company Auto Center?

22     A.    Yes.

23     Q.    Okay.  And directly underneath that,

24  in a different font size, it says, Friday,

**GARY MANSFIELD**
**April 27, 2006**

Page 24

1   October 17th, 2003, 10:30 a.m. to 4:00 p.m., and

2   then in a parenthetical it says:  Only charged

3   four hundred min.

                    Do you see that?

5       A.   Yes.

6       Q.   Okay.  Does that indicate to you that

7   the services provided to clean up the oil was

8   completed at 4:00 p.m. on the afternoon of

9   October 17th?

10                    MR. CLOHERTY:  Objection.

11   Counsel, the document speaks for itself.  He

12   testified he hasn't seen it before.  I don't

13   think it's fair for you to ask him to vouch for

14   what took place to support this document.

15                    MR. OLSON:  Okay.

16       Q.   (By Mr. Olson)  Do you have any

17   knowledge about whether or not ENPRO Services

18   was present when you arrived on October the

19   17th?  Did you see clean-up trucks?

20       A.   No.

21                    MR. OLSON:  I would like to

22   mark this one as Exhibit No. 3.

23                    (Exhibit No. 3 was marked

24   for identification)

**GARY MANSFIELD**
**April 27, 2006**

Page 25

1    Q.    (By Mr. Olson)  Do you recognize this

2    document, officer?

3    A.    No, I do not.

4    Q.    Okay.  And do you see in the middle--

5    it looks like it's cut off, and I apologize for

6    that-- the middle of the page, the word

7    "notified" is clear.  It looks like it says

8    "police" prior to that, and it's "police

9    notified", and then that's circled "yes."

10                   Do you see that?

11    A.    No, I do not.

12    Q.    Okay.

13    A.    This is where he signed right here

14    circled "yes"?

15    Q.    Yes.

16    A.    Okay, yes.

17    Q.    And underneath where it says "Time

18    called", 5:00, the same line as the one I

19    referred you to?

20    A.    Eh-heh.

21    Q.    And next to that it says, Time

22    arrived, 5:15.  Do you see that?

23    A.    I see that.

24    Q.    Okay.  And do you see underneath

**GARY MANSFIELD**
**April 27, 2006**

1    "Officer responding" your name, Gary Mansfield?

2        A.    Yes.

3        Q.    Okay.  If you arrived at 5:15 on the

4    afternoon of October 17th, could you possibly

5    have seen any waste oil on the floor of the

6    Sears Automotive building?

7                    MR. CLOHERTY:  Objection.

8        Q.    (By Mr. Olson)  Did you see any waste

9    oil either outside the Sears Automotive building

10   or inside the Sears Automotive building on that

11   day?

12       A.    I already answered that I do not

13   recall seeing any of the damage.

14       Q.    And you also testified that you never

15   saw any clean-up trucks on that day; is that

16   correct?

17       A.    I don't recall seeing any clean-up

18   trucks there, right.

19       Q.    Okay.

20                    MR. OLSON:  That's all I

21   have.

22                    MR. CLOHERTY:  I've got a

23   couple quick questions for you, sir.

24                    Do you have anything?

GARY MANSFIELD
April 27, 2006

Page 27

1                    MS. NETSKI:  Yes.  Could I

2    just ask a couple of things?

3

4    EXAMINATION BY MS. NETSKI:

5

6        Q.    Officer Mansfield, you said that you

7    spoke with the loss prevention manager when you

8    arrived at the auto center; is that right?

9                    MR. OLSON:  Objection.

10       A.    My understanding is that that was her

11   position, loss prevention, yes.

12       Q.    (By Ms. Netski)  And was that Alicia

13   Coviello, as far as you're able to recall?

14       A.    Yes.

15       Q.    And do you remember speaking with

16   anyone else at the auto center while you were

17   there?

18       A.    I recall other people being there, but

19   my recollection is I spoke with Alicia Coviello

20   and then the witness that I obtained a statement

21   from.

22       Q.    And that was Mr. Hernandez, to the

23   best of your recollection?

24       A.    Yes, ma'am.

**GARY MANSFIELD**
**April 27, 2006**

Page 28

1      Q.    And so would it be fair to say you

2   didn't receive any substantive information in

3   the investigation from anyone other than

4   Miss Coviello and Mr. Hernandez?

5      A.    That's my recollection and my

6   understanding, yes.

7      Q.    Okay.

8               MS. NETSKI:    That's all I

9   have.

10

11   EXAMINATION BY MR. CLOHERTY:

12

13      Q.    Sir, you were asked on direct

14   examination by Mr. Olson about the value of

15   three thousand dollars assigned as the property

16   damage.    Do you recall that line of questioning,

17   sir?

18      A.    Yes, sir.

19      Q.    And from where was that three

20   thousand-dollar figure derived?

21      A.    That was a total value of the damage

22   including the clean-up.

23      Q.    Okay.    And how were you informed or

24   how did you determine that value, sir?

**GARY MANSFIELD**
**April 27, 2006**

Page 29

1      A.    I was given that value by the

2  complainant, Miss Coviello.

3      Q.    And, in fact, looking at what was

4  marked as Exhibit No. 2, it appears to be an

5  invoice of services from a clean-up company.  Do

6  you see that, sir?

7      A.    Yes, sir.

8      Q.    Have you ever seen that before?

9      A.    Just earlier today.

10     Q.    Okay.  And on page 2 of that document,

11  there's a total value of clean-up on that

12  invoice.  Did you see that, sir?

13     A.    Yes, sir.

14     Q.    And what is that amount?

15     A.    Four thousand four hundred

16  eighty-three dollars and sixty-five cents.

17     Q.    Earlier, sir, you were asked on direct

18  examination about a probable cause

19  determination.  Do you recall that line of

20  questioning, sir?

