# Exhibit J

## COMMONWEALTH OF MASSACHUSETTS
### ESSEX COUNTY
### DISTRICT COURT DEPARTMENT
### LYNN DIVISION

**Docket No.  CR1350**

### COMMONWEALTH

v.

### ERIC SOUVANNAKANE

Before:            The Honorable Justice (Unidentified)

Date:              October 5, 2004

Appearances:       Assistant District Attorney
                   Lynn District Courthouse
                   Lynn, MA  01901
                   For the Commonwealth

                   Attorney Graterex
                   For the Defendant

### TRANSCRIPT OF RECORDED PROCEEDINGS

### TRIAL

### INDEX

| Witness | Direct | Cross | Redirect |
|---------|--------|-------|----------|
| Ms. Alicia Coviello | 5 | 9 | 10 |
| Mr. Jose Hernandez | 11 | 18 | |

|  | **EXHIBITS** | **PAGE** |
|---|---|---|

(None)

Total Transcript Pages:  27

| | |
|---|---|
| 1 | **Proceedings** |
| 2 | **[...] indicates inaudible or unintelligible portion of the tape.** |
| 3 | THE COURT:  Would you swear Mr. Souvannakane, please. |
| 4 | THE CLERK:  Please raise your right hand, sir.  Do you swear that the |
| 5 | testimony that you are about to give in the cause in hearing will be the truth, the |
| 6 | whole truth, and nothing but the truth, so help you God? |
| 7 | MR. SOUVANNAKANE:  I do. |
| 8 | THE COURT:  All right.  Sir, you understand you have the right to a jury |
| 9 | trial.  Do you understand that? |
| 10 | MR. SOUVANNAKANE: I do. |
| 11 | THE COURT:  And you're telling me through your attorney that you |
| 12 | don't want a jury trial.  You want the case tried just before me.  Do you |
| 13 | understand that? |
| 14 | MR. SOUVANNAKANE:  Understood. |
| 15 | THE COURT:  Do you understand that if you don't like what I do, it's too |
| 16 | late then to say you want a jury trial.  Do you understand that? |
| 17 | MR. SOUVANNAKANE:  I do. |
| 18 | THE COURT:  Do you understand that the jury consists of six members of |
| 19 | the community who are selected by chance.  You and your attorney get to take |
| 20 | part in picking the jury.  When you have a jury trial, my job would be just to rule |
| 21 | on whatever the jury hears and explain the law to the jury at the end of the case, |
| 22 | but it would be the jury's decision whether or not the government had proved the |
| 23 | case against you beyond a reasonable doubt, and all six jurors would have to |

1        agree, and that's what happens in a jury trial. Do you understand you're not

2        going to have a jury trial?

3                MR. SOUVANNAKANE: I do.

4                THE COURT: All right. The burden of proof is the same. The

5        government has to prove the case against you beyond a reasonable doubt. I'm

6        going to hear the evidence, and I'm going to make a decision whether or not the

7        government has proved the case beyond a reasonable doubt, and if I do believe

8        the government has proven the case beyond a reasonable doubt, then I'm also the

9        person that sentences you. Do you understand that?

10               MR. SOUVANNAKANE: I do.

11               THE COURT: All right. Have you had enough time to talk to Attorney

12       Graterex (phonetic) about this decision?

13               MR. SOUVANNAKANE: I think so.

14               THE COURT: Are you satisfied with his advice?

15               MR. SOUVANNAKANE: Yes.

16               THE COURT: All right, and counsel, there's no reason that you know of

17       why the gentleman isn't capable of waiving the right to a jury trial.

18               MR. GRATEREX: No reason, Judge.

19               THE COURT: All right. How many witnesses?

20               ASSISTANT DISTRICT ATTORNEY: Two.

21               THE COURT: Their names?

22               ASSISTANT DISTRICT ATTORNEY: Jose Hernandez and Alicia

23       Coviello.

1    THE COURT: All right. Any witnesses you need sworn?

2    MR. GRATEREX: Potentially [...], and perhaps this gentleman as well.

3    ASSISTANT DISTRICT ATTORNEY: Excuse me. What was that?

4    MR. GRATEREX:  Sean Baldy (phonetic). [...].

5    THE COURT: All right. Commonwealth, whenever you're ready.

6    MR. GRATEREX: I have a motion to eliminate, Judge.

7    THE COURT: Commonwealth, do you have a position on this?

8    ASSISTANT DISTRICT ATTORNEY: I do. I would oppose the motion.

9    The Commonwealth did prior to [...] such evidence to show an element of the

10   crime, which is the malicious destruction of property over $250.00.

