UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Eric Souvannakane, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 04-12164-MLW |
| | ) |
| Sears, Roebuck & Co., William Sullivan, | ) |
| Richard Spellman, Barbara Tagliarino, Kevin | ) |
| Sullivan, Alicia Coviello, & Gary Mansfield, | ) |
| | ) |
| Defendants | ) |

**PLAINTIFF ERIC SOUVANNAKANE'S LOCAL RULE 56.1 JOINT CONCISE STATEMENT OF DISPUTED MATERIAL FACTS WHICH PRESENT GENUINE TRIABLE ISSUES**

Pursuant to L.R. 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, the Plaintiff Eric Souvannakane submits the following concise statement of the material facts of record which Mr. Souvannakane argues present genuine issues to be tried.

**Plaintiff Eric Souvannakane's Employment with Defendant Sears Roebuck**

Mr. Souvannakane was hired by Sears in August 2002 and terminated in October 2003. **Souvannakane Dep. 60:17-22, February 8, 2006, attached as Exhibit A.**

Mr. Souvannakane did tires, oil changes, and batteries at Sears. **Souvannakane Dep. 61:8-10, Ex. A.**

Souvannakane's supervisors were first Rich and then Anthony at Sears. **Souvannakane Dep. 65:19-23, Ex. A.**

Kevin Sullivan was a service writer and was sometimes left in charge of the store while

1

the manager was gone. **Souvannakane Dep. 66:18-24; 67:9-18, Ex. A.**

Souvannakane knew Alicia Coviello from court, but she also gave him a hard time when he went to pick up his last pay check. **Souvannakane Dep. 70:21-22; 72:11-13, Ex. A.**

Ms. Coviello did not want to give Mr. Souvannakane his last pay check. **Souvannakane Dep. 73:19, Ex. A.**

Ms. Coviello would not give Mr. Souvannakane his last pay check. **Souvannakane Dep. 75:11-15, Ex. A.**

The only time Mr. Souvannakane ever spoke with Barbara Tagliarino was on the day he was terminated. **Souvannakane Dep. 79:19-22, Ex. A.**

Mr. Souvannakane said he never spoke with either Katsaris or Hernandez about his termination. **Souvannakane Dep. 83:7-16, Ex. A.**

Mr. Souvannakane said that he spoke with John Baldi Jr. about why he had been terminated on the day of his termination. **Souvannakane Dep. 83:17-24; 84:1-7, Ex. A.**

Mr. Souvannakane said that Sal, a service writer like Kevin Sullivan, discriminated against Mr. Souvannakane on the basis of his race. **Souvannakane Dep. 84:11-24; 85:1-7, Ex. A.**

Mr. Souvannakane said that Sal wanted him to get a tire from the basement when this was part of service writer's duties. **Souvannakane Dep. 85:13-23, Ex. A.**

Mr. Cieri, manager of Sears Auto Dept., pulled Mr. Souvannakane into his office to find out what had happened between him and Sal. **Souvannakane Dep. 88:19-24; 89:1-8, Ex. A.**

Mr. Souvannakane said that another employee swore at a customer, but he was terminated for it. **Souvannakane Dep. 93:20-24; 94:1-12, Ex. A.**

Mr. Souvannakane said that he had spoken with Ms. Tagliarino and Mr. Cieri during the week of the oil spill, but Ms. Tagliarino said that she "was off all week." **Tagliarino Dep. 24:10-14, April 28, 2006, attached as Exhibit C; Souvannakane Dep. 98:7-15, Ex. C.**

After telling Mr. Souvannakane to have a seat in her office, Mr. Souvannakane said that Ms. Tagliarino had told him, "[y]ou're terminated," without giving him a chance to explain that he hadn't sworn at a customer – another Sears employee had. **Souvannakane Dep. 99:7-15; 18-24, Ex. A.**

Mr. Souvannakane said that Frank had sworn at a customer. **Souvannakane Dep. 102:18-23, Ex. A.**

Mr. Souvannakane said that the statements by the two Sears employees that he had sworn at a customer were false; he also said the customer's statement was false. **Souvannakane Dep. 108:6-22; 109:1-12, Ex. A.**

Mr. Souvannakane doesn't know if the customer or employee lied on the witness statements, but [i]t could have been either." **Souvannakane Dep. 110:12-13, Ex. A.**

