UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Eric Souvannakane, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 04-12164-MLW |
| ) | |
| Sears, Roebuck & Co., William Sullivan, ) | |
| Richard Spellman, Barbara Tagliarino, Kevin ) | |
| Sullivan, Alicia Coviello, & Gary Mansfield, ) | |
| ) | |
| Defendants ) | |

**PLAINTIFF ERIC SOUVANNAKANE'S MEMORANDUM IN OPPOSITION TO DEFENDANTS SEARS, ROEBUCK AND CO., WILLIAM SULLIVAN, RICHARD SPELLMAN, BARBARA TAGLIARINO, KEVIN SULLIVAN AND ALICIA COVIELLO'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff, Eric Souvannakane, brought this civil rights action against his former employer, Sears, Roebuck and Co. ("Sears"), several current and former employees of Sears, including William Sullivan, Richard Spellman, Barbara Tagliarino, Kevin Sullivan, and Alicia Coviello (the "Sears Defendants"), and Gary Mansfield, a patrolman with the Saugus Police Department. Mr. Souvannakane has alleged that Sears terminated him because of his race and ethnicity; he also alleges that defendants later conspired to falsely accuse him of causing an oil spill at the Sears Auto Center in Saugus, Massachusetts. The named defendants caused Mr. Souvannakane to be prosecuted for malicious destruction of property in the Lynn District Court, based on a witness statement prepared by upper level Sears management for the signature of a co-employee who did

1

*not* personally witness Mr. Souvannakane cause the spill.

At the hearing on defendants' motion to dismiss, the Court ruled that counts IV and V should be dismissed. Thus, counts I, II, III, VI, and VII remain for the Court to adjudicate. Because defendants have not adduced sufficient evidence establishing the absence of a genuine issue, Plaintiff should be allowed to proceed to trial on the remaining counts. First, Plaintiff's wrongful termination claim under 42 U.S.C. § 1981 should survive because Sears's supposedly legitimate, non-discriminatory reason for his termination — his alleged use of profanity towards customers — is in dispute because of Sears's policy of preparing witness statements for employees' signatures. The defendants' characterization of discriminatory animus misses the mark because although only one remark may have been made relative to Plaintiff's race, the co-employee who made that remark may have had occasional managerial responsibility. Furthermore, dispute remains concerning conversations the individual defendants may have had regarding their possible motive for fabricating witness statements, intimidating or threatening witnesses or both, and singling out the Plaintiff for discipline for allegedly swearing at a customer when others were also alleged to have sworn.

More importantly, Plaintiff will be able to show at trial that the defendants conspired to deprive him of rights protected under 42 U.S.C. § 1985 in connection with Sears's investigation of the oil spill. Although Plaintiff has not yet put forth evidence on a plan, circumstances surrounding the interrogation of witnesses to the oil spill suggest that those defendants conducting the interview knew exactly what they were doing. Their desire to maintain silence has prevented Plaintiff from showing an agreement. Additionally, defendant's statement that the investigators were not even aware of

Plaintiff's race or ethnicity defies logic because Mr. Souvannakane certainly looks Asian. Therefore, Plaintiff requests that this Court deny defendants' motion for summary judgment on Counts I, II, III, IV, and VII of his complaint.

## II. FACTS

Pursuant to Rule 56.1, Plaintiff Eric Souvannakane has submitted the accompanying Joint Concise Statement of Disputed Material Facts which Present Genuine Triable Issues, which is incorporated here by reference. Plaintiff contends that he was wrongly prosecuted for Malicious Destruction of Property at the Lynn District Court because of an oil spill at his former place of employment, Sears, Roebuck & Co. in Saugus, Massachusetts. Plaintiff admits that he caused a minor spill on the day in question, but he cleaned up this spill. (Souvannakane Dep. 131:3-6; 17, February 8, 2006 (attached as Ex. A); Baldi Dep. 87:3-12, April 18, 2006 (attached as Ex. B).) Mr. Souvannakane was found not guilty of the charges concerning the larger of two spills that occurred on October 16, 2003. (Transcript of Trial Proceedings, October 5, 2004, 25:9, attached as Exhibit J).

