UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

Eric Souvannakane,                )
                                  )
              Plaintiff      )
                                  )
v.                                )    Civil Action No. 04-12164-MLW
                                  )
Sears, Roebuck & Co., William Sullivan,   )
Richard Spellman, Barbara Tagliarino, Kevin   )
Sullivan, Alicia Coviello, & Gary Mansfield,  )
                                  )
              Defendants     )
_____)

**PLAINTIFF ERIC SOUVANNAKANE'S MEMORANDUM IN OPPOSITION TO DEFENDANT GARY MANSFIELD'S MOTION FOR SUMMARY JUDGMENT**

**I. FACTS**

Pursuant to Rule 56.1, Plaintiff Eric Souvannakane has submitted the accompanying Joint Concise Statement of Disputed Material Facts which Present Genuine Triable Issues, which is incorporated here by reference. Plaintiff contends that he was wrongly prosecuted for Malicious Destruction of Property at the Lynn District Court because of an oil spill at his former place of employment, Sears, Roebuck & Co. in Saugus, Massachusetts. Plaintiff admits that he caused a minor spill on the day in question, but he cleaned up this spill. (Souvannakane Dep. 131:3-6; 17, February 8, 2006 (attached as Ex. A); Baldi Dep. 87:3-12, April 18, 2006 (attached as Ex. B).) Mr. Souvannakane was found not guilty of the charges concerning the larger of two spills that occurred on October 17, 2003. (Transcript of Trial Proceedings, October 5, 2004, 25:9, attached as Exhibit J).

Officer Mansfield argues that he "had only a peripheral involvement, taking a witness statement from a Sears employee, and filing an application with the clerk magistrate for a criminal complaint." (Def. Mem. Summ. J. 1.) The officer has admitted that he interviewed only one witness and the loss prevention officer (Mansfield Dep. 13:12-24; 14:1-21; 20:2-17, April 27, 2006, attached as Ex. D), and he never even went to the place where the spill took place and never saw the damaged property. (Mansfield Dep.15:5-15; 18:17-18 (Ex. D).) The officer also said that in previous cases of malicious destruction of property he would view the damage "probably more than not." (Mansfield Dep. 18:23-24; 19:1-2 (Ex. D).)

Additionally, Officer Mansfield's stated in his deposition that he had spoken to Mr. Hernandez on the day of his investigation (Mansfield Dep.15:5-15; 18:17-18 (Ex. D)); however, his police report never details a conversation with Mr. Hernandez. Instead, the statement says, "[T]he incident was witnessed by employee Jose Hernandez who supplied a written statement implicating Souvannakane." (Officer Mansfield's Police Report, attached as Exhibit F).

Additionally, the witness statement upon which the officer relied was prepared by Sears's Boston District Loss Prevention Manager (Defendant William Sullivan) and the Auto Center District Manager, John Reid, for Mr. Hernandez's signature. (Tagliarino Dep. 17:15-23; 18:6-16, April 28, 2006 (Attached as Exhibit C).) More importantly, Officer Mansfield "left the matter for the clerk magistrate to decide whether to proceed with criminal charges" (Def. Mem. Summ. J. 7.), despite the failure of the witness statement to identify Plaintiff as the perpetrator. This prepared statement *never* states that the witness observed Plaintiff knock over the barrel; on the contrary, it only says that Mr.

2

Hernandez "heard a bang and the barrel hit the floor." (José Hernandez's statement, (Attached as Exhibit E).) Contrary to the assertion in Defendant Mansfield's Memorandum (Def. Mem. Summ. J. 2), Hernandez statement, in addition to being prepared by one of the parties to this lawsuit, neither states nor proves that Plaintiff knocked a barrel of oil over.

Additionally, Mr. Hernandez's trial testimony contradicts what his witness statement says. Specifically, the witness statement says that Mr. Hernandez "saw him throw windshield washer fluid" (Ex. E); however, at trial in response to a question by the district attorney about whether he saw Mr. Souvannakane throw windshield washer fluid, Hernandez responded, "[N]o." (Exhibit J, 14:19; 15:1-4).

