```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


ERIC SOUVANNAKANE,                )
    Plaintiff                     )
                                  )
    v.                            )
                                  )
SEARS ROEBUCK & CO.,              )
WILLIAM SULLIVAN,                 )
RICHARD SPELLMAN                  )     C. A. No. 04-12164-MLW
BARBARA TAGLIARINO,               )
KEVIN SULLIVAN,                   )
ALICIA COVIELLO, and              )
GARY MANSFIELD                    )
    Defendants                    )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                            August 23, 2007

I.   SUMMARY

   This is a civil rights action brought by the plaintiff, Eric Souvannakane, against his former employer, Sears, Roebuck, and Co. ("Sears"), several current and former employees of Sears, including William Sullivan, Richard Spellman, Barbara Tagliarino, Kevin Sullivan, and Alicia Coviello (collectively, the "Sears Defendants"), and Gary Mansfield, a Saugus, Massachusetts Police Officer.  Souvannakane alleges that he was terminated by Sears because of his race and ethnicity.  He also contends that following his termination the defendants conspired to falsely implicate him in an oil spill on Sears' premises, resulting in his criminal prosecution and eventual acquittal for malicious destruction of property.

The court dismissed several counts of the complaint on September 29, 2005. After discovery, defendants have moved for summary judgement as to the remaining counts: Count I, violation of 42 U.S.C. §1985(2), conspiracy to interfere with civil rights by obstruction of justice, or intimidating a party, witness, or juror; Count II, violation of 42 U.S.C. §1985(3), conspiracy to interfere with civil rights by depriving persons of rights or privileges; Count III, violation of 42 U.S.C. §1986, neglect to prevent; and Count VI, violation of 42 U.S.C. §1981, which in effect is an allegation of employment discrimination based on race or national origin. Plaintiff also seeks costs and attorneys fees pursuant to 42 U.S.C. §1988.

As explained below, the motion for summary judgment is meritorious as to all of the remaining counts.

II. FACTS

The following facts are either undisputed or represent plaintiff's version of disputed facts. Plaintiff, who is of Asian descent, was employed as an automotive technician at the Sears automotive center in Saugus, Massachusetts, between August, 2002, and October 16, 2003. The Sears Defendants' Statement of Undisputed Facts ¶¶1-2. On September 29, 2003, plaintiff was involved in a verbal dispute with a customer, during the course of which he swore at the customer. Id., ¶3. As a result of the incident, Anthony Cieri, manager of the automotive center, issued

plaintiff a "Final Warning" on October 2, 2003.  Id., ¶4.

Less than two weeks later, on October 14, 2003, plaintiff was involved in a similar incident with another customer.  Id., ¶5. Specifically, two other Sears mechanics reported to Cieri that they witnessed plaintiff swear at a customer after she expressed frustration with the fact that the work being performed on her car was unfinished.  Id., ¶¶6-8.  Plaintiff claims that another employee swore at the customer.  See Souvannakane Dep. at 102:18-23.  Following this incident, Cieri and the Store Manager, defendant Barbara Tagliarino, terminated plaintiff's employment on October 16, 2003.  56.1 Facts, ¶9.  It is undisputed that Cieri informed plaintiff his termination resulted from his continued use of profanity towards customers.  Id., ¶10.

Sometime prior to his termination, a co-employee, "Sal," argued with plaintiff, calling him a "gook."  Id., ¶9.  Plaintiff responded by calling Sal a "meatball."  Id., ¶¶15-16.  In his deposition plaintiff called this exchange "nonsense back and forth."  Id.  At no time did Sal have any supervisory or disciplinary authority over plaintiff.  Id., ¶17.  The only individuals with authority to terminate plaintiff were Tagliarino and Cieri.  Id., ¶¶11-13.

On the evening of October 16, 2003--several hours after plaintiff's termination--plaintiff went back to the automotive center to return a truck he had borrowed from another Sears

3

technician, John Baldi.  Id., ¶18.  It is undisputed that while plaintiff was in the automotive center with Baldi, he knocked over an oil drum, spilling oil onto the floor.  Id., ¶19.  The parties dispute whether plaintiff knocked over the oil drum accidentally or kicked the oil drum over on purpose.  Id.  Plaintiff attempted to clean up the spill with absorbent pads.  Id., ¶20.