21     A.    Yes, sir.

22     Q.    In your role as a responding officer

23  in this case, did you effect any arrests as a

24  result of your investigation?

**GARY MANSFIELD**
**April 27, 2006**

Page 30

1      A.    I did not.

2      Q.    **And why not?**

3      A.    I brought this matter before the court

4    as requested for a probable cause hearing.  The

5    information was given to me, and my

6    understanding met the elements of the crime, and

7    the next step in that is to bring it before a

8    magistrate and have him adjudicate it.

9      Q.    **And how did that process take place,**

10   **sir?**

11     A.    I submitted a request for a hearing.

12     Q.    **And accompanying the request for a**

13   **hearing, what did you submit, sir?**

14     A.    My report and witness statements.

15     Q.    **And do you know if that hearing took**

16   **place, sir?**

17     A.    Umm.  I believe it did.

18     Q.    **Okay.  Did you have any further**

19   **participation in this matter after submitting**

20   **the request for a hearing?**

21     A.    My best recollection is that I did

22   not.

23                    MR. CLOHERTY:  I don't have

24   anything further.

**GARY MANSFIELD**
**April 27, 2006**

Page 31

1              MR. OLSON:  I have

2    redirect.

3

4    FURTHER EXAMINATION BY MR. OLSON:

5

6        Q.   You testified that you submitted

7    witness statements, I believe.  I thought I

8    heard plural.  Is that correct?

9        A.   If I did, it was misspoke.  It was a

10   witness statement.

11       Q.   So the only witness statement that you

12   submitted was that of Mr. Hernandez; is that

13   correct?

14       A.   Yes, I believe that is the only one

15   that I had.

16       Q.   Okay.  You did not obtain a witness

17   statement from Miss Coviello; is that correct?

18       A.   No.

19              MR. OLSON:  Okay.  Thank

20   you.

21              MR. CLOHERTY:  Nothing

22   further.

23              MS. NETSKI:  Thank you.

24       (Deposition concluded at 10:25 a.m.)

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Lawrence, MA   Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 32

1        I, CHARLOTTE C. ROSATI, a Notary Public in

2    and for the Commonwealth of Massachusetts, do

3    hereby certify that GARY MANSFIELD came before

4    me on the 27th day of April, 2006, at Andover,

5    Massachusetts, and was satisfactorily identified

6    and duly sworn by me to testify to the truth and

7    nothing but the truth as to his knowledge

8    touching and concerning the matters in

9    controversy in this cause; that the deponent was

10   thereupon examined upon his oath, and said

11   examination reduced to writing by me; and that

12   the statement is a true record of the testimony

13   given by the deponent, to the best of my

14   knowledge and ability.

15        I further certify that I am not a relative

16   or employee of counsel or attorney for any of

17   the parties, nor a relative or employee of such

18   parties, nor financially interested in the

19   outcome of the action.

20

21

22   WITNESS MY HAND this 28th day of April, 2006

23   Charlotte C. Rosati, Notary Public

24   My Commission expires:    January 19, 2007

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA    Worcester, MA    Boston, MA    Lawrence, MA    Providence, RI

**GARY MANSFIELD**
**April 27, 2006**

Page 33

1  Today's date:        April 28, 2006

2  To:                  John J. Cloherty III, Esq.

3  Copied to:           Kurt Olson, Esq.

4  Copied to:           Christine M. Netski, Esq.

5  From:                Charlotte C. Rosati, RPR

6  Deposition of:       Gary Mansfield

7  Taken:               April 27, 2006

8  Action:              SOUVANNAKANE

9                       vs. SEARS, ROEBUCK

10

11

12        Enclosed is a copy of the deposition of

13  Gary Mansfield.  Pursuant to the Rules of Civil

14  Procedure, the deponent has thirty days to sign

15  the deposition from today's date.

16        Please have Mr. Mansfield sign the

17  enclosed signature page.  If there are any

18  errors, please have him mark the page, line and

19  error on the enclosed correction sheet.  The

20  deponent should not mark the transcript itself.

21  This addendum should be forwarded to all

22  interested parties.

23        Thank you for your cooperation in this

24  matter.

**GARY MANSFIELD**
**April 27, 2006**

Page 34

1          UNITED STATES DISTRICT COURT

2         FOR THE DISTRICT OF MASSACHUSETTS

3                   C.A. NO. 04-12164-MLW

4

5

6    ERIC SOUVANNAKANE,

7              Plaintiff

8    v.

9    SEARS, ROEBUCK AND CO.,

10             Defendant

11

12

13

14

15       I, GARY MANSFIELD, do hereby certify under

16   the pains and penalties of perjury that the

17   foregoing testimony is true and accurate, to

18   the best of my knowledge and belief.

19       WITNESS MY HAND this   day of

20   2006.

21

22              GARY MANSFIELD

23   CCR

24

**GARY MANSFIELD**
**April 27, 2006**

Page 35

1                        CORRECTION SHEET

2     DEPONENT:     Gary Mansfield

3     CASE:         Souvannakane v. Sears, Roebuck

4     DATE TAKEN:   April 27, 2006

5

6     PAGE   LINE    CHANGE AND CORRECTION AND REASON

7     ------------------------------------------------------

8     ------------------------------------------------------

9     ------------------------------------------------------

10    ------------------------------------------------------

11    ------------------------------------------------------

12    ------------------------------------------------------

13    ------------------------------------------------------

14    ------------------------------------------------------

15    ------------------------------------------------------

16    ------------------------------------------------------

17    ------------------------------------------------------

18    ------------------------------------------------------

19    ------------------------------------------------------

20    ------------------------------------------------------

21    ------------------------------------------------------

22    ------------------------------------------------------

23    ------------------------------------------------------

24    ------------------------------------------------------