11    THE COURT: Do you have any authority for this, Mr. Graterex?

12    MR. GRATEREX: Well, Judge, the element is the value of the property

13   damaged, not the damage. What they're trying to introduce is, as a result of some

14   alleged damage done by the tipping over of some oil, they had to come and clean

15   up the spill. That's damages. That's not the value of the property, and we had a

16   motion to dismiss in front of Judge Flatley last time we were here. I noticed that

17   there was no markings in the file this morning. She did deny the motion, but she

18   did specifically say to the district attorney at that point that they were going to be

19   required to prove the value of the oil spill, not the damage, not the cleanup.

20    ASSISTANT DISTRICT ATTORNEY: Well, it wouldn't be the value of

21   the oil spill, either, then. It would be the value of the building, which I think I can

22   probably prove [...].

23    THE COURT: All right. Well, I'll hear it. I'll take this under

1       advisement, and I'll hear the testimony.

2                ASSISTANT DISTRICT ATTORNEY:  Thank you, Your Honor.

3                The Commonwealth's first witness is Alicia Coviello.

4                THE CLERK:  Raise your right hand, please, ma'am.

5                Do you solemnly swear that the testimony you're about to give in this

6       cause in hearing shall be the whole truth, and nothing but the truth, so help you

7       God?

8                MS. COVIELLO:  I do.

9                THE CLERK:  Would you please take the stand.

10                                **Alicia Coviello**

11                               **Direct Examination**

12      **By Assistant District Attorney:**

13      Q       Good afternoon, ma'am.  Could you please state your name and spell your last

14              name for the record.

15      A       Alicia Coviello, C-O-V-I-E-L-L-O.

16      Q       Where do you work?

17      A       I work at Aggregate Industries.

18      Q       Did you at some point work for Sears Automotive?

19      A       No, I worked for Sears Retail Company from July of 1999 to August of 2004.

20      Q       And what is your connection in that capacity with Sears Automotive?

21      A       I was Loss Prevention Supervisor.

22      Q       Where did you physically work when you worked for Sears?

23      A       I worked in the building across the street.

| 1 | Q | Would that be the store? |
|---|---|---|
| 2 | A | Yes. We frequently visited the auto center though. |
| 3 | Q | Are you familiar with the auto store itself? |
| 4 | A | Yes. |
| 5 | Q | Could you describe the Sears Automotive store. |
| 6 | A | How would you like me to – |
| 7 | Q | What type of building is it? |
| 8 | A | It's a free-standing building. It consists of the customer center and then the actual |
| 9 | | bays themselves, and there's a downstairs basement area too. |
| 10 | Q | Are you familiar with the defendant, Mr. Souvannakane? |
| 11 | A | Yes. |
| 12 | Q | How do you know him? |
| 13 | A | He was an employee. |
| 14 | Q | Did you know him while he worked for Sears? |
| 15 | A | Not personally. |
| 16 | | MR. GRATEREX: Well, objection, Your Honor. Strike the testimony. |
| 17 | | THE COURT: Well, she says she knows him. |
| 18 | | MR. GRATEREX: How'd she know about him? Ask her how she knew |
| 19 | | him. As an employee? |
| 20 | | THE COURT: You can ask when you cross-examine. |
| 21 | | MR. GRATEREX: Thank you, Your Honor. |
| 22 | Q | Are you aware of Mr. Souvannakane's [...] (Tape has a dead spot and continues |
| 23 | | as follows:) |