Mr. Souvannakane said that in an earlier incident he had sworn at a customer after the customer called him a "chink." **Souvannakane Dep. 114:9-14, Ex. A.**

Mr. Souvannakane said that a manager had come to him and asked him if he could fix a tire problem for a customer (this was the same customer that had called him a "chink.") **Souvannakane Dep. 114:18-23, Ex. A.**

Mr. Souvannakane said he recognized the document that said "Final Warning." **Souvannakane Dep. 115:21-23, Ex. A.**

Mr. Souvannakane also said he had signed one of the documents shown to him, but not

3

both. **Souvannakane Dep. 116:21-22, Ex. A.**

Mr. Souvannakane said he had no reason to think his termination wasn't on 10/16/2003.

**Souvannakane Dep. 120:10-13, Ex. A.**

Mr. Souvannakane agreed that he had received a warning for swearing on 9/29/2003.

**Souvannakane Dep. 120:21-24, Ex. A.**

Mr. Souvannakane agreed that he was terminated for the alleged incident described on the second page of Exhibit 7. **Souvannakane Dep. 122:7-12, Ex. A.**

Mr. Souvannakane agreed that he was terminated because of the incident that occurred on 10/13/03. **Souvannakane Dep. 123:8-11, Ex. A.**

Mr. Souvannakane was a hard worker who took time with his work. **Baldi Dep. 25:19-20, 22, April 18, 2006, attached as Exhibit B.**

Mr. Souvannakane did not have heated discussions with customers, only friendly ones. **Baldi Dep. 26:3-4, Ex. B.**

John Baldi Jr. said that he never heard Mr. Souvannakane swear at customers. **Baldi Dep. 26:7-8, Ex. B.**

The customer at whom Mr. Souvannakane swore (the first swearing incident) was confused about who had messed up his tire job, and he had gotten "mad" at Mr. Souvannakane before Eric swore. **Baldi Dep. 27:17-24; 18:1-6, Ex. B.**

Mr. Souvannakane said that he had never been terminated for this reason, so he didn't want Mr. Hernandez to say anything about him being there. **Souvannakane Dep. 132:21-24, Ex. A.**

### Officer Gary Mansfield's Involvement

Mansfield was sent by police dispatch to Sears Automotive on 10/17/2003. **Mansfield**

4

**Dep. 12:14-20, April 27, 2006, Ex. D.**

Mansfield did not remember the names of either Alicia Coviello or José Hernandez.

**Mansfield Dep. 13:12-14; 14:16-19, Ex. D.**

Additionally, Officer Mansfield's stated in his deposition that he had spoken to Mr. Hernandez on the day of his investigation **Mansfield Dep.15:5-15; 18:17-18**,**Ex. D**; however, his police report never details a conversation with Mr. Hernandez. Instead, the statement says, "[T]he incident was witnessed by employee Jose Hernandez who supplied a written statement implicating Souvannakane. **Officer Mansfield's Police Report, attached as Exhibit F.**

Mansfield admitted that he never went to the area in Sears Auto that was "damaged" by the oil spill. **Mansfield Dep. 15:5-15, Ex. D.**

Mansfield admitted that he never saw the damaged property. **Mansfield Dep. 18:17-18, Ex. D.**

Mansfield said that he would have seen the damaged property "probably more than not" when charging someone with malicious destruction of property. **Mansfield Dep. 18:23-24; 19:1-2, Ex. D.**

Mansfield said that he determined a crime had been committed based on the statements of the loss prevention officer and the witness. **Mansfield Dep. 20:2-17, Ex. D.**

Mr. Souvannakane said that John Baldi Jr. had told him that Officer Mansfield had been at Sears questioning everyone about the oil spill. **Souvannakane Dep. 179:6-20, Ex. A.**

Mr. Souvannakane said that John Baldi Jr. had spoken to Officer Mansfield about the spill. **Souvannakane Dep. 180:11-16, Ex. A.**

**Oversight of Sears Automotive Operations**

Jobs in the Auto Dept. weren't regulated; employees just "took the next one in line." **Baldi Dep 16:22-24, Ex. B.**