Additionally, the witness statement upon which the officer relied in requesting a show cause hearing by the clerk magistrate was prepared by Sears's Boston District Loss Prevention Manager (Defendant William Sullivan) and the Auto Center District Manager, John Reid, for Mr. Hernandez's signature. (Tagliarino Dep. 17:15-23; 18:6-16, April 28, 2006 (Attached as Exhibit C).) More importantly, co-defendant Patrolman Mansfield "left the matter for the clerk magistrate to decide whether to proceed with criminal charges" (Mansfield, Def. Mem. Summ. J. 7.), despite the failure of the witness statement to identify Plaintiff as the perpetrator. This prepared statement *never* states that the

3

witness observed Plaintiff knock over the barrel; on the contrary, it only says that Mr. Hernandez "heard a bang and the barrel hit the floor." (José Hernandez's statement, (Attached as Exhibit E).) It also doesn't prove that he was referring to the barrel that caused the large spill at the rear of the auto shop. Hernandez's trial testimony confirms that he never observed Souvannakane knock over a barrel; similarly, his testimony leaves considerable doubt about whether the spilled barrel he witnessed produced the spill for which Mr. Souvannakane was prosecuted. (Ex. J, 15:14-19; 19:5-6; 21:3-5).

Contrary to the quote attributed to Mr. Hernandez in the Sears' Defendants' memorandum, Mr. Hernandez's trial testimony contradicts what his witness statement says. Specifically, the witness statement says that Mr. Hernandez "saw him throw windshield washer fluid" (Ex. E); however, at trial in response to a question by the district attorney about whether he saw Mr. Souvannakane throw windshield washer fluid, Hernandez responded, "[N]o." (Exhibit J, 14:19; 15:1-4). This inconsistency contradicts the statement in the Sears defendants Memorandum which states that "Hernandez's trial testimony was also entirely consistent with his prior statement and Souvannakane's version of the events." (Sears Def. Mem. Summ. J. 13) It also throws doubt on the credibility of all other statements made by Hernandez concerning the incident, both in the written statement prepared for him by defendant Sullivan and Auto Center District Manager John Reid and in his trial testimony.

Plaintiff does not know the substance of the conversations that took place between William Sullivan, loss prevention officer Coviello, and Officer Mansfield. Under the circumstances, Plaintiff maintains that he should be allowed to try to determine exactly what motivated defendants Coviello and Sullivan to interrogate witnesses, prepare

4

arguably false witness statements, single out Plaintiff for discipline, call law enforcement to the scene to subsequently request a show cause hearing, and then arrange for Plaintiff's subsequent prosecution on a trumped-up charge. Therefore, Plaintiff contends that summary judgment for the Sears defendants is inappropriate.

### III. STANDARD OF REVIEW

Mr. Souvannakane concedes that summary judgment should be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). However, "a 'genuine issue' is one "supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." *Hershey v. Donaldson, Lufkin & Jenrette Securities Corp.*, 317 F.3d 16 (1st Cir. 2003), *citing Triangle Trading Co. v. Robroy Industries*, 200 F. 3d 1, 2 (1st Cir. 1999). Additionally, "for the purpose of summary judgment, an issue of fact is 'genuine' if it 'may reasonably be resolved in favor of either party.' "For the same purpose, 'material' facts are those which possess "the capacity to sway the outcome of the litigation under the applicable law." *Cadle Co. v. Hayes*, 116 F.3d 957 (1st Cir. 1997)(internal citations omitted).