Plaintiff does not know the substance of the conversation that took place between Officer Mansfield and loss prevention officer Coviello, and the "brief police report" (Def. Mem. Summ. J. 2.) prepared by the officer provides few details; in fact, it consists of six lines (Exhibit F).) Under the circumstances, Plaintiff maintains that he should be allowed to try to determine exactly what motivated Officer Mansfield to request a criminal complaint from the Lynn District Court's clerk magistrate. Therefore, Plaintiff contends that summary judgment for Officer Mansfield is inappropriate.

## II. STANDARD OF REVIEW

Mr. Souvannakane concedes that summary judgment should be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). However, "a 'genuine issue' is one "supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." *Hershey v. Donaldson, Lufkin & Jenrette*

*Securities Corp.*, 317 F.3d 16 (1st Cir. 2003), *citing Triangle Trading Co. v. Robroy Industries*, 200 F. 3d 1, 2 (1st Cir. 1999). Additionally, "for the purpose of summary judgment, an issue of fact is 'genuine' if it 'may reasonably be resolved in favor of either party.' "For the same purpose, 'material' facts are those which possess "the capacity to sway the outcome of the litigation under the applicable law." *Cadle Co. v. Hayes*, 116 F.3d 957 (1st Cir. 1997)(internal citations omitted).

In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) the Supreme Court held that the heavy burden is rightly placed on the moving party to establish the absence of material facts that present genuine issues for trial. Specifically, the Court, in rejecting respondent's argument that summary judgment was appropriately entered in its favor, cited the language of the Advisory Panel that had considered amendments to Fed. R. Civ. P. 56(c) in 1963:

> This argument does not withstand scrutiny, however, for both the commentary on and background of the 1963 amendment conclusively show that it was not intended to modify the burden of the moving party under Rule 56(c) to show initially the absence of a genuine issue concerning any material fact. The Advisory Committee note on the amendment states that the changes were not designed to 'affect the ordinary standards applicable to the summary judgment.' And, in a comment directed specifically to a contention like respondent's, the Committee stated that '(w)here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.' Because respondent did not meet its initial burden of establishing the absence of a policeman in the store, petitioner here was not required to come forward with suitable opposing affidavits.

*Id*. at 159-60 (internal citations and footnotes omitted).

Although this standard has been modified by subsequent decisions, *see Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986), plaintiff maintains that his case should be allowed to proceed to trial where, as here, defendants have not submitted evidence establishing

4

the absence of a genuine issue.

### III. ARGUMENT

#### A. PLAINTIFF CONTENDS GENUINE ISSUES OF MATERIAL FACT REMAIN, THUS PRECLUDING SUMMARY JUDGMENT ON COUNT I OF HIS COMPLAINT

#### 1. THE EXISTENCE OF A CONSPIRACY

In this case, dispute exists about whether a conspiracy existed between and among Sears and Sears management and Officer Mansfield. In *Adickes*, the Supreme Court held that, even though the petitioner had no knowledge of an agreement between the alleged conspirators, "the sequence of events" alleged were sufficient to allow a jury to "infer from the circumstances that the [conspirators] had a 'meeting of the minds." *Id.* at 157, 158. Though *Adickes* arose in the context of a 42 U.S.C. § 1983 claim, the circumstances surrounding the allegations of conspiracy are remarkably similar to our case. Specifically, in *Adickes*:

> Petitioner argued that although she had no knowledge of an agreement between Kress and the police, the sequence of events created a substantial enough possibility of a conspiracy to allow her to proceed to trial, especially given the fact that the noncircumstantial evidence of the conspiracy could only come from adverse witnesses. Further, she submitted an affidavit specifically disputing the manager's assertion that the situation in the store at the time of the refusal was 'explosive,' thus creating an issue of fact as to what his motives might have been in ordering the refusal of service.