Later that evening, Baldi reported to defendant Kevin Sullivan, the supervisor on duty, that he had seen some oil on the floor "in the back."  Id.,¶21.  Baldi testified that this oil was in the area of the "waste tanks," approximately 25 to 30 feet away from where plaintiff had knocked over the oil drum.  Id., ¶22.  Another technician, Michael Katsaris, also reported to Kevin Sullivan that he had seen some oil on the floor.  Id., ¶21.  The spill remained on the premises over night.  Id., ¶23.

When Kevin Sullivan arrived at the automotive center the next morning, Andrew DiGaeotono, one of the technicians on duty that day, informed him that there was a large oil spill in the oil bay. Id., ¶23.  Kevin Sullivan inspected the spill and reported the incident to defendant Alicia Coviello, a Loss Prevention Associate at the store.  Id., ¶24.  DiGeatono then attempted to clean up the spill by thinning the oil with water and degreaser and attempting to push the mixture into the drains in the bay floor.  Id., ¶25. After Coviello viewed the scene, she reported the spill to Sears' District Loss Prevention Manager, defendant William Sullivan, and

4

then contacted an environmental clean-up company to remediate the spill.  Id., ¶26.

Shortly after speaking with Coviello, William Sullivan arrived at the automotive center to investigate the spill.  Id., ¶27.  During his investigation, he took statements from several Sears employees, including Baldi, Katsaris, and Jose Hernandez, in the presence of Coviello.  Id., ¶¶28-29.  Baldi told William Sullivan that he had noticed a "small spill" around 8:30 p.m. the previous night and had informed Kevin Sullivan of "a mess down back."  Id., ¶30.  Baldi did not tell William Sullivan that the plaintiff had spilled some oil the previous evening or that plaintiff had knocked over an oil drum.  Id., ¶31.  Hernandez and Katsaris, however, both told William Sullivan that the plaintiff spilled some oil the previous evening.  Id., ¶32.  Specifically, Hernandez reported that while plaintiff was with Baldi, Hernandez saw plaintiff "throw windshield washer fluid" and "heard a bang and the barrel hit the floor."  Id., ¶34.  Hernandez also reported seeing plaintiff "place oil pads on [the] spill" and that plaintiff said, "You didn't see anything, right?"  Id., ¶35.

After speaking with Hernandez, William Sullivan interviewed Baldi a second time.  According to Baldi, William Sullivan threatened to fire him if he was not forthright about events the previous evening.  Id., ¶¶36-37.  Baldi did not at this time inform William Sullivan about plaintiff's presence at the center the

5

previous evening or that plaintiff had spilled some oil. Id., ¶38. At no time was Baldi disciplined for withholding this information. Id., ¶39.

Following his investigation, William Sullivan called the Saugus Police to report the oil spill and resulting damage. Id., ¶42. Officer Mansfield was dispatched to the scene. Id., ¶43. When Mansfield arrived, he spoke with Coviello, who informed him of the status of the investigation, including plaintiff's suspected involvement. Id., ¶44. Mansfield then interviewed Hernandez and determined there was sufficient evidence to refer the case to the clerk magistrate for a show cause hearing for the potential criminal charge of malicious destruction of property. Id., ¶¶46-47. Neither William Sullivan nor Mansfield was aware of plaintiff's race or ethnicity during the course of their separate investigations. Id., ¶¶40-41, 49.

Coviello and Hernandez were subpoenaed to testify at the show cause hearing at the Lynn District Court on November 25, 2003. Id., ¶50. Although Hernandez appeared at the courthouse on that date, he did not testify because, according to plaintiff, "he was not going to lie for Sears." Id., ¶¶53-54. Coviello did testify and, according to plaintiff, "falsely testified that [plaintiff] was seen knocking over the container of waste oil that wound up in the parking lot." Id., ¶51.

The show cause hearing resulted in a finding of probable cause

6

against the plaintiff. Id., ¶55. He was subsequently prosecuted for malicious destruction of property. Id. Both Coviello and Hernandez testified at the criminal trial, pursuant to subpoenas issued by the prosecution. Id., ¶¶56, 60. Coviello's testimony related exclusively to the damage caused by the oil spill. Id., ¶¶58-59. She did not provide any testimony concerning plaintiff's alleged involvement with the spill. Id. Hernandez testified that, on the evening of October 16, 2003, after hearing a loud noise, he saw plaintiff pick up a barrel of waste oil and put absorbent pads on the floor to clean up oil that had spilled. Id., ¶61. Hernandez testified further that plaintiff then said, "You didn't see anything, right," to which Hernandez replied "No." Id., ¶64. The jury found that plaintiff was not guilty. Id., ¶64.