| | | |
|---|---|---|
| 1 | | THE COURT: -- prior to? |
| 2 | | ASSISTANT DISTRICT ATTORNEY: Yes. |
| 3 | | THE COURT: All right. Well, make that clear, because right now you're |
| 4 | | talking about what's happening now. |
| 5 | | ASSISTANT DISTRICT ATTORNEY: I'm asking if he still works for |
| 6 | | the company. He was fired. |
| 7 | | THE COURT: Well, I got that drift. Go ahead. |
| 8 | Q | Was he fired prior to the incident on October 16th in which oil was spilled in the |
| 9 | | Sears Automotive? |
| 10 | A | Yes. |
| 11 | | MR. GRATEREX: Who's testifying? |
| 12 | | THE COURT: I will take it as far as he was fired before October 16th, |
| 13 | | but -- |
| 14 | Q | Are you familiar with an incident that occurred on October 16th of 2003 at the |
| 15 | | Sears Automotive station? |
| 16 | A | Yes. |
| 17 | Q | What happened on that day? |
| 18 | | MR. GRATEREX: Objection, Your Honor. |
| 19 | | THE COURT: What's the basis of your objection? |
| 20 | | MR. GRATEREX: She wasn't there. She's not an eyewitness. She's |
| 21 | | working in a building across the street. Whatever she's heard is hearsay, Judge. |
| 22 | | THE COURT: Well, she could tell what she saw and reported. |
| 23 | | MR. GRATEREX: What she saw. Thank you. |

| | | |
|---|---|---|
| 1 | Q | Did you see anything with respect to October 16th of 2003? |
| 2 | A | I was called over at nine o'clock the next day for a spill of oil. |
| 3 | | MR. GRATEREX: Not responsive. |
| 4 | | THE COURT: All right. Did you see anything as of October 16th, 2003? |
| 5 | | THE WITNESS: I was not there the night it happened. |
| 6 | Q | At some point were you called to examine the building in Sears Automotive? |
| 7 | A | Yes. Nine o'clock – |
| 8 | Q | And what did you see when you went – when did you go there? |
| 9 | A | Nine o'clock the next morning. |
| 10 | Q | And what did you see when you went there? |
| 11 | | MR. GRATEREX: Objection, Your Honor. |
| 12 | | THE COURT: No, she can have that. It's an observation. |
| 13 | A | A large spill of oil. |
| 14 | Q | Where was that? |
| 15 | A | In the oil bay. |
| 16 | Q | Why were you called? |
| 17 | A | As Loss Prevention we're required to report and deal with all environmental |
| 18 | | hazards including large spills. |
| 19 | Q | And did you do that in your capacity as a Loss Prevention officer for Sears? |
| 20 | A | Yes. |
| 21 | Q | Was that oil spill on the floor of the bay? |
| 22 | A | Yes, it was. |
| 23 | | ASSISTANT DISTRICT ATTORNEY: I have nothing further. Thank |

Commonwealth v. Eric Souvannakane                                                        9

1     you.

2                      **Alicia Coviello**

3                  **Cross-Examination**

4   **By Mr. Graterex:**

5   Q     The bay being inside the building?

6   A     Yes.

7   Q     And that's where the oil was, inside the building?

8   A     Yes.

9   Q     When you say a bay, is this where someone would repair an automobile?

10   A     Yes.

11   Q     And could you determine how much oil was inside the bay?

12   A     I do know how much was in there after –

13   Q     No.  By your own observations, do you know how much oil was inside the bay?

14   A     Anywhere from 40 to 60 gallons.

15   Q     I'm sorry?

16   A     Anywhere from 40 to 60 gallons.

17   Q     Isn't there a drain there for any spilled oil in that bay to go into the drain?

18   A     There was an oil/water separator, but there was too much oil flowing out for it to

19     catch it all.

20           MR. GRETEREX:  All right.  Thank you.

21

22

23

| | <u>Alicia Coviello</u> |
|---|---|
| 1 | |
| 2 | <u>**Redirect Examination**</u> |
| 3 | <u>**By Assistant District Attorney:**</u> |
| 4 | Q       Do you know the value of the building for Sears Automotive? |
| 5 | A       No, I do not know. |
| 6 | MR. GRATEREX:  Objection, Your Honor. |
| 7 | THE COURT:  Well, the answer is No. |
| 8 | MR. GRATEREX:  I'll take it. |
| 9 | ASSISTANT DISTRICT ATTORNEY:  Thank you.  Nothing further. |
| 10 | THE COURT:  All right.  You're excused, ma'am. |
| 11 | THE WITNESS:  Thank you. |
| 12 | (Witness excused.) |
| 13 | THE COURT:  Are we waiting for the next witness? |
| 14 | ASSISTANT DISTRICT ATTORNEY:  Yes, Your Honor. |
| 15 | THE COURT:  All right.  As soon as your next witness gets in, let me |
| 16 | know. |
| 17 | ASSISTANT DISTRICT ATTORNEY:  Thank you, Your Honor. |
| 18 | THE COURT:  And I'll -- |
| 19 | (The tape has been shut off and resumes as follows:) |
| 20 | THE CLERK:  For the record, Commonwealth vs. Eric Souvannakane. |
| 21 | ASSISTANT DISTRICT ATTORNEY:  Thank you, Your Honor.  The |
| 22 | Commonwealth's next witness would be Jose Hernandez. |
| 23 | THE CLERK:  Hernandez, come forward.  Raise your right hand.  Do |