There was a lot of turnover in the Sears Auto Dept. **Baldi Dep. 29:18, Ex. B.**

Oil was spilled in the Sears Auto Dept. "all the time" because drain buckets were not emptied. **Baldi Dep. 35:9-10, Ex. B.**

Waste oil in the Sears Auto Dept. gets sucked from the drain buckets into a huge drum that is then pumped into a waste oil truck. **Baldi Dep. 37:14-22, Ex. B.**

Sears employees use absorbent pads to soak up small oil spills. **Baldi Dep. 39:18-19, Ex. B.**

Sears Auto Dept. does not supply shop rags to employees, and absorbent pads are scarce. **Baldi Dep. 39:23-24; 40:1, Ex. B.**

Sears Auto did not train employees in how to clean up oil spills or other chemical spills, and they don't have any bulletins or publications in the shop on how to clean up spills. **Baldi Dep. 40:5-13, Ex. B.**

Oil bay doors were left open all the time. **Baldi Dep. 58:9-10, Ex. B.**

The oil from the larger spill was all over the shop and even got outside into the parking lot because of the hosing with water. **Baldi Dep. 61:13-19, Ex. B.**

During a physical fight with a customer, a female Sears employee (assistant manager) was punched and knocked to the ground. **Baldi Dep. 102:14-21, Ex. B.**

Sears Manager Cieri asked John Baldi to service the car of the person who punched the assistant manager. Baldi refused. **Baldi Dep. 103:23-24; 104:1-9, Ex. B.**

Sal Pani, a sales associate with occasional managerial authority, used a racial slur against

6

Mr. Souvannakane. **Baldi Dep. 105:22-24; 106:1-20, Ex. B.**

**<u>Sears' Management's Oversight of the Auto Center</u>**

Barbara Tagliarino, general manager of the Sears Saugus store in the relevant period, said she doesn't know what Sears' anti-discrimination policy is. **Tagliarino Dep. 8:7-11, Ex. C.**

Ms. Tagliarino said that the anti-discrimination policy is laid out in Human Resources, Corporate Sears. **Tagliarino Dep. 9:16-21, Ex. C.**

Ms. Tagliarino said that she would not receive reports from the Auto Dept. supervisors about employee's performance. **Tagliarino Dep. 11:2-5, Ex. C.**

Ms. Tagliarino said she didn't really remember calling Mr. Souvannakane into her office, and she didn't remember the date she fired him. **Tagliarino Dep. 11:13-22, Ex. C.**

Ms. Tagliarino said that she also doesn't remember whether Mr. Souvannakane denied swearing at customers or warning him about swearing at customers. **Tagliarino Dep. 12:7-13, Ex. C.**

Anthony Cieri, Sears Automotive manager, signed the document warning Mr. Souvannakane about swearing at customers even though it has Ms. Tagliarino's name on it. **Tagliarino Dep. 13:11-15, Ex. C.**

Ms. Tagliarino said she doesn't know whether Mr. Cieri assigns tasks, and she doesn't know how much freedom employees in the Automotive Dept. have to perform certain tasks. **Tagliarino Dep. 14:18-24; 15:1, Ex. C.**

Ms. Tagliarino said that she doesn't remember the physical fight involving a female Sears employee in which the employee was injured by a customer. **Tagliarino Dep. 15:2-15, Ex. C.**

Ms. Tagliarino said that she has not taken any steps to lighten the tensions between employees and customers in the Automotive Dept. **Tagliarino Dep. 15:16-21, Ex. C.**

Ms. Tagliarino said that Sears has a policy of writing out witness statements and then having employees sign them. **Tagliarino Dep. 16:1, Ex. C.**

Ms. Tagliarino said that Auto Center District Manager John Reid and William Sullivan filled out the witness statement for José Hernandez's signature. **Tagliarino Dep. 17:15-23; 18:6-16, Ex. C.**

Ms. Tagliarino said that no posters inform employees about discharge or disciplinary policies. **Tagliarino Dep. 21:21-24, Ex. C.**

Ms. Tagliarino said that she had terminated Mr. Souvannakane without notice, and they usually don't give notice before terminating employees. **Tagliarino Dep. 23:7-12, Ex. C.**

Ms. Tagliarino said that Corporate Human Resources conducts investigations before firing employees. **Tagliarino Dep. 23:17-24, Ex. C.**