In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) the Supreme Court held that the heavy burden is rightly placed on the moving party to establish the absence of material facts that present genuine issues for trial. Specifically, the Court, in rejecting respondent's argument that summary judgment was appropriately entered in its favor, cited the language of the Advisory Panel that had considered amendments to Rule 56(c) of the Federal Rules of Civil Procedure in 1963:

> This argument does not withstand scrutiny, however, for both the commentary on and background of the 1963 amendment conclusively

5

> show that it was not intended to modify the burden of the moving party under Rule 56(c) to show initially the absence of a genuine issue concerning any material fact. The Advisory Committee note on the amendment states that the changes were not designed to 'affect the ordinary standards applicable to the summary judgment.' And, in a comment directed specifically to a contention like respondent's, the Committee stated that '(w)here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.' Because respondent did not meet its initial burden of establishing the absence of a policeman in the store, petitioner here was not required to come forward with suitable opposing affidavits.

*Id*. at 159-60 (internal citations and footnotes omitted).

Although this standard has been modified by subsequent decisions, *see Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986), plaintiff maintains that his case should be allowed to proceed to trial where, as here, defendants have not submitted evidence establishing the absence of a genuine issue.

### IV. ARGUMENT

#### A. PLAINTIFF CONTENDS GENUINE ISSUES OF MATERIAL FACT REMAIN, THUS PRECLUDING SUMMARY JUDGMENT ON COUNT I OF HIS COMPLAINT

##### 1. THE EXISTENCE OF A CONSPIRACY

In this case, dispute exists about whether a conspiracy existed between and among Sears and Sears management and Officer Mansfield. In *Adickes*, the Supreme Court held that, even though the petitioner had no knowledge of an agreement between the alleged conspirators, "the sequence of events" alleged were sufficient to allow a jury to "infer from the circumstances that the [conspirators] had a 'meeting of the minds.'" *Id.* at 157, 158. Though *Adickes* arose in the context of a 42 U.S.C. § 1983 claim, the circumstances surrounding the allegations of conspiracy are remarkably similar to our case. Specifically, in *Adickes*:

6

> Petitioner argued that although she had no knowledge of an agreement between Kress and the police, the sequence of events created a substantial enough possibility of a conspiracy to allow her to proceed to trial, especially given the fact that the noncircumstantial evidence of the conspiracy could only come from adverse witnesses. Further, she submitted an affidavit specifically disputing the manager's assertion that the situation in the store at the time of the refusal was 'explosive,' thus creating an issue of fact as to what his motives might have been in ordering the refusal of service.

*Id*. at 157.

Similarly, in the present case, Mr. Souvannakane has stated that he has no knowledge of an agreement between or among the Sears defendants and Officer Mansfield; however, the sequence and tenor of events have arguably created "a substantial enough possibility of a conspiracy" to allow Souvannakane to proceed to trial. As in *Adickes*, Mr. Souvannakane faces stonewalling tactics by adverse witnesses who all may share the same motive to keep silent.

In *Adickes* the Court's decision to reverse the trial court's grant of summary judgment in favor of defendants was grounded on defendant's failure to prove that a policeman was not in the store at the time of the incident in which Ms. Adickes was denied service. Likewise in this case, the Sears defendants have failed to prove that defendants William Sullivan and Alicia Coviello did not discuss their motive behind Sears's decision to proceed against Mr. Souvannakane and an agreement between them to go forward on this basis. Here, because the events in the room where the interrogations took place remain shrouded in secrecy, and adverse witnesses with a potential motive to keep quiet are the only ones available, plaintiff should be permitted to test their credibility at trial.

A co-defendant in this case, Barbara Tagliarino, has conceded that Sears's Boston

District Loss Prevention Manager (Defendant William Sullivan) and the Auto Center District Manager, John Reid, prepared José Hernandez's witness statement for Mr. Hernandez's signature. (Tagliarino Dep. 17:15-23; 18:6-16 (Ex. C).) (Additionally, other witness statements appear to have been altered or prepared for others' signatures. (*See* Exhibits G-I, attached hereto). Mr. Hernandez has previously appeared as a witness against plaintiff and would be subpoenaed in the trial of this matter. Furthermore, Officer Mansfield alleged that Mr. Hernandez was a "Sears employee who witnessed Plaintiff knock an oil barrel over." (*see* Def. Gary Mansfield's Mem. Summ. J. 2). Mr. Hernandez's witness statement, even though prepared by Sears upper-level management, actually states the following: "I saw him [Souvannakane] throw windshield washer fluid, then heard a bang and the barrel hit the floor." (Ex. E) Saying "the barrel hit the floor" is considerably different than saying that "he witnessed Plaintiff knock an oil barrel over."