*Id.* at 157.

Similarly, in the present case, Mr. Souvannakane has stated that he has no knowledge of an agreement between Sears and Officer Mansfield; however, the sequence and tenor of events have arguably created enough of a possibility of a conspiracy to allow Souvannakane to proceed to trial. As in *Adickes*, Mr. Souvannakane faces stonewalling tactics by adverse witnesses who all may share the same motive to keep silent.

5

In *Adickes* the Court's decision to reverse the trial court's grant of summary judgment in favor of defendants was grounded on defendant's failure to prove that a policeman was not in the store at the time of the incident in which Ms. Adickes was denied service. Likewise in this case, Officer Mansfield has failed to prove that his conversation with Ms. Coviello <u>did not</u> include an explanation of the motive behind Sears's decision to proceed against Mr. Souvannakane and an agreement between the officer and Sears to go forward on this basis.

A co-defendant in this case, Barbara Tagliarino, has conceded that Sears's Boston District Loss Prevention Manager (Defendant William Sullivan) and the Auto Center District Manager, John Reid, prepared José Hernandez's witness statement for Mr. Hernandez's signature. (Tagliarino Dep. 17:15-23; 18:6-16 (Ex. C).) (Additionally, other witness statements appear to have been altered or prepared for others' signatures. (*See* Exhibits G-I, attached hereto). Mr. Hernandez has previously appeared as a witness and would be subpoenaed in the trial of this matter. Furthermore, Officer Mansfield alleges that Mr. Hernandez was a "Sears employee who witnessed Plaintiff knock an oil barrel over." (Ex. F). The statement, even though prepared by Sears upper-level management, states the following: "I saw him [Souvannakane] throw windshield washer fluid, then heard a bang and the barrel hit the floor." (Ex. E)

Anyone who has ever been near an auto repair shop knows that bangs and loud noises happen all day long. When Mr. Hernandez's statement says that "the barrel hit the floor," this neither proves that Mr. Souvannakane knocked over the barrel nor even that it was the barrel that caused the large spill at the rear of the auto shop. Hernandez's trial testimony confirms that he never observed Souvannakane knock over a barrel; similarly,

6

his testimony leaves considerable doubt about whether the spilled barrel he witnessed produced the spill for which Mr. Souvannakane was prosecuted. (Ex. J, 15:14-19; 19:5-6; 21:3-5.)

Additionally, Hernandez's witness statement says that Hernandez "saw him throw windshield washer fluid" (Ex. E); however, at trial in response to a question by the district attorney about whether he saw Mr. Souvannakane throw windshield washer fluid, Hernandez responded, "[N]o." (Exhibit J, 14:19; 15:1-4). This inconsistency throws doubt on the credibility of all other statements made by Hernandez concerning the incident, both in the written statement prepared for him by defendant Sullivan and Auto Center District Manager John Reid and in his trial testimony.

Additionally, a deponent and former Sears employee, John Baldi Jr., has testified that Defendant Sullivan interrogated many of those who were present on the day of the oil spill in question; Mr. Sullivan was alleged to have become "furious" and to have yelled at him. Asked what made him think Sullivan was furious, Baldi testified, "[H]is face was red; he was just yelling." (Baldi Dep. 93:15-22 (Ex. B).) Baldi also testified that Defendant Sullivan had asked him if he knew his job was at stake and if he knew that he could get fired over something like what he said about the incident involving Mr. Souvannakane's alleged role in the spilled oil. Baldi further testified that Sullivan had said something like "[y]ou're going to tell me what I want to hear or tell me what I want to hear or tell me what I want to know or something like that." Baldi also said that the second time he met with Sullivan, "you'd give him an answer and he'd try to twist it around." (Baldi Dep. 66:9-24; 67:1-5 (Ex. B).)