III. DISCUSSION

    A.   <u>The Summary Judgment Standard</u>

The court's discretion to grant summary judgment is governed by Federal Rule of Civil Procedure 56. Rule 56 provides, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addition, the facts are to be viewed in the light most favorable to the non-moving party. <u>Woods v. Friction</u>

Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994). "When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." Smith v. Stratus Computers, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995) (citation omitted).

In determining the merits of a motion for summary judgment, the court is compelled to undertake two inquiries: (1) whether the factual disputes are genuine, and (2) whether any fact genuinely in dispute is material. Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Id. To determine if the dispute about a material fact is "genuine," the court must decide whether "the evidence is such that a reasonable [factfinder] could return a verdict for the non-moving party." Id.; see also Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990); Oliver v. Digital Equipment Corp., 846 F.2d 103, 105 (1st Cir. 1988). The motions for summary judgment must be decided on the basis of admissible evidence. See Feliciano v. Rhode Island, 160 F.3d 780, 787 (1st Cir. 1998)

B.   <u>Count I</u>

In Count I, plaintiff alleges that two or more of the defendants conspired with Officer Mansfield to provide false testimony and to impede the administration of justice during plaintiff's malicious destruction of property trial. In order to survive a motion for summary judgment on this count, plaintiff must proffer admissible evidence sufficient to permit a reasonable factfinder to conclude that: (1) a conspiracy; (2) to deter a witness by force, intimidation, or threat from attending or testifying before a state court; (3) motivated by class-based, invidiously discriminatory animus; (4) resulted in injury to the plaintiff. <u>See</u> 42 U.S.C. §1985(2); <u>Haddle v. Garrison</u>, 525 U.S. 121, 125 (1998);  <u>Hahn v. Sargent</u>, 523 F.2d 461, 469 (1st Cir. 1975); <u>Bogle v. Liebel</u>, 1994 U.S. App. LEXIS 29613, *2  (1st Cir. 1994). Plaintiff has not provided sufficient evidence to support this claim.

First, to prove existence of a conspiracy, plaintiff must show that there was a combination of two or more persons acting in concert to commit an unlawful act, the principle element of which is an agreement between the parties to inflict a wrong against or injury upon plaintiff. <u>See</u> <u>Earle v. Benoit</u>, 850 F.2d 836, 844 (1st Cir. 1988); <u>Baxter v. Conte</u>, 190 F. Supp. 2d 123, 129 (D. Mass. 2001).  Plaintiff admits "he has no knowledge of an agreement between or among the Sears defendants and Officer Mansfield[.]" <u>See</u>

9

Plaintiff's Summary Judgment Opposition at 7 ("Plaintiff's Opposition").  However, plaintiff claims that the "sequence of events" indicates a conspiracy.  Id.  As circumstantial proof, plaintiff submits the following: (1) Tagliarino's deposition statement that William Sullivan and District Manager John Reid prepared Jose Hernandez's witness statement for Hernandez's signature; (2) that William Sullivan was angry and yelling the day of the investigation and that he suggested that Baldi's job was at stake; (3) and the statement by Baldi in his deposition that "you'd give [William Sullivan] an answer and he'd try to twist it around." See Plaintiff's Opposition at 9, quoting Baldi Dep. 66:9-24, 67:1-5.

This evidence is not sufficient to prove a conspiracy to implicate plaintiff falsely.  While plaintiff claims that Hernandez was provided a prepared statement, plaintiff provides no evidence that the statement was false or that Hernandez was coerced into signing it.  Similarly, the fact that William Sullivan was angry the day of the oil spill alone, without any suggestion that he forced people to implicate plaintiff falsely, is insufficient to defeat a motion for summary judgment.