| 1 | | you solemnly swear that the testimony that you're about to give in this cause in |
| 2 | | hearing will be the truth, the whole truth, and nothing but the truth, so help you |
| 3 | | God? |
| 4 | | MR. HERNANDEZ: I do. |
| 5 | | THE CLERK: Please take the stand. |

**Jose Hernandez**

**Direct Examination**

**By Assistant District Attorney:**

| 9 | Q | Good afternoon, sir. |
| 10 | A | Good afternoon. |
| 11 | Q | Could you please state your name and spell your last name for the record. |
| 12 | A | Jose Hernandez, H-E-R-N-A-N-D-E-Z. |
| 13 | Q | Now, just to remind you to keep your voice up good and loud.  Thank you. |
| 14 | A | Okay. |
| 15 | Q | Where do you work? |
| 16 | A | Sears auto center in Saugus. |
| 17 | Q | How long have you worked there? |
| 18 | A | Probably for three years now. |
| 19 | Q | What do you do there? |
| 20 | A | Right now I'm doing alignments most of the time.  Auto mechanic, I would say. |
| 21 | Q | Okay.  Could you describe the auto center, what type of building it is. |
| 22 | A | Huge building.  More looking like a warehouse with a bunch of lifts and garage to |
| 23 | | lift the cars, auto machines. |

| | | |
|---|---|---|
| 1 | Q | What's housed in the building? |
| 2 | A | What? |
| 3 | Q | What's in the building? |
| 4 | A | What's in the building? |
| 5 | Q | Yes. |
| 6 | A | I don't quite – |
| 7 | Q | Is there a store in the building? |
| 8 | A | Yeah. |
| 9 | Q | Okay. And are there garages in the building as well? |
| 10 | A | Yes. |
| 11 | Q | How many garages or bays are in the building? |
| 12 | A | I would say about 15, 20. |
| 13 | Q | What is the floor of the bays, what is that made of? |
| 14 | A | Oh, floor. Cement. |
| 15 | Q | Cement. How big would you describe – how big of an area do those bays cover |
| 16 | | with cement, if you can estimate? |
| 17 | A | Twenty-five square feet, I would say. |
| 18 | Q | Okay. Now, during your time of employment at Sears Automotive, did you come |
| 19 | | to know the defendant, Mr. Eric Souvannakane? |
| 20 | A | Yes. |
| 21 | Q | Do you see him here today? |
| 22 | A | Yes. |
| 23 | Q | Could you identify him for the record? Could you describe what he's wearing? |

Commonwealth v. Eric Souvannakane

13

1          MR. GRATEREX:  We'll stipulate, Judge.  He's sitting right here.

2          THE COURT:  All right.

3          ASSISTANT DISTRICT ATTORNEY:  Thank you.

4    Q    How did you know Mr. Souvannakane?

5    A    I met him when I started working, that's what I did.  I started working I would say

6        probably a year and a half after I started working at Sears.

7    Q    Was he a mechanic as well?

8    A    Yes.

9    Q    And at some point were you aware that he was terminated from Sears?

10   A    Yeah.  I heard that.  I didn't know what was the reason for it.

11   Q    But you heard that he was fired?

12   A    Yeah.

13   Q    I'd like to direct your attention to October 17th of 2003.  Were you working on

14       that evening?