Ms. Tagliarino said that William Sullivan is the District Loss Prevention Manager for Boston. **Tagliarino Dep. 24:22-24; 25:1-3, Ex. C.**

Ms. Tagliarino said that Alicia Coviello was a loss prevention associate at Sears Saugus. **Tagliarino Dep. 26:14-20, Ex. C.**

Ms. Tagliarino said that she doesn't know who picks up waste oil from Sears, and she doesn't know what they do with it. **Tagliarino Dep. 25:24; 26:1-6, Ex. C.**

Ms. Tagliarino said that she was never told what the spill consisted of in the Auto Center. **Tagliarino Dep. 25:20-23, Ex. C.**

Ms. Tagliarino said that she also doesn't know if other property was damaged during the oil spill. **Tagliarino Dep. 26:10-13, Ex. C.**

**The Two Separate Oil Spills**

One oil spill was around the waste tanks in the back of Sears Auto; a person who reported it did not know the cause of the spill. **Baldi Dep. 41:12-14; 42:12-16, Ex. B.**

Oil was spilled when Mr. Souvannakane was in the Sears Auto Dept., but Mr. Baldi can't tell how it got spilled. **Baldi Dep. 50:22-24, Ex. B.**

The spill that occurred when Mr. Souvannakane was in the shop was less than 2 feet square. **Baldi Dep. 52:4-5, Ex. B.**

Mr. Souvannakane cleaned up the small spill using absorbent pads. **Baldi Dep. 54:3-9, Ex. B.**

The oil spill Mr. Souvannakane is alleged to have caused was all cleaned up after Souvannakane finished with the absorbent pads. **Baldi Dep. 56:18-20, Ex. B.**

The oil spill Mr. Souvannakane caused was at least 25 or 30 feet from the bigger spill, and it was separated from the bigger spill by two automotive bays. **Baldi Dep. 56:21-24; 57:1-5, Ex. B.**

A Sears employee hosed down the larger spill with a garden hose the next day; it was left there overnight. **Baldi Dep. 60:6-11, Ex. B.**

The oil from the larger spill was all over the shop and even got outside into the parking lot because of the hosing with water. **Baldi Dep. 61:13-19, Ex. B.**

Sears employees filled out statements describing what they saw with respect to the larger spill. **Baldi Dep. 64:20-24; 65:1-8, Ex. B.**

The larger spill got bigger between the night of October 16th and the morning of October 17th. **Baldi Dep. 74:18-24; 75:1-13, Ex. B.**

Mr. Souvannakane cleaned up the small spill he caused very quickly; he was kidding

around when he caused the spill. **Baldi Dep. 87:3-12, Ex. B.**

A different trucker comes in to pick up the waste oil each time, and that person pumps it out of the Sears waste container into the truck. **Baldi Dep. 114:7-12, Ex. B.**

Mr. Souvannakane said that he was informed by citation that there had been an oil spill at Sears. **Souvannakane Dep. 123:20-24, Ex. A.**

Mr. Souvannakane said that when he went to Sears to check on his toolbox, he had found a bunch of trash and an oil container next to his toolbox, so he had pushed it out of the way. **Souvannakane Dep. 123:20-24, Ex. A.**

Mr. Souvannakane said that the oil dispenser had fallen as he pushed it; it tripped over a lift and fell. **Souvannakane Dep. 131:3-6, Ex. A.**

Mr. Souvannakane said that he had cleaned up the oil; it wasn't much. **Souvannakane Dep. 131:17, Ex. A.**

Mr. Souvannakane said that he had told John Baldi that he hadn't caused the large oil spill. **Souvannakane Dep. 175:1-5, Ex. A.**

Mr. Souvannakane said that he had cleaned up the oil next to his tool box. **Souvannakane Dep. 175:7-19, Ex. A.**

Mr. Souvannakane said that he had received training in oil spills, and he'd used pads to clean up his spill. **Souvannakane Dep. 177:7-21, Ex. A.**

**Interrogations of Sears Employees by Loss Prevention**
**Employees William Sullivan & Alicia Coviello**

Sears employees filled out statements describing what they saw with respect to the larger spill. **Baldi Dep. 64:20-24; 65:1-8, Ex. B.**

William Sullivan was angry and asked employees if they knew their jobs were at stake and if they knew they could lose their jobs if they didn't tell him what he wanted to hear