Additionally, anyone who has ever been near an auto repair shop knows that bangs and loud noises happen all day long. When Mr. Hernandez's statement says that "the barrel hit the floor," this neither proves that Mr. Souvannakane knocked over the barrel nor even that it was the barrel that caused the large spill at the rear of the auto shop. Hernandez's trial testimony confirms that he never observed Souvannakane knock over a barrel; similarly, his testimony leaves considerable doubt about whether the spilled barrel he witnessed produced the spill for which Mr. Souvannakane was prosecuted. (Ex. J, 15:14-19; 19:5-6; 21:3-5)

Additionally, a deponent and former Sears employee, John Baldi Jr., has testified that Defendant Sullivan interrogated many of those who were present on the day of the oil spill in question; Mr. Sullivan was alleged to have become "furious" and to have

8

yelled at him. Asked what made him think Sullivan was furious, Baldi testified, "[H]is face was red; he was just yelling." (Baldi Dep. 93:15-22 (Ex. B).) Baldi also testified that Defendant Sullivan had asked him if he knew his job was at stake and if he knew that he could get fired over something like what he said about the incident involving Mr. Souvannakane's alleged role in the spilled oil. Baldi further testified that Sullivan had said something like "[y]ou're going to tell me what I want to hear or tell me what I want to hear or tell me what I want to know or something like that." Baldi also said that the second time he met with Sullivan, "you'd give him an answer and he'd try to twist it around." (Baldi Dep. 66:9-24; 67:1-5 (Ex. B).)

These circumstances show that Defendant Sullivan was engaged in conduct amounting to "force, intimidation, or threat." If similar tactics were used against Mr. Hernandez in either coercing him to sign a witness statement that he didn't write or to appear in court against his will, an agent of Sears has violated the second part of 42 U.S.C. 1985(2). Until it is determined what went on behind the closed doors of the room where defendants Sullivan and Coviello conducted their interrogations, it cannot be determined what motivated the Sears defendants to take the action they did.

### 2. DISPUTE EXISTS CONCERNING THE REQUIREMENT OF DISCRIMINATORY ANIMUS

The Sears defendants claim that Plaintiff's claims of § 1985 conspiracies should fail because he lacks any proof that they had no impermissible intent. The Sears defendants claim that the two investigators of the "oil spill were not even aware of Souvannakane's race or ethnicity." (Def. Mem. Summ J. 2.) Assuming the Sears defendants who participated in the investigation, William Sullivan and Alicia Coviello, met the Plaintiff, it defies logic to suggest they did not know his race or ethnicity. He

9

undisputedly looks like someone who comes from somewhere in Asia. Material facts which raise genuine issues and which remain in dispute concern what defendants Coviello and Sullivan knew about the Plaintiff's race and what they may have told Officer Mansfield about Mr. Souvannakane's racial and ethnic background.

In a 1970 district court opinion from the Southern District of New York, the court denied defendants' motions to dismiss and held that tenants may state a claim for relief under section 1985(2) against a landlord who conspires to impede justice with the intent to deny the tenants of equal protection and due process of law in attempting to drive the tenants from rent-controlled premises. *Mullarkey v. Borglum*, 323 F. Supp. 1218, 1228 (S.D.N.Y. 1970).

The *Mullarkey* facts were similar to this case in that witnesses were threatened with criminal prosecution for conduct they did not engage in while others were served with criminal summonses. *Id.* at 1222. While Plaintiff cannot say for sure how Mr. Hernandez may have been threatened in the room with Defendants Sullivan and Coviello, dispute certainly exists about whether and to what extent Sullivan used force, threats, and intimidation on witnesses and potential witnesses in that room. Although this case predated the Supreme Court's opinion in *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the court's opinion denying defendant's motion to dismiss never discusses discriminatory animus or intent.