These circumstances show that Defendant Sullivan was engaged in conduct

7

amounting to "force, intimidation, or threat." If similar tactics were used against Mr. Hernandez in either coercing him to sign a witness statement that he didn't write or to appear in court against his will, an agent of Sears has violated the second part of 42 U.S.C. 1985(2). When Officer Mansfield took this witness statement to the clerk magistrate without independently inquiring into how Sears obtained the statement, he arguably participated in a conspiracy to use force, threats or intimidation on a witness in furthering Sears's goal of referring the matter to the clerk magistrate for a show cause hearing. Officer Mansfield wrote, *"[O]n behalf of Sears* I request that a show cause hearing be scheduled for this incident." (Ex. F)(emphasis added.)

### 2. DISPUTE EXISTS CONCERNING THE REQUIREMENT OF DISCRIMINATORY ANIMUS

Officer Mansfield claims that Plaintiff's claims of § 1985 conspiracies should fail because he lacks any proof that the officer had no impermissible intent. Officer Mansfield claims that "there is no evidence the (sic) Officer Mansfield was aware of Plaintiff's racial or ethnic background." (Def. Mem. Summ. J. 8.) While Plaintiff concedes that he never met Officer Mansfield, it seems doubtful that the officer did not know his racial background. Frankly, it strains credulity to believe that someone can be a police officer for twenty-eight years (Mansfield Dep. 9:23-23; 10:1-3 (Ex. D)) in Saugus (a fairly diverse community) and not know that the name "Souvannakane" is an Asian surname. In fact, when asked on deposition whether he remembered the name of the person who had given the witness statement implicating Mr. Souvannakane, Officer Mansfield responded, "An Hispanic name. It doesn't come to me right now." Asked if it might have been "Hernandez," the officer responded, "[I]t might have been." (Mansfield Dep. 14:16-21(Ex. D).) The officer could not remember the name of the person with whom he spoke,

8

but he recalls that it was an Hispanic name. Material facts which raise genuine issues and which remain in dispute concern what Ms. Coviello may have told Officer Mansfield about Mr. Souvannakane's racial and ethnic background and what Officer Mansfield knew before their conversation.

In a 1970 district court opinion from the Southern District of New York, the court denied defendants' motions to dismiss and held that tenants may state a claim for relief under section 1985(2) against a landlord who conspires to impede justice with the intent to deny the tenants of equal protection and due process of law in attempting to drive the tenants from rent-controlled premises. *Mullarkey v. Borglum*, 323 F. Supp. 1218, 1228 (S.D.N.Y. 1970).

The *Mullarkey* facts were similar to this case in that witnesses were threatened with criminal prosecution for conduct they did not engage in while others were served with criminal summonses. *Id.* at 1222. While Plaintiff cannot say for sure how Mr. Hernandez may have been threatened in the room with Defendants Sullivan and Coviello, dispute certainly exists about whether and to what extent Sullivan used force, threats, and intimidation on witnesses and potential witnesses in that room. Although this case predated the Supreme Court's opinion in *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the court's opinion denying defendant's motion to dismiss never discusses discriminatory animus or intent.

### 3. DEFENDANT MISCONSTRUES THE MEANING OF 42 U.S.C. 1985(2) ON THE STATE COURT ADMINISTRATION OF JUSTICE

The statute was designed to prevent persons from deterring through force, intimidation or threat a witness or party from testifying in state court proceedings. As said above, dispute exists about whether upper-level Sears management personnel

9

(Defendant Sullivan and John Reid) forced, intimidated, or threatened Mr. Hernandez into signing his witness statement. What is known is that these two prepared the statement for Hernandez to sign. What is also known is that Defendant Sullivan intimidated or threatened Mr. Baldi to try to force him to say things about the oil spill incident at Sears that were not true. If Officer Mansfield knew about these threats and agreed to participate in seeking a criminal complaint against the Plaintiff from the clerk magistrate at the Lynn District Court, then he did participate in a conspiracy to deter a witness from testifying in court because anything either Hernandez or Baldi subsequently said in court would be suspect based on their prior inconsistent statements.