Here, plaintiff concedes he has submitted no direct evidence of conspiracy.  Rather, he states, "[a]lthough Plaintiff has not yet put forth evidence on a plan, circumstances surrounding the interrogation of witnesses to the oil spill suggest that those

defendants conducting the interview knew exactly what they were doing." See Plaintiff's Opposition at 2. The bare use of the word "conspiracy" in a conclusory fashion is not sufficient to survive a motion for summary judgment. See Anderson, 477 U.S. at 256. As the First Circuit wrote in Moran v. Bench, 353 F.2d 193, 195 (1st Cir. 1965), "by the bare use of the worse 'conspiracy,' with no supporting facts that tend to show the existence of an unlawful agreement or prima facie improper behavior, plaintiff has not met the burden of countering affidavits making such explicit denials." This case is analogous to Moran. Defendants deny that they conspired to charge plaintiff falsely and the circumstantial evidence on which plaintiff relies is insufficient to refute this assertion.

Even assuming adequate evidence of a conspiracy, plaintiff has failed to provide sufficient evidence to prove a second crucial element of his claim--that the conspirators were motivated by "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Aulson, 83 F.3d at 3 (quoting Griffin v. Breckenridge, 403 U.S. 88 (1971)); see also Hahn, 523 F.2d 469 (holding that the requirements of 1985(3) as to racial or class-based animus apply equally to 1985(2)). Plaintiff's sole allegation of race-based animus by any Sears employee is the single comment allegedly made by "Sal," who purportedly called plaintiff a "gook." Plaintiff's Opposition at 15. "Sal" is not alleged to

11

be a co-conspirator. Evidence of a single racist comment by an individual who is not alleged to be a conspirator is not sufficient to avoid summary judgment on a conspiracy claim. See Burns v. State Police Assoc. of Massachusetts, 230 F.3d 8, 9 (1st Cir. 2000) (affirming summary judgment where only evidence of racial animus was offensive comments by individuals not named in complaint).

Moreover, it is undisputed that neither William Sullivan, who plaintiff claims coerced Sears employees to implicate him falsely, nor Officer Mansfield were aware of plaintiff's race or ethnicity. In addition, plaintiff himself suggests in his answers to interrogatories that the purpose of the alleged conspiracy was to deflect the blame to plaintiff for Sears' alleged violation of the Clean Water Act. 56.1 Facts at ¶72. Evidence of non-racial motivations for the alleged conspiracy "further weakens [plaintiff's] already attenuated allegation of racial animus." Burns, 230 F.3d at 13. In short, plaintiff has "attempted to construct a civil rights conspiracy case by superimposing general allegations of racism" by a single Sears employee on an incident in which he feels he was treated unfairly.[1] Id. at 14.

---

[1] Because plaintiff had not submitted sufficient evidence supporting his underlying allegations of a conspiracy, the court need not decide the merits of Officer Mansfield's claim of qualified immunity. See Brown v. Hot, Sexy and Safer Productions, 68 F.3d 525, 531 (1st Cir. 1995); see also Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993); Singer v. Maine, 49 F.3d 837, 844 (1st Cir. 1995).

C.   Count II

In Count II, plaintiff alleges a conspiracy to interfere with his rights pursuant to the Equal Protection and the Privileges and Immunities Clauses of the Fourteenth Amendment. To prove such a claim, plaintiff must show: (1) a conspiracy; (2) motivated by class-based, invidiously discriminatory animus; (3) whose purpose was to deprive the plaintiff of equal protection or equal privileges and immunities under the law; and that (4) an overt act in furtherance of the conspiracy was performed, resulting in; (5) injury or the deprivation of a constitutional right of privilege. See 42 U.S.C. §1985(3); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Plaintiff has not provided sufficient evidence to support this claim.

First, as with his 1985(2) claim discussed earlier, plaintiff has failed to submit any evidence of a conspiracy. In conclusory fashion, plaintiff simply states that genuine issues of material fact exist on this issue. See Opposition at 12. Plaintiff appears to misunderstand the summary judgment standard. He relies on Adickes v. S.H. Kress & Co., 398 U.S. 140 (1970) for the proposition that defendants have the burden of submitting evidence establishing the absence of a genuine issue of fact. The Supreme Court subsequently expressly rejected this view in Celotex Corp. v. Catrett, 477 U.S. 317, 325-26 (1986). As explained in Celotex, defendants need only "point[] out to the district court" an absence

13

of evidence supporting the nonmovant's case. Id. at 325. As defendants have done so, the burden is on plaintiff to produce evidence rebutting defendants' assertion of an absence of a genuine issue of material fact. Id. at 322-25. Plaintiff identifies no relevant, admissible evidence and, therefore, has failed to satisfy his burden. Moreover, even assuming the evidence he submits as to Count I is relevant here, it is also insufficient to withstand the motion for summary judgment on the claim of conspiracy in Count II.