15   A    Yes.

16   Q    And what shift were you working?

17   A    On my shift.

18   Q    What does that consist of?

19   A    From noontime to nine p.m.

20   Q    And at approximately seven p.m. what were you doing?

21   A    Working on aligning.

22   Q    Between seven and 7:30, what happened?

23   A    Well, I don't remember exact times, but that was – I would say seven, 7:30

| | | |
|---|---|---|
| 1 | | maybe.  Well, I just saw him come in with a couple of friends. |
| 2 | Q | Saw "him."  Who are you referring to? |
| 3 | A | Eric. |
| 4 | Q | And had he already been fired at this point? |
| 5 | A | Yes. |
| 6 | Q | And who did he come in with? |
| 7 | A | A couple of friends, which – I don't know.  I never seen them before. |
| 8 | Q | Did either of those friends work at Sears Automotive? |
| 9 | A | No. |
| 10 | Q | And what happened? |
| 11 | A | I guess one of the techs that was working on one of his friend's car, I believe.  I'm |
| 12 | | not so sure about that.  I was working on alignment, right.  All I heard was a |
| 13 | | banging noise in the brake department, which is I believe 10 feet from where I |
| 14 | | was. |
| 15 | Q | And where was the defendant and his friends when you heard the noise? |
| 16 | A | I would say – yeah, they were in the brake department, yes. |
| 17 | Q | Okay.  Prior to hearing the loud bang did you see the defendant do anything? |
| 18 | A | No. |
| 19 | Q | Did you see him do anything with windshield washing fluid? |
| 20 | | MR. GRATEREX:  Objection, Your Honor. |
| 21 | | THE COURT:  No, that is leading. |
| 22 | | MR. GRATEREX:  I think he answered the question No. |
| 23 | | THE COURT:  Then are you withdrawing your objection? |



1          MR. GRATEREX: Well, that question is leading, but the prior question

2     was did you see him do anything, and he said –

3          THE COURT: And the answer to that question was No.

4          MR. GRATEREX: Right.

5   Q   What did you do after you heard the bang?

6   A   I turned around and looked.

7   Q   And what did you see?

8   A   I see where we keep used oil, and all I saw was him picking it up and putting

9     some pads that we use to clean up oil spills.

10  Q   Again, when you say "him," are you referring to the defendant?

11  A   Yes.

12  Q   He picked up the barrel?

13  A   Yes.

14  Q   When you turned around, was the barrel already on the ground?

15  A   Yes.

16  Q   And how far away from the barrel was the defendant at this time?

17  A   I would say about three, four feet from the barrel.

18  Q   From the barrel?

19  A   Yeah.

20  Q   Where were his friends?

21  A   They were with the other tech.

22  Q   Were they near the barrel?

23  A   No.

| 1 | Q | Was there anyone else besides Eric near the barrel? |
|---|---|---|
| 2 | A | I don't think. |
| 3 | Q | How much oil was in that barrel, if you know? |
| 4 | A | I would say about 10 gallons, maybe. |
| 5 | Q | Would you describe the barrel itself. |
| 6 | A | I would say like three feet high and has like a funnel on top of it. |
| 7 | Q | What is it made of? |
| 8 | A | Steel. |
| 9 | Q | What happened next? |
| 10 | A | Well, I kept working on my car. I was cleaning it up. I keep working on the car I |
| 11 | | was working on. I was doing aligning. I finish with it. I went to wash my hands, |
| 12 | | and then he came over and he wash his hands. |
| 13 | Q | Is this the defendant? |
| 14 | A | Yes, the defendant. |
| 15 | Q | And what happened then? |
| 16 | A | And he just told me that I didn't see anything. |
| 17 | Q | How did he say this to you? |
| 18 | A | In these five words, he was, like, "You didn't see anything, right?" That was it. |
| 19 | Q | And what did you say? |
| 20 | A | No. |
| 21 | Q | Did you tell anyone about this at that time? |
| 22 | A | Not at that time. |
| 23 | Q | When did you tell somebody about this? |

| | | |
|---|---|---|
| 1 | A | When I find out about the other spill. |
| 2 | Q | There was another spill? |
| 3 | A | Yeah. |
| 4 | Q | Where was the second – |
| 5 | A | It was in the brake department. It was in the oil thing, which is 10 feet from |
| 6 | | where the brake department is. |
| 7 | Q | When did the second spill occur? |
| 8 | A | I have no idea. The next morning I came into work, I heard about it. |
| 9 | Q | So did it occur on the same night? |
| 10 | A | I believe so. |
| 11 | Q | Did you see the second spill? |
| 12 | A | Yes. |
| 13 | Q | Did you see it happen? |
| 14 | A | No. |
| 15 | Q | You saw the aftermath? |
| 16 | A | Yes. |
| 17 | Q | When was that, when you came to work the next morning? |
| 18 | A | When I came to work the next morning. |
| 19 | Q | Is that when you reported what you had seen with Jose [sic] to your bosses? |
| 20 | A | Yes. |
| 21 | Q | And did you fill out a statement with the help of your bosses? |
| 22 | A | Yes. |
| 23 | | ASSISTANT DISTRICT ATTORNEY: I have nothing further. Thank |

| 1 | | you. |
|---|---|---|
| 2 | | **Jose Hernandez** |
| 3 | | **Cross-Examination** |
| 4 | | **By Mr. Graterex:** |