10

about who had caused the larger of the two oil spills. Mr. Baldi would give Defendant Sullivan an answer, and "he'd try to twist it around." **Baldi Dep. 66:14-24; 67:1, Ex. B.**

Defendant Sullivan was furious (red-faced and yelling) at John Baldi during questioning. **Baldi Dep. 93:15-22, Ex. B.**

Defendant Sullivan hinted to John Baldi that his job was at stake and he could get fired over the oil spill incident. **Baldi Dep. 95:21-24, Ex. B.**

Defendant Sullivan insisted that Mr. Baldi knew things he didn't know. **Baldi Dep. 99:7-8, Ex. B.**

Defendant Coviello was present with Defendant William Sullivan when employees came in to sign statements and be questioned by Sullivan. **Baldi Dep. 92:15-19, Ex. B.**

### Mr. Souvannakane's Visit to Sears, Post-Termination

On the same day of the oil spill, Mr. Souvannakane came to get the keys to Mr. Baldi's father's pickup truck so he could move. **Baldi Dep. 44:17-21, Ex. B.**

After his termination from Sears, Mr. Souvannakane came to Sears, spoke to Manager Cieri, and almost purchased tires. **Baldi Dep. 46:10-13. Ex. B.**

After being told by Manager Cieri to wait in line for his tires, a salesman told Mr. Souvannakane that he better leave because Cieri was calling management. So, he left. **Baldi Dep. 47:9-16, Ex. B.**

Manager Cieri became agitated ("turning red") when he learned that Mr. Souvannakane had left after a salesman warned Souvannakane that Cieri was calling about him. **Baldi Dep. 48:1-4, Ex. B.**

Mr. Souvannakane said that he had never been terminated for this reason (swearing), so he didn't want Mr. Hernandez to say anything about him being there. **Souvannakane**

11

**Dep. 132:21-24, Ex. A.**

**Mr. Souvannakane's Involvement with the Lynn District Court**

Mr. Baldi said that Mr. Souvannakane had told him about the criminal citation that had been issued against him. **Baldi Dep. 77:16-24, Ex. B.**

Mr. Baldi knew that Mr. Hernandez was involved at Mr. Souvannakane's trial because Mr. Hernandez told him. **Baldi Dep. 81:14-17, Ex. B.**

Mr. Souvannakane said that José Hernandez had told him that he was leaving the court house on the citation date because he didn't want to lie for Sears, and he left.

**Souvannakane Dep. 191:12-17, Ex. B.**

Additionally, Mr. Hernandez's trial testimony contradicts what his witness statement says. Specifically, the witness statement says that Mr. Hernandez "saw him throw windshield washer fluid" **José Hernandez's statement, attached as Ex. E**; however, at trial in response to a question by the district attorney about whether he saw Mr. Souvannakane throw windshield washer fluid, Hernandez responded, "[N]o." **Transcript of Trial Proceedings, October 5, 2004, 14:19; 15: 1-4, attached as Exhibit J.**

                                                Respectfully Submitted,
                                                The Plaintiff,
                                                ERIC SOUVANNAKANE
                                                By his attorney,

**Dated**: February 9, 2007                           _____
                                                Kurt S. Olson, BBO #632300
                                                500 Federal St.
                                                Andover, Ma. 01810
                                                (978)681-0800

**CERTIFICATE OF SERVICE**

I, Kurt S. Olson, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), paper copies will be sent today (2/9/07) by first class mail, postage prepaid, and a courtesy copy will be sent today (2/9/07) by first class mail, postage prepaid to the Honorable Chief Judge, Mark L. Wolf.

| | |
|---|---|
| Christine M. Netski, Esq. | John J. Cloherty, III, Esq. |
| Liza J. Tran, Esq. | Pierce, Davis & Perritano, LLP |
| Sugarman, Rogers, Barshak & Cohen, P.C. | 10 Winthrop Sq. |
| 101 Merrimac Street, 9th Floor | Boston, Ma. 02110 |
| Boston, Ma. 02114 | |

_____
Kurt S. Olson (BBO # 632300)
500 Federal St.
Andover, Ma. 01810
978-681-0800

Case 1:04-cv-12164-MLW    Document 45-14    Filed 02/09/2007    Page 14 of 14