### 3. THE BROAD CONCEPT OF WITNESSES IN 42 U.S.C. 1985(2)

The statute was designed to prevent persons from deterring through force, intimidation or threat a witness or party from testifying in state court proceedings. As said above, dispute exists about whether upper-level Sears management personnel

(defendant Sullivan and John Reid) forced, intimidated, or threatened Mr. Hernandez into signing his witness statement. What is known is that these two prepared the statement for Hernandez to sign. What is also known is that defendant Sullivan intimidated or threatened Mr. Baldi to try to force him to say things about the oil spill incident at Sears that were not true. If the Sears defendants knew about the force, intimidation, or threats, then they did participate in a conspiracy to deter a witness from testifying in court because anything either Hernandez or Baldi subsequently said in court would be suspect based on their prior inconsistent statements.

   Thus, even assuming the court does not consider Mr. Hernandez's statement at the show cause hearing that he was leaving the court house because he would not lie for Sears, genuine issues of material fact exist surrounding the nature and tenor of the interrogation of witnesses at Sears.

   Additionally a 10th Circuit opinion has held that the word "witness" applies not only to a person who has actually appeared in court or one who has been subpoenaed, but also to one who may be called as a witness in the future. *Brever v. Rockwell Intern. Corp.*, 40 F.3d 1119 (10th Cir. 1994). Although this case arose in the context of a witness testifying in federal court, the *Brever* court declined to adopt defendant's definition of "witness" and then quoted a 2nd Circuit opinion delineating Congress' purpose in enacting 42 U.S.C. 1985(2):

> Rockwell defendants contend that they could not have conspired to deter Ms. Pitts from testifying until after she was ordered to testify on October 12 and thereby became a "witness" to federal court action as required by § 1985(2). Rockwell interprets the word "witness" too narrowly. As one court has stated, "[T]he statute does not define the term 'witness.' However, Congress' purpose, which was to protect citizens in the exercise of their constitutional and statutory rights to enforce laws enacted for their benefit, is achieved by interpreting the word 'witness' liberally to mean

11

> not only a person who has taken the stand or is under subpoena but also one whom a party intends to call as a witness. *Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 24 (2d Cir. 1984).

*Brever*, 40 F.3d at 1128, n.11.

Plaintiff has already shown that Mr. Hernandez's statement was prepared for his signature by two upper-level managers, the witness statement and Mr. Hernandez's trial testimony conflict, and significant fact questions remain regarding whether he signed the statement after being subjected to force, intimidation or threat by Sears employees. Thus, material facts which raise genuine issues and which remain in dispute concern what motivated the Sears defendants to take the actions they did.

### 4. DENIAL OF EQUAL PROTECTION

Because genuine issues of material fact persist concerning whether the Sears defendants harbored discriminatory animus towards Plaintiff, they have failed to meet their burden of establishing that they did not deny Plaintiff equal protection of the laws. In this case genuine issues of material fact persist because there is dispute about whether the Sears defendants acted jointly to deprive him of his civil rights. When defendants Coviello and William Sullivan forced, intimidated, or threatened witnesses into signing false witness statements, they violated Plaintiff's rights. When they informed Officer Mansfield of the charges, and he requested a show cause hearing on behalf of Sears (Ex. F), they acted jointly to deprive him of his civil rights. Fact issues remain to be resolved because Plaintiff was not privy to the conversation that took place between defendants Coviello and Mansfield.

### B. BECAUSE GENUINE ISSUES OF MATERIAL FACT REMAIN TO BE RESOLVED ON THE § 1985(2)&(3) CLAIMS, THE 42 U.S.C. § 1986 CLAIM SHOULD SURVIVE

Although § 1986 claims require proof of an underlying violation of § 1985, genuine issues of material facts remain to be resolved regarding the § 1985 claim, thus precluding summary judgment on the neglect to prevent a conspiracy claim under § 1986. Despite the Sears defendants' attempts to downplay the significance of the threats they made to witnesses to receive favorable testimony, Mr. Souvannakane would never have been summonsed into court on a trumped up charge in the absence of their activities. Additionally, because the substance of the conversation between and among the Sears defendants remain hidden behind a veil of secrecy, fact questions remain about what they knew and what they agreed to do. If they knew of a conspiracy at a time when its effects could have been prevented, § 1986 is implicated.