Thus, even assuming the Court does not consider Mr. Hernandez statement at the show cause hearing that he was leaving the court house because he would not lie for Sears, genuine issues of material fact exist surrounding the nature and tenor of the interrogation of witnesses at Sears.

Additionally a 10th Circuit opinion has held that the word "witness" applies not only to a person who has actually appeared in court or one who has been subpoenaed, but also to one who may be called as a witness in the future. *Brever v. Rockwell Intern. Corp.*, 40 F.3d 1119 (10th Cir. 1994). Although this case arose in the context of a witness testifying in federal court, the *Brever* court declined to adopt defendant's definition of "witness" and then quoted a 2nd Circuit opinion delineating Congress' purpose in enacting 42 U.S.C. 1985(2):

> Rockwell defendants contend that they could not have conspired to deter Ms. Pitts from testifying until after she was ordered to testify on October 12 and thereby became a "witness" to federal court action as required by § 1985(2). Rockwell interprets the word "witness" too narrowly. As one court has stated, "[T]he statute does not define the term 'witness.' However, Congress' purpose, which was to protect citizens in the exercise

> of their constitutional and statutory rights to enforce laws enacted for their benefit, is achieved by interpreting the word 'witness' liberally to mean not only a person who has taken the stand or is under subpoena but also one whom a party intends to call as a witness. *Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 24 (2d Cir. 1984).

*Brever*, 40 F.3d at 1128, n.11.

Officer Mansfield's Memorandum states that there "is simply no evidence that Officer Mansfield in anyway agreed or conspired to interfere with Plaintiff's or a witness' court testimony in this case." (Def. Mem. Summ. J. 9.) When Officer Mansfield agreed to submit Mr. Hernandez's statement without first corroborating its contents, he implicitly agreed to cooperate in presenting potentially false testimony. Plaintiff has already shown that Mr. Hernandez's statement was prepared for his signature by two upper-level managers, the witness statement and Mr. Hernandez's trial testimony conflict, and significant fact questions remain regarding whether he signed the statement after being subjected to force, intimidation or threat by Sears employees. Thus, material facts which raise genuine issues and which remain in dispute concern why Officer Mansfield never attempted to speak with Mr. Hernandez about his statement.

### 4. DENIAL OF EQUAL PROTECTION

Because genuine issues of material fact persist concerning whether Officer Mansfield harbored discriminatory animus towards Plaintiff, Defendant has failed to meet his burden of establishing that he did not deny Plaintiff equal protection of the laws. Mansfield's Memorandum states that for a plaintiff to succeed on a 42 U.S.C. 1985(2) there must be an actual deprivation of a right in addition to an agreement. Officer Mansfield's own Memorandum sets forth in somewhat painful detail the limited extent of his involvement. It states that his "involvement was no more than driving to the scene,

11

speaking to two Sears employees, obtaining a written statement, writing a report, and requesting a show cause hearing. He did this as part of his official duties as a police officer, and left the matter for the clerk magistrate to decide whether to proceed with criminal charges." (Def. Mem. Summ. J. 7.).

Defendant Mansfield submitted the witness statement and police report to the clerk magistrate after doing nothing more than speaking with Defendant Coviello and obtaining the witness statement from her. Officer Mansfield said in his Memorandum that he "had only a peripheral involvement, taking a witness statement from a Sears employee, and filing an application with the clerk magistrate for a criminal complaint." (Def. Mem. Summ. J. 1.) It is the "peripheral" nature of the Defendant's involvement that so troubles Plaintiff. He never saw or spoke with Mr. Souvannakane, he never spoke with other employees who might have provided a different version of events, and he never even witnessed the results of the oil spill. In the absence of a thorough, competent police investigation, the clerk magistrate is "left in the dark" about whether probable cause exists to support show cause. The clerk magistrate may have made her decision based on a witness statement prepared by others and the statement of a Sears Loss Prevention specialist who may have participated in threatening and intimidating witnesses. Because these things cannot be known with any certainty in the absence of sworn testimony at trial, material facts which rise to genuine issues remain to be tried.