In addition, plaintiff points to no evidence suggesting that any conspiracy was premised on a class-based, invidiously discriminatory animus whose purpose was to deprive the plaintiff of equal protection or equal privileges and immunities under the law. Plaintiff again merely asserts that there is a genuine issue in dispute without pointing to any evidence. Moreover, even assuming the evidence plaintiff proffered concerning Count I is relevant to Count II, a co-worker's isolated racial remark is insufficient to defeat a motion for summary judgment on a §1985(3) claim. See Burns, 230 F.3d 8, 9 (1st Cir. 2000) (affirming summary judgment where only evidence of racial animus was offensive comments by individuals not named in complaint).

Therefore, the defendants are entitled to summary judgment on Count II.

D.  Count III

In Count III, plaintiff alleges that the defendants had the

power to prevent his exposure to the conspiracy to violate his constitutional rights, but failed to do so. This claim requires as a predicate proof of an underlying §1985 violation. See Creative Env., Inc. v. Estabrook, 680 F.2d 822, 835 (1st Cir. 1982). Because plaintiff has not offered sufficient evidence of the essential conspiracy, summary judgment is warranted with regard to Count III.

    E.   Count VI

In Count VI plaintiff appears to allege a wrongful discharge claim pursuant to 42 U.S.C. §1981.[2] In order to prevail, plaintiff must prove purposeful employment discrimination. See Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95-96 (1st Cir. 1996). The ultimate issue is whether the defendant intentionally discriminated against the plaintiff because of his race or national origin. See 42 U.S.C. §1981; Patterson, 491 U.S. at 186; Ayala-Gerena, 95 F.3d at 95; Powell, 143 F. Supp. 2d at 128.

In the context of a motion for summary judgment, the plaintiff must offer direct or indirect evidence sufficient to show that the employer's decision to discharge him was wrongfully based on race or national origin. See Ayala-Gerena, 95 F.3d at 95-96. Because there is in this case no direct evidence of racial animus by anyone

---

[2] The Sears defendants construe the claim as such and in his response, plaintiff does not object to this characterization. See Sears Defendants' Summary Judgment Motion at 8; Plaintiff's Opposition at 13-17.

15

who participated in the decision to fire plaintiff, he must produce evidence that would permit a reasonable jury to find that (1) he is a member of a protected class; (2) an adverse employment action was taken against him; (3) he was qualified for the position he held; and (4) his position remained open and was eventually filled by persons with plaintiff's qualifications. Id.; Powell, 143 F. Supp. 2d at 115. If this showing is made, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See Ayala-Gerena, 95 F.3d at 95-96. If the defendant meets this requirement, the burden shifts back to the plaintiff to offer evidence sufficient to prove that the facially legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination based on race or national origin. Id.

First, plaintiff fails to submit any evidence in support of the fourth element of his prima facie case--that his position was filled by someone else with similar qualifications. This alone would justify granting summary judgment in defendant's favor. See Smith, 40 F.3d at 12. However, even assuming plaintiff can present a prima facie case, defendants have articulated a valid, non-discriminatory reason for terminating plaintiff--plaintiff's use of profanity towards customers on at least one occasion, according to plaintiff, or two occasions, according to defendants. Even plaintiff's single use of profanity would justify termination under

16

Sears' disciplinary policy.[3]  Therefore, the dispute concerning whether plaintiff swore at a second customer is not material.

Thus, the burden is on the plaintiff to offer sufficient evidence to prove defendant's proffered reason for firing plaintiff is pretextual--i.e. that it is "obviously or manifestly unsupported." See Estades-Neogroni v. Associates Corp. of N. Am., 345 F.3d 25, 32 (1st Cir. 2003) (Age Discrimination in Employment Act case applying burden-shifting framework). Evidence of disparate treatment of others similarly situated would be evidence of pretext. McDonnell Douglas Corp., 411 U.S. at 804. To show disparate treatment, plaintiff would have to provide evidence "that others similarly situated to him in all relevant respects were treated differently by the employer." Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999). The instances of disparate treatment "need not be perfect replicas, [but] they must closely resemble one another in respect to relevant facts and circumstances." Id. In the instant case, plaintiff would have to point to some admissible evidence that he was treated differently than other employees who used profanity with a customer on at least one occasion.