5  Q  Mr. Hernandez, when you saw Eric come in that night with a couple of his

6     friends, do you know that he was there to pick up his tools?  Did you find that

7     out?

8  A  No.

9  Q  He didn't tell you that, he was there to pick up his tools because he'd been fired

10    the day before?

11 A  No.

12 Q  Okay.  And you saw him – well, you heard a bang in the brake department, was

13    it?

14 A  In the brake department.

15 Q  And the barrel that you saw tipped over on the ground, how large a barrel was

16    that?

17 A  How large?

18 Q  How big is it?

19 A  How much oil was in the –

20 Q  I'm not sure, but how many gallons could that barrel hold?

21 A  I would think 25, 30 gallons maybe.

22 Q  And this is used motor oil that's taken out of crankcases of automobiles?

23 A  That's correct.

| | | |
|---|---|---|
| 1 | Q | Okay. And this bay that you described where you saw Eric, he was actually |
| 2 | | picking up this barrel and had been trying to clean up what was spilled onto the |
| 3 | | ground; is that correct? |
| 4 | A | That's correct. |
| 5 | Q | Okay. But you didn't see it being knocked over? |
| 6 | A | No. |
| 7 | Q | There was somebody in that bay area working on a motor vehicle? |
| 8 | A | The one in the next bay. |
| 9 | Q | Okay. One of the techs? |
| 10 | A | Yes. |
| 11 | Q | And a couple of other people in the area also? |
| 12 | A | Yes. |
| 13 | Q | Now, you say you came in the next morning, heard about the bigger spill? |
| 14 | A | Yes. |
| 15 | Q | And you saw this spill? |
| 16 | A | I saw when they was cleaning it up. |
| 17 | Q | Who was cleaning it up? |
| 18 | A | Another tech, which he doesn't work there anymore. |
| 19 | Q | How did he clean it up? |
| 20 | A | How did he clean it up? |
| 21 | Q | Yes, the second spill. |
| 22 | A | I believe he tried to clean it up with water or something. |
| 23 | Q | He hosed it out into the parking lot, didn't he? |

Commonwealth v. Eric Souvannakane

| | | |
|---|---|---|
| 1 | A | Something like that. |
| 2 | Q | All right. The first spill that you saw that you saw Eric trying to clean up, did you |
| 3 | | say he threw some type of rags down? |
| 4 | A | Yes, that we use to absorb any oil spill. |
| 5 | Q | Okay, and did he throw some other type of material down used to absorb oil |
| 6 | | spills? |
| 7 | A | I didn't see that. |
| 8 | Q | After he had done that, did you take a look at where the oil was on the ground? |
| 9 | A | No. |
| 10 | Q | You didn't notice if there was still any oil on the ground? |
| 11 | A | No. |
| 12 | Q | So there was no oil on the ground after he cleaned it up? |
| 13 | A | Well, when you put those pads, what it does, it absorbs oil, and then you go and |
| 14 | | pick that up. |
| 15 | Q | All right. So what you saw on the ground before you went back to work was the |
| 16 | | oil being absorbed by these rags? |
| 17 | A | Yes. |
| 18 | Q | Is there also in this bay, is there sort of a drain for any used oil that would spill |
| 19 | | onto the concrete? Were there drains in each of those bays? |
| 20 | A | Yes. |
| 21 | Q | Is there a drain in this bay? |
| 22 | A | Yes. |
| 23 | Q | And the reason for that drain is to catch used oil or water that would be used |