### C. GENUINE ISSUES OF MATERIAL FACTS REMAIN REGARDING WHETHER PLAINTIFF'S RIGHT TO CONTRACT UNDER 42 U.S.C. § 1981 WAS VIOLATED

The Sears defendants state that Plaintiff cannot make out a § 1981 claim because he cannot prove that his firing was a mere pretext for race-based discrimination. Defendants use the McDonnell Douglas framework (*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973) to argue that Plaintiff's evidence of racial animus does not establish a prima facie case because it involved only a stray remark by a co-worker with no supervisory authority. However, according to Plaintiff, service writers like Kevin Sullivan had occasional supervisory authority over employees. Based on his actions in ordering Plaintiff to perform duties not part of his job description, Sal at least must have thought he could exercise supervisory authority over Plaintiff. More importantly, Plaintiff and Sal exchanged racial slurs, and Plaintiff later reported the incident to his manager,

13

Anthony Cieri (Ex. A, pp. 84-90). However, nothing was done about the tensions between Sal and Plaintiff; in fact, upper level management never did anything to address tensions between employees or between employees and customers. (Ex. C, 15:2-21).

Plaintiff's § 1981 claim is based on Sears pretextual decision to terminate him because Plaintiff allegedly swore at a customer. The facts of Plaintiff's case are remarkably similar to a 2003 1st Circuit opinion, *Che v. Massachusetts Bay Transp. Authority*, 342 F. 3d 31 (1st Cir. 2003). *Che* involved an employee of Asian descent, who was demoted from his position as chief inspector for regional transportation authority, sued employer, alleging race and national origin discrimination under Title VII, § 1981, § 1983, and Massachusetts law. The *Che* court, citing *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir.1997), found that Mr. Che had established the connection between the protected activity and the adverse employment decision because "where there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference" that a causal connection exists. *Id*. at 38.

The court also found, citing *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990), that the causal connection between the protected activity and the adverse employment decision can be established with circumstantial evidence, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct . . ." *Id*. at 38-39.

In *Che* documentary and testimonial evidence that other employees were not disciplined for writing in the assignment block. Multiple witnesses testified that they

14

wrote on the assignment block themselves but were not disciplined. Additionally, evidence presented at trial suggested that Mr. Che's supervisor, Johnson, never issued any written or verbal orders telling other employees not to write on the assignment block. *Id*. at 38-39.

Furthermore, in 1994 Johnson disciplined Che for having an argument with a coworker. There was evidence at trial that Johnson did not discipline white inspectors who engaged in arguments with coworkers. In addition, after Johnson disciplined Che for the argument, Che fainted and his union representative asked Johnson to call for help. In response, Johnson said "I think the chink is faking it." There was evidence at trial that Johnson and another MBTA supervisor referred to Che as a "chink" on other occasions. *Id*. at 39.

The court concluded, citing *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 165-66 (1st Cir.1998), that the evidence of discriminatory and disparate treatment was sufficient to meet "
the relatively low threshold showing necessary to establish a prima facie case." *Id*. at 39.

In Mr. Souvannakane's case although there was no protected activity, defendant Tagliarino has admitted that she had little or no knowledge of what went on in the auto center. She said that she doesn't remember the physical fight involving a female Sears employee in which the employee was injured by a customer. (Tagliarino Dep. 15:2-15, Ex. C.) There is no evidence that anyone was ever disciplined for this incident. Similarly, an employee named "Frank" is alleged to have sworn at the same customer that Plaintiff allegedly swore at (Statement of Andy DiGaetano, attached as Exhibit G); yet there is no evidence that Frank was ever disciplined.