### B. BECAUSE GENUINE ISSUES OF MATERIAL FACT REMAIN TO BE RESOLVED ON THE § 1985(2)&(3) CLAIMS, THE 42 U.S.C. § 1986 CLAIM SHOULD SURVIVE

Although Defendant is correct in stating that § 1986 claims require proof of an underlying violation of § 1985, genuine issues of material facts remain to be resolved regarding the § 1985 claim, thus precluding summary judgment on the neglect to prevent

12

a conspiracy claim under § 1986. Despite Officer Mansfield's repeated attempts to downplay the significance of his involvement in the whole sordid affair, the fact remains that had he not "left the matter for the clerk magistrate to decide whether to proceed with criminal charge" (Def. Mem. Summ. J. 7), Mr. Souvannakane would never have been summonsed into court on a trumped up charge. Additionally, because the substance of the conversation between Officer Mansfield and other Sears employees remain hidden behind a veil of secrecy, fact questions remain about what Officer Mansfield knew and what he agreed to. If he knew of a conspiracy at a time when its effects could have been prevented, § 1986 is implicated.

Furthermore, Officer Mansfield's approach to his official duties as an investigator indicates that material facts which rise to genuine issues remain regarding whether a more aggressive investigation would have led him to conclude that Sears was out to make an example of Mr. Souvannakane, and his racial or ethnic background or both played a role in their decision to do so.

### C. GENUINE ISSUES OF MATERIAL FACTS REMAIN REGARDING WHETHER PLAINTIFF'S RIGHT TO CONTRACT UNDER 42 U.S.C. § 1981 WAS VIOLATED

Defendant Mansfield states that Plaintiff cannot make out a § 1981 claim because there is no contract in this case. However, as the Defendant correctly points out in note 10 on page 12 of his Memorandum, significant authority has concluded that an at-will employee may sue under § 1981. *Lauture v. International Bus. Mach. Corp.*, 216 F.3d 258, 259 (2d Cir. 2000); *Joseph v. Wentworth Inst. Of Tech.*, 120 F. Supp. 2d 134, 144 (D. Mass. 2000).

Plaintiff's § 1981 claim is based on Sears pretextual decision to terminate him because Plaintiff allegedly swore at a customer. The facts of Plaintiff's case are

13

remarkably similar to a 2003 1st Circuit opinion, *Che v. Massachusetts Bay Transp. Authority*, 342 F. 3d 31 (1st Cir. 2003). *Che* involved an employee of Asian descent, who was demoted from his position as chief inspector for regional transportation authority, sued employer, alleging race and national origin discrimination under Title VII, § 1981, § 1983, and Massachusetts law. The *Che* court, citing *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir.1997), found that Mr. Che had established the connection between the protected activity and the adverse employment decision because "where there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference" that a causal connection exists. *Id*. at 38.

The court also found, citing *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990), that the causal connection between the protected activity and the adverse employment decision can be established with circumstantial evidence, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct . . ." *Id*. at 38-39.

In *Che* documentary and testimonial evidence that other employees were not disciplined for writing in the assignment block. Multiple witnesses testified that they wrote on the assignment block themselves but were not disciplined. Additionally, evidence presented at trial suggested that Mr. Che's supervisor, Johnson, never issued any written or verbal orders telling other employees not to write on the assignment block. *Id*. at 38-39.

Furthermore, in 1994 Johnson disciplined Che for having an argument with a

14

coworker. There was evidence at trial that Johnson did not discipline white inspectors who engaged in arguments with coworkers. In addition, after Johnson disciplined Che for the argument, Che fainted and his union representative asked Johnson to call for help. In response, Johnson said "I think the chink is faking it." There was evidence at trial that Johnson and another MBTA supervisor referred to Che as a "chink" on other occasions. *Id*. at 39.