Plaintiff offers the following in support of his claim: (1) a

---

[3] Under Sears's disciplinary policy, a single incident of swearing at a customer constitutes grounds for termination. See 56.1 Sears Defendants' Statement of Undisputed Facts, ¶4; Souvannakane Dep., 111-12; Cieri Aff., ¶¶ 1-3, 6.

17

former employee was injured by a customer and no one was disciplined for it; (2) deposition testimony from DiGaetano, who said he believes a former employee named "Frank" swore at a customer but wasn't disciplined for it; and (3) Sal's use of the term "gook." See Plaintiff's Opposition at 15-16. Essentially, plaintiff premises his rebuttal to defendant's proffered reason on a disparate treatment theory.

    This proffered evidence is insufficient to defeat the motion for summary judgment. As to Sal's single comment, stray remarks in the workplace, particularly those made by individuals who do not participate in the dispute decision, are not enough to support a finding of pretext. See Price Waterhouse v. Hopkins, 490 U.S. 228, 251-52 (1989) (plurality op.); 490 U.S. at 277-78 (O'Connor, J., concurring); Ayala-Gerena, 95 F.3d at 96. Plaintiff points to no evidence indicating that the relevant decisionmakers, Cieri and Tagliarino, harbored any animus against him based on his race, his national origin, or anything other than problems with his job performance. The fact that a former employee was injured by a customer without any employee being disciplined is irrelevant to plaintiff's case because plaintiff does not allege that he was treated disparately when a customer assaulted him. Therefore, comparison of that incident to plaintiff's treatment is not probative and, in any event, is insufficient to prove that the stated reason for plaintiff's termination was pretextual. See

Conward, 171 F.3d at 20.

Significantly, plaintiff submits no admissible evidence that other employees swore at customers and were not disciplined. DiGaetano's deposition testimony that he believes a former employee named "Frank" swore at a customer but was not disciplined is inadmissible hearsay, because it is offered for the truth of the matter asserted. See Fed. R. Evid. 801(c); Davila v. Corporacion De P.R. Para La Difusion Publica, 2007 U.S. App. LEXIS 18693, *18-19 (1st Cir. 2007). As indicated earlier, a motion for summary judgment must be decided on the basis of admissible evidence. See Casas Office Machs. v. Mita Copystar Am., 42 F.3d 668, 682 (1st Cir. 1994) (quoting F.R.Civ.P. 56(e)). Plaintiff submits no admissible evidence supporting his claim concerning "Frank." There is simply no admissible evidence that any similarly situated employee at Sears was treated differently than plaintiff.

Plaintiff relies on two cases that are not analogous to the instant case. Plaintiff cites Che v. MBTA, 342 F.3d 31 (1st Cir. 2003), a case which involved the demotion of an Asian employee for activities that others engaged in without reprisal and numerous instances of a supervisor using the term "chink.". Id. at 38-39. In the instant case, there is no evidence of any supervisor using racially derogatory terms or of disparate treatment.

Plaintiff also relies on Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 165-66 (1st Cir. 1998), for the proposition that the

19

"evidence of discriminatory and disparate treatment" need satisfy a "relatively low threshold." See Opposition at 15. However, even assuming that the threshold is low, plaintiff has provided insufficient evidence. Indeed, Hodgens supports this conclusion. In Hodgens, the First Circuit held that plaintiff failed to submit sufficient evidence to rebut defendant's proffered legitimate reason for terminating the plaintiff--poor performance. See Hodgens, 144 F.3d at 170-72. The same is true here.

Accordingly, summary judgment for defendants on Count VI is justified.

F.   Count VII

Because none of plaintiff's claims survive summary judgment, his request for costs and attorneys' fees pursuant to 42 U.S.C. §1988 is also without merit. 42 U.S.C. §1988 provides for a possible award of attorneys' fees and costs to a "prevailing party." Plaintiff has not prevailed on any of his claims.

IV.  ORDER

In view of the foregoing, it is hereby ORDERED that the defendants' motions for summary judgment (Docket Nos. 36, 40) are ALLOWED.

    /s/ MARK L. WOLF
UNITED STATES DISTRICT JUDGE