| | | |
|---|---|---|
| 1 | | in the repair of the automobile, correct? |
| 2 | A | Water, yes. When we clean it – when we clean the floors. |
| 3 | Q | Okay. Where you saw this barrel having been tipped over and Eric cleaning it up, |
| 4 | | it wasn't the same spill that you saw the next morning? |
| 5 | A | No, it was different. |
| 6 | Q | Okay. Did you see Eric leave that night? |
| 7 | A | Yes. |
| 8 | Q | What time was that? |
| 9 | A | Probably was around eight. |
| 10 | Q | About eight o'clock? |
| 11 | A | About eight o'clock. |
| 12 | Q | And you left at what time that night? |
| 13 | A | I left at 9:30. |
| 14 | Q | You left at 9:30? Before you left at 9:30, you hadn't heard about any second spill, |
| 15 | | did you? |
| 16 | A | No. |
| 17 | Q | You heard about it when you came into work in the morning. |
| 18 | A | Yes. |
| 19 | Q | When you left Mr. Souvannakane was not on the premises? |
| 20 | A | No. |
| 21 | | MR. GRATEREX: Thank you. |
| 22 | | THE COURT: Anything further? |
| 23 | | ASSISTANT DISTRICT ATTORNEY: Nothing. |

1       THE COURT:  All right.  Thank you, Mr. Hernandez.  You're done with

2    him?

3       MR. GRATEREX:  Yes, thank you.

4       THE COURT:  You're excused, sir.

5  (Witness excused.)

6       ASSISTANT DISTRICT ATTORNEY:  Your Honor, the Commonwealth

7    rests.

8       THE COURT:  Okay.

9       MR. GRATEREX:  I would make a motion for required finding of not

10   guilty based on two points that were made.

11      THE COURT:  Please.

12      MR. GRATEREX:  The Commonwealth did not prove anything as to the

13   value of the building that she promised when she started this trial.  It's not part of

14   the evidence, but she had made a representation that the reason she had to have

15   that first witness here was to prove the value of the building that's so destroyed.

16   Well, they haven't done that.  One of the elements of this particular offense has

17   not been established.

18      Secondly, listening to the government's best witness here, they have not

19   proven that Mr. Souvannakane, there may be some inference to the fact that he

20   may have knocked over this drum because he's the only one near it when Mr.

21   Hernandez noticed him there.  The fact of the matter was, he was attempting to

22   clean up, and he did clean it up.  There was no damage, Judge.  Then when Mr.

23   Hernandez comes into work the next morning he hears about this other spill

| | |
|---|---|
| 1 | that this woman testified to. That happened after the fact. It had nothing to do |
| 2 | with Mr. Souvannakane. Based on that, Judge, the Commonwealth did not prove |
| 3 | the case, either that he did this intentionally and maliciously or that they have not |
| 4 | even established the fact of the value of the alleged goods. |
| 5 | THE COURT: Well, regarding the value of the goods, would you agree |
| 6 | that the judge imposed a penalty enhancement? |
| 7 | MR. GRATEREX: Imposed a penalty enhancement, Judge, that's true. |
| 8 | […]. |
| 9 | (Two people speaking at the same time.) |
| 10 | THE COURT: Right. All that does -- |
| 11 | MR. GRATEREX: But the fact of the matter is, what's allegedly |
| 12 | damaged here is used oil. |
| 13 | THE COURT: Well, I'm not saying I agree or disagree with you. I'm just |
| 14 | saying if you prevail on that – |
| 15 | MR. GRATEREX: To that value, exactly. |
| 16 | THE COURT: -- that simply takes it from a felony down to a |
| 17 | misdemeanor. |
| 18 | MR. GRATEREX: Correct, but they have to prove the value of |
| 19 | something. This is used oil. What I would argue to the court is, Sears is going to |
| 20 | hire someone to come in and take this oil – |
| 21 | THE COURT: I'm not concerned with that. |
| 22 | ASSISTANT DISTRICT ATTORNEY: With respect to the value, Your |
| 23 | Honor, as we argued about at the beginning of the trial, it's the value of the |

1    property, not the value of the damage. The value of the property so destroyed is

2    the building of the Sears Motor Company. The building, Judge, I would suggest

3    that you can find that that building is worth more than $250.00. Just the concrete

4    alone and the bays is certainly worth more than $250.00, and I would suggest that

5    in *Commonwealth v. Hossman*, 257 Mass. 385, in that case there was no evidence

6    as to the value of the property; however, it's a matter of common experience that

7    a jury could find that each of the cars was worth more than $15.00, and I would

8    suggest that this is similarly so. It's a matter of common experience that a

9    building, a free-standing building such as that, is worth $250.00. As I said, just