15

Additionally, although "Sal" (the service writer who called Plaintiff a "gook")(Ex. A, 85:3-13) was not strictly speaking Plaintiff's supervisor, evidence suggests that service writers like Sal sometimes undertook supervisory responsibility when managers were away. (Ex. A, 67:2-13) Additionally, on at least one occasion, Sal tried to get Plaintiff to perform jobs that were outside his job description, implying that Sal thought he could exercise supervisory authority over Plaintiff. (Ex. A, 85:3-13)   Thus, while he could not fire Plaintiff, he would presumably have more influence over the decision to terminate than a mere co-worker.

Furthermore, defendant Tagliarino said that she has not taken any steps to lighten the tensions between employees and customers in the Automotive Dept. (Tagliarino Dep. 15:16-21, Ex. C.) Tagliarino said she didn't really remember calling Mr. Souvannakane into her office, and she didn't remember the date she fired him. (Tagliarino Dep. 11:13-22, Ex. C.)  Tagliarino said that she also doesn't remember whether Mr. Souvannakane denied swearing at customers or warning him about swearing at customers. (Tagliarino Dep. 12:7-13, Ex. C.) The pattern of antagonism described in the *Che* case seems to have been a part of the work day for employees at Sears Auto Center. In this environment witness statements were prepared for employee's signatures, fights broke out, employees were threatened, and upper level management only took action to punish a chosen few. Therefore, strong circumstantial evidence should allow a fact finder to infer that Mr. Souvannakane was terminated for discriminatory, rather than legitimate reasons.

By all accounts, defendant Tagliarino, who has described herself as General Manager of the Saugus Sears store during the relevant time period (Ex. C, 7:23-24; 8:1-2), exercised almost no control over Auto Center operations, discipline, or other activities

16

except for firing Plaintiff without ever giving him a chance to explain his version of events.

The Sears defendants also state that they have met their burden of showing that they had a legitimate non-discriminatory reason for Plaintiff's termination. While Plaintiff has admitted to swearing at a customer after the customer had already sworn at him, he denies that he swore at a customer during the incident that resulted in his termination. (Souvannakane Dep. 108:6-22; 109:1-12, Ex. A.) In fact, Plaintiff stated that he was trying to help the customer at the time another employee swore at her. Sears defendant Tagliarino has testified that it is Sears policy to prepare witness statements for employees' signatures (Tagliarino Dep. 16:1, Ex. C.); under these circumstances, it is plausible to believe that statements could be fabricated.

## V. CONCLUSION

For the foregoing reasons, the Plaintiff, Eric Souvannakane, respectfully requests that this Honorable Court deny Sears Defendants' Motion for Summary Judgment as to all remaining counts of Plaintiff's Complaint.

                                        Respectfully Submitted,
                                        The Plaintiff,
                                        ERIC SOUVANNAKANE
                                        By his attorney,

**Dated**: February 9, 2007        /S/ Kurt S. Olson
                                        Kurt S. Olson, BBO #632300
                                        500 Federal St.
                                        Andover, Ma. 01810
                                        (978) 681-0800

**CERTIFICATE OF SERVICE**

I, Kurt S. Olson, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), paper copies will be sent today (2/9/07) by first class mail, postage prepaid to those listed below and a courtesy copy will be sent today (2/9/07) by first class mail, postage prepaid to the Honorable Chief Judge, Mark L. Wolf.

| | |
|---|---|
| Christine M. Netski, Esq. | John J. Cloherty, III, Esq. |
| Liza J. Tran, Esq. | Pierce, Davis & Perritano, LLP |
| Sugarman, Rogers, Barshak & Cohen, P.C. | 10 Winthrop Sq. |
| 101 Merrimac Street, 9th Floor | Boston, Ma. 02110 |
| Boston, Ma. 02114 | |

**/S/** Kurt S. Olson
Kurt S. Olson (BBO # 632300)
500 Federal St.
Andover, Ma. 01810
978-681-0800