The court concluded, citing *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 165-66 (1st Cir.1998), that the evidence of discriminatory and disparate treatment was sufficient to meet "the relatively low threshold showing necessary to establish a prima facie case." *Id*. at 39.

Though *Che* arose in the context of a protected activity case, a similar "pattern of antagonism" or worse existed at the Sears Auto Center. Because Plaintiff cannot know what went on in the room where Sears employees were interrogated and what information the Sears defendants may have shared with defendant Mansfield regarding what motivated their behavior, he should be allowed the opportunity to inquire into what was said and who said what to whom.

### D. defendant Is Not Entitled to Qualified Immunity

Defendant's reliance on qualified immunity is misplaced because such immunity exists where an official acts in an objectively reasonable manner in the performance of his duties. The First Circuit has considered the proper standard for dismissing a case on qualified immunity grounds in *Emery v. Holmes*, 824 F.2d 143 (1st Cir. 1987). In that case, the Court stated that

> The Supreme Court eliminated considerations of the officials' subjective state of mind in *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). The

15

> current standard for when an official is acting within the limits of qualified immunity focuses on the objective reasonableness of the officials' conduct. 'Under this standard, the reasonableness of the official's conduct is not measured against the official's *actual* knowledge of constitutional standards and the probable constitutionality of his or her action, but rather against a relatively uniform level of 'presumptive knowledge' of constitutional standards.' *Floyd v. Farrell*, 765 F.2d 1, 4-5 (1st Cir. 1985)(footnote omitted); *see also Harlow,* 457 U.S. at 815. Our analysis, like the District Court's, is two-fold. Whether there is a genuine issue of material fact that (i) Emery's constitutional rights were violated; and if so, (ii) whether those rights were clearly established so a police officer could reasonably have thought his/her conduct was consistent with those rights.

*Emery*, 824 F.2d 147.

Although *Emery* arose in the context of a Fourth Amendment challenge to officers' conduct, the court's reasoning is instructive on the question of qualified immunity. Because of the wealth of genuine issues of material facts concerning whether Plaintiff's constitutional rights were violated, a grant of qualified immunity is inappropriate at this time. Similarly, genuine issues of fact remain persist concerning whether Officer Mansfield could have thought it reasonable to accept the word of the loss prevention officer, to adopt as true a previously prepared witness statement without attempting to corroborate its contents, and to seek a criminal complaint from the clerk magistrate.

Officer Mansfield also argues that he should be immune because of the "probable cause determination by an independent clerk magistrate." (Def. Mem. Summ. J. 15.) The officer then cites a 2005 opinion from the 4th Circuit which involved an officer relying on a "magistrate's independent judgment of probable cause." Regrettably for the officer in the present case, the 4th Circuit opinion presents a factual scenario which is almost the exact opposite from ours. In *Mckinney v. Richland County Sheriff's Dept.*, 431 F.3d 415 (4th Cir. 2005) the officer relied on the magistrate's independent evaluation; on the

16

contrary, in this case the magistrate relied on Officer Mansfield's submission of a previously prepared witness statement and his police report. Thus, genuine issues of material facts remain regarding the extent to which this reliance by the magistrate was misplaced due to the officer's failure to investigate more thoroughly.

In *Prokey v. Watkins*, 942 F.2d 67 (1st Cir. 1991) a former police officer brought a civil damages action under 42 U.S.C. §§ 1983 and 1985(3); she alleged that members of the Sanford and South Portland Police Departments, as well as the Town of Sanford and the City of South Portland, "in conspiracy, violated plaintiff's rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and under Art. 1 Section 5 of the Maine Constitution to be free from arrest unsupported by probable cause." *Id*. at 68. Even though the *Prokey* case arose under § 1983 and the officers' appeal of the summary judgment denial arose in the context of an interlocutory appeal, Mr. Souvannakane's case presents similar factual questions which remain in dispute, thus precluding summary judgment on qualified immunity grounds.