10   the concrete alone that was damaged is worth $250.00 given what has been

11   testified to by the witness. The building was so damaged by the spill. That's the

12   damage the – we're not alleging that the damage is caused to used oil. The

13   damage is to the building, and I would suggest that the evidence, certainly any

14   motion for required finding is such that a tryer of fact could find in a light most

15   favorable to the Commonwealth that the defendant did, in fact, cause this damage

16   with the defendant being the only person near the barrel. The people that were

17   with him were in another bay, and given the statements afterward to the witness, I

18   would suggest that that indicates a consciousness of guilt on behalf of the

19   defendant, the statement made to the witness, "You didn't see anything, right?"

20   With respect to motive, this is the defendant that has the motive, him having been

21   fired from this company, the other two members that came in with him not having

22   even worked at that company, I'd suggest that the Commonwealth has satisfied its

23   burden.

1              THE COURT: [...]. I would find that insofar as the value of the building,

2     that the Commonwealth did offer sufficient proof. I don't think there has to be

3     the magic words, *What do you say the value is?* and somebody says, *It's over*

4     *$250.00* when they describe an automotive maintenance store of the size and

5     shape with the faculties that this building had, so I would find the Commonwealth

6     prevailed on that issue, but I do have doubt as to whether it prevailed on willful

7     and malicious destruction of that particular property, and Mr. Souvannakane is

8     entitled to that doubt, and he's found not guilty.

9              THE CLERK: Found not guilty.

10             MR. SOUVANNAKANE: Judge, thank you. Thank you, sir.

11             THE CLERK: Okay, the second item here.

12             MR. GRATEREX: Judge, he has an uninsured -- they didn't charge him

13     with putting a plate on, but I guess obscuring the identity of the plate and no

14     sticker. What he tells me there, and we can try to resolve this, Judge, is that I'm

15     going to ask the court to dismiss it on some cost.

16             THE COURT: Let me see the record.

17             Commonwealth?

18             ASSISTANT DISTRICT ATTORNEY: Yes, Your Honor.

19             THE COURT: Any inclination of resolving the uninsured and the sticker

20     and the violation for costs?

21             ASSISTANT DISTRICT ATTORNEY: Your Honor, the Commonwealth

22     would offer to dismiss Count I on the payment of $200.00 for costs; Count II on

23     the payment of $50.00 court costs, with a responsible finding on Count III and a

1    $50.00 assessment, for a total of $300.00. If the defendant is willing to take that.

2    MR. GRATEREX: Judge, I'm going to accept his license, but these other

3    violations, the civil ones though, $200.00 certainly would be something agreeable

4    to the first count, Judge.

5    THE COURT: Well, make the first one $300.00 and make the other two

6    not responsible. The money's going to stay the same, because that's the standard

7    rate that everybody else in his position pays.

8    MR. GRATEREX: That'll do the trick. Thank you.

9    THE COURT: All right. You're cleared to go.

10   MR. GRATEREX: Could we have 60 days, please, Judge, for the

11   $300.00?

12   THE CLERK: [...].

13   MR. GRATEREX: Sixty days, yes, two months.

14   (Inaudible discussion.)

15   He's looking for three months, Judge.

16   THE COURT: Two months. He's ahead of the game. Two months. You

17   can do community service if you can't afford to pay money. We'd love to have

18   you work for us. Two months. If you don't have it paid by the date the Clerk

19   gives you, you're going to have to come back and have some more time,

20   otherwise a warrant will issue for your arrest, and that's going to cost you more

21   money, not less money.

22   THE CLERK: Okay, so make sure that $300.00 is paid by December 6th.

23   ASSISTANT DISTRICT ATTORNEY: Thank you, Your Honor.

Commonwealth v. Eric Souvannakane

## CERTIFICATION

I, Catherine A. Mattson, do hereby certify that the foregoing is a true and accurate transcript, prepared to the best of my ability, **and insofar as was audible,** of the cassette tape provided to us, of a hearing in the matter of **Commonwealth v. Eric Souvannakane**, taken on October 5, 2004, in the Lynn District Court, before the Honorable Justice

_____
Date

_____
Catherine A. Mattson, Transcriptionist for
The Processed Word
422 Salem Street
Medford, MA 02155
(781) 369-1124

The Processed Word
Name:   Janice Molyneaux

_____
Date

Signature: _____