In contrast to Mr. Souvannakane's case, the defendant police officers actually arrested Ms. Prokey on a warrant while Mr. Souvannakane received a summons in the mail. However, the *Prokey* court pointed out that the officers could be held liable if they arrested her without probable cause, "notwithstanding their limited knowledge of exculpatory factors or of the actual details forming the basis of the warrant." *Id*. at 73. Even though Mr. Souvannakane was not arrested by Officer Mansfield, he took the initial step of leaving the matter of probable cause to be decided by the clerk magistrate. The *Prokey* court found that a fact issue existed concerning the extent and nature of the officers' knowledge of the information in the warrant and their participation in the

17

conspiracy. *Id*. at 73-74. Likewise, in Mr. Souvannakane's case fact issues remain concerning Officer Mansfield's knowledge of the circumstances of the oil spill and his motivation for leaving the matter with the clerk magistrate before performing a more thorough investigation.

The *Prokey* court also pointed out that "the facts are complex, intricate and in key areas contested. Even more important, the inferences to be drawn from the web of facts are disputed and unclear--and are likely to depend on credibility judgments . . . Rather the issue is solely 'whether a reasonable officer could have believed [defendants' securing of an arrest warrant on the false public report charge] to be lawful, in light of clearly established law, and the information the . . . officers possessed.'"(internal citations omitted). *Id*. at 73.

Similarly, here the facts are complex, intricate, and contested; the inferences which could logically be drawn are likewise disputed and unclear and likely to depend on the credibility of witnesses and the parties themselves. On page two of Officer Mansfield's Memorandum, he alleges that he prepared a brief police report of the incident at Sears involving Mr. Souvannakane. However, Officer Mansfield has admitted that he never saw Mr. Souvannakane, nor did he see the results of the spill. It had been cleaned up before he even arrived. Additionally, the real question is whether a reasonable officer in Officer Mansfield's shoes could have believed the prepared witness statement and a conversation with an employee Sears without attempting to corroborate these statements — believed these things so strongly that he would request a show cause hearing.

Though he argues that "a reasonable officer in these circumstances would not

18

have understood that speaking to two employees, submitting a police report and filing an application for a criminal complaint contravened any constitutional rights" (Def. Mem Summ. J. 10-11), that same reasonable officer should have concluded that the Loss Prevention Officers from a major corporation may sometimes have motives to fabricate. Material facts which rise to genuine issues remain regarding whether Officer Mansfield and the Defendants Sullivan and Coviello ever discussed their motivations for blaming Mr. Souvannakane for the oil spill.

## IV. Conclusion

For the foregoing reasons, the Plaintiff, Eric Souvannakane, respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment as to all remaining counts of Plaintiff's Complaint. Additionally, Plaintiff requests costs and attorneys fees and all other relief which this Court deems just and proper.

                                               Respectfully Submitted,
                                               The Plaintiff,
                                               ERIC SOUVANNAKANE
                                               By his attorney,

**Dated**: February 9, 2007        **/S/** Kurt S. Olson
                                               Kurt S. Olson, BBO #632300
                                               500 Federal St.
                                               Andover, Ma. 01810
                                               (978)681-0800

**CERTIFICATE OF SERVICE**

I, Kurt S. Olson, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), paper copies will be sent today (2/9/07) by first class mail, postage prepaid to those listed below and a courtesy copy will be sent today (2/9/07) by first class mail, postage prepaid to the Honorable Chief Judge, Mark L. Wolf.

| | |
|---|---|
| Christine M. Netski, Esq. | John J. Cloherty, III, Esq. |
| Liza J. Tran, Esq. | Pierce, Davis & Perritano, LLP |
| Sugarman, Rogers, Barshak & Cohen, P.C. | 10 Winthrop Sq. |
| 101 Merrimac Street, 9th Floor | Boston, Ma. 02110 |
| Boston, Ma. 02114 | |

**/S/** Kurt S. Olson
Kurt S. Olson (BBO # 632300)
500 Federal St.
Andover, Ma. 01810
978